UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

FILED by ___ D.C.

SEP 0 5 2017

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

Grace Solis
    Plaintiff

v.                               Case #16-cv-20612-UU

CITIMORTGAGE, INC.

## THIRD AMENDED COMPLAINT

Plaintiff, Grace Solis, *pro se*, hereby sues Defendant CITIMORTGAGE, INC., for violations of the Telephone Consumer Protection Act (TCPA) Sec. 227., 47 USC § 227(b)(1), 47 USC § 227(a) (iii), the Fair Credit Reporting Act (FCRA) 15 U.S.C. §1681 *et seq.*, and violations of the Florida Consumer Collection Practices Act (FCCPA) Part IV – Consumer Collection Practices Sec. 559.72.

## PRELIMINARY STATEMENT

1.  This is an action for damages and injunctive relief brought by Plaintiff against Defendant CITIMORTGAGE, INC. (CITI) for violations of the Telephone Consumer Protection Act (TCPA) Sec. 227, 47 USC § 227(b)(1) and 47 USC § 227(b)(1)(A) (iii).

2.  This is an action for damages and injunctive relief brought by Plaintiff against Defendant CITIMORTGAGE, INC. (CITI) for violations of the Fair Credit Reporting Act (FCRA) 15 U.S.C. § 1681 *et seq.* and violations of the Florida Consumer Collection Practices Act (FCCPA) Part IV – Consumer Collection Practices Sec. 559.72.

3.  Upon information and belief, Plaintiff contends that many of these practices are widespread for Defendant.  Plaintiff intends to propound discovery to Defendant identifying these other individuals who have suffered similar violations.

1

4.   Plaintiff contends that Defendant has violated such laws by repeatedly harassing Plaintiff in attempts to collect an alleged consumer debt.

## JURISDICTION AND VENUE

5.   Jurisdiction of this Court arises under 15 U.S.C. §1681p, 47 U.S.C. §227(b) (3), Fla. Stat. §47.051, 15 U.S.C. and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

6.   Venue is proper pursuant to 28 U.S.C. §1391b and Fla. Stat. §559.77.  Venue in this District is proper in that the Plaintiff resides here, the Defendant resides and/or transacts business here, and the conduct complained of occurred here.

7. This is an action for damages which exceed $180,000.00.

## PARTIES

8.   Plaintiff, Grace Solis is a natural person and is a resident of the State of Florida.  Plaintiff is a consumer as defined by the FDCPA, 15 U.S.C. §1692a(3), the FCCPA, Fla. Stat. §559.55(2) and FCRA, 15 U.S.C. §1681a(c).

9.   Upon information and belief, Defendant CITIMORTGAGE, INC. (CITI) is a foreign corporation, authorized to do business in Florida with a principal place of business at 1000 Technology Drive, O'Fallon, MO 63368.  The registered agent is C T CORPORATION SYSTEM, 1200 South Pine Island, Road, Plantation, FL 33324.

## FACTUAL ALLEGATIONS

10. CITI is a creditor as defined under the FCCPA, Fla. Stat. §559.55(3) and furnisher of information as defined by 15  U.S.C. § 1681s-2b and a "user of information" as defined by 15 U.S.C. §1681m.

11. Defendant alleged that Plaintiff incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the

2

transaction are primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and that Plaintiff is obligated to pay them.

12. Plaintiff is a consumer as defined under FDCPA, 15 U.S.C. §1692a(3), the FCCPA, Fla. Stat. §559.55(2) and the FCRA, 15 U.S.C. §1681a(c).

13. On June 20, 2000 Plaintiff, as sole purchaser, granted a purchase money mortgage in favor of World Savings Bank on her homestead.

14. On February 4, 2003, Plaintiff transferred title to herself, Sylvia Solis and Shirley Solis (Exhibit A).

15. On December **17**, 2003, Plaintiff refinanced her home with ALLSTATE MORTGAGE AND INVESTMENTS in Plantation, Florida and Plaintiff executed a note in its favor and pledged her equity (one-third) as security in the mortgage its favor.

16. Sylvia Solis and Shirley Solis did not execute nor grant a security interest in the mortgage.

17. Plaintiff received unexecuted copies of all forms signed at the closing from the title company on December 17, 2003 (Exhibits B-D, Unexecuted copy of Note, unexecuted mortgage and unrecorded copy of Assignment of Mortgage (AOM) respectively).

18. The unexecuted note was endorsed "Pay to the Order of CitiMortgage, Inc. F/K/A Citicorp Mortgage, Inc.  This **16th** day of December 2003 Without Recourse signed by Trina Elbert, Assistant Secretary".  It also contained a stamp "CITIMORTGAGE, INC. F/K/A CITICORP MORTGAGE, INC. ATTORNEY IN FACT FOR:  Allstate Mortgage & Investment Inc." (Exhibit B).

19. The unrecorded AOM was dated December **16**, 2003, the day before the closing. Another stamp was on the form:  CITIMORTGAGE, INC. F/K/A CITICORP MORTGAGE, INC. ATTORNEY IN FACT FOR:  Allstate Mortgage & Investment Inc (Ex. D).

20. The unrecorded AOM was notarized in the County of Frederick in the state of Maryland by Notary Public Karen D. Burress on December **16**, 2003, the day before the mortgage was executed and notarized in Plantation, Florida on December **17**, 2003.

21. The mortgage was unexecuted when the AOM was created and notarized.

22. Upon discovering these discrepancies, Plaintiff sent a Qualified Written Request (QWR) and debt validation to CITI via certified mail #7010 0780 0001 7592 8500 which was received on February 18, 2011 and did not send a mortgage payment (Ex. E).

23. CITI did not respond to the QWR.

24. Upon information and belief, CITI authorized SHAPIRO, FISHMAN AND GACHÉ (SFG) to begin foreclosure proceedings knowing that Plaintiff had sent it a QWR.

25. On April 25, 2011, SFG sent an acceleration letter to Plaintiff and claimed that Defendant CITI retained them to initiate a lawsuit.  SFG stated that they were advised the total amount due from Plaintiff was $28,732.19 (Ex. F).

26. On May 6, 2011, SFG received via certified mail #7010 3090 0002 4312 6505, Plaintiff's response that the account with CITI was in dispute and that Plaintiff had not received a response from CITI (Ex. G).

27. On May 9, 2011, CITI received Plaintiff's second QWR via certified mail #7010 3090 0002 4312 6512.  It informed CITI that Plaintiff has not received a response to her first QWR and that Plaintiff received a letter from SFG that CITI was proceeding with foreclosure activity without responding to Plaintiff's first QWR (Ex. H).

28. On May 20, 2011, CITI sent an incomplete, redacted payment history, copy of the executed note (Ex. I), recorded AOM and recorded mortgage.  Payment history reflected an outstanding balance of $28,152.23, which is less than SFG's letter claimed.

29. CITI'S recorded AOM is almost the same as the copy Plaintiff received from the title company at closing which was executed the day prior to closing.  CITI recorded an invalid AOM from ALLSTATE MORTGAGE & INVESTMENTS to CITI in public records.

30. CITI'S payment history redacted a section that appears as INV:  05628/0000 which appears to be the identification of an investor (Ex. I).

31. On or about July 6, 2011, according to the payment history, SFG requested a title search on Plaintiff's property.

32. On or about August 15, 2011, EXPERIAN, a credit reporting agency (CRA), received Plaintiff's dispute regarding her CITI trade-line via certified mail #7011 0470 0001 2647 7656.

33. Upon information and belief, EXPERIAN communicated to CITI Plaintiff's dispute through the credit industry's E-OSCAR system.

34. CITI failed to conduct a reasonable investigation and continued to furnish and report inaccurate and conflicting information about Plaintiff's CITI trade-line to EXPERIAN.

35. On August 11, 2011, Plaintiff sent a QWR to Allstate Mortgage and Investments via certified mail #7011 0470 0001 2647 7670 and it was returned to Plaintiff as unable to forward (Ex. J).

36. On August 15, 2011, Federal National Mortgage Association (FNMA) received Plaintiff's QWR sent via certified mail #7011 0470 0001 2647 7687 (Ex. K).  FNMA did not respond.

37. On August 15, 2011, EQUIFAX, a credit reporting agency (CRA), received via certified mail #7011 0470 0001 2647 7649 Plaintiff's dispute with the CITI trade-line on her credit report.

38. Upon information and belief, EQUIFAX communicated to CITI Plaintiff's dispute through the credit industry's E-OSCAR system.

39. On or about August 15, 2011, TRANSUNION, a credit reporting agency (CRA), received Plaintiff's dispute via certified mail #7011 0470 0001 2647 7663.

40. Upon information and belief, TRANSUNION communicated to CITI Plaintiff's dispute through the credit industry's E-OSCAR system.

41. CITI failed to conduct a reasonable investigation and continued to furnish and report inaccurate and conflicting information about Plaintiff's CITI trade-line to the three CRAs.

42. On October 26, 2011, Plaintiff sent CITI via certified mail #7010 2780 0002 2412 3423 a third QWR demanding that all further communications be in writing and a complete accounting of the debt.

43. On October 27, 2011, Plaintiff sent a second QWR to ALLSTATE MORTGAGE & INVESTMENTS, INC. via certified mail #7010 2780 0002 2412 3416 and it was returned on or about November 2, 2011 as ATTEMPTED – NOT KNOWN (Ex. L).  ALLSTATE MORTGAGE & INVESTMENTS, INC. has been inactive per SUNBIZ.ORG since September 26, 2008.

44. On November 1, 2011 CITI received Plaintiff's written communication as evidenced by the USPS green return receipt.

45. On November 4, 2011, CITI mailed Plaintiff a letter stating they received Plaintiff's letter and "We are in receipt of your written request to cease and desist all collection calls with regard to your mortgage loan.  In accordance with the Fair Debt Collections Practices Act (FDCPA), we have removed your information from our auto-dialer system" (Ex. M).

46. CITI also sent an incomplete payment history, unendorsed copy of the note, mortgage and AOM.

47. Beginning on or about November 1, 2011, CITI called Plaintiff's cell phone multiple times from CITI'S telephone numbers 636-261-2484 and 469-220-0000 with telephone

6

equipment with the capacity to store and/or automatically dial telephone numbers without prior express consent (Ex. N).

48. Beginning on or about March 7, 2012, CITI called Plaintiff's cell phone multiple times from CITI'S telephone numbers 866-272-4749, 866-940-5787, 605-331-2663 and 636-261-9024 with telephone equipment with the capacity to store and/or automatically dial telephone numbers without prior express consent (Ex. O).

49. Plaintiff received approximately seventy-seven calls after CITI claimed to remove her cell phone from their automatic dialer.

50. Plaintiff answered some of CITI'S phone calls and observed a brief pause before the caller responded.

51. Plaintiff, at or near the times of each call to her wireless cell phone made notes of each call including but not limited to the date and time, whether she answered the call, what was said by the caller and what she said and if a voice message was left.

52. Upon information and good faith belief, the telephone calls identified above were placed to Plaintiff's cell phone using an automatic dialing system (ATDS).

53. Upon information and good faith belief, Defendant voluntarily placed the calls to Plaintiff's cell phone.

54. Upon information and good faith belief, Defendant placed the calls to Plaintiff's cell phone under its own free will.

55. Upon information and good faith belief, Defendant had knowledge that it was using an automatic telephone dialing system to place each of the telephone calls identified above.

56. Upon information and belief, Defendant intended to use an automatic telephone dialing system to place each of the telephone calls identified above.

57. Upon information and good faith belief, Defendant maintains business records that show all calls Defendant placed to Plaintiff's cell phone.

58. The calls made to Plaintiff's cell phone were not for emergency purposes and were made without Plaintiff's consent.

59. Plaintiff may have received more calls than noted, which will be determined in discovery.

60. Each call to Plaintiff's cell phone is a separate, distinct and unique act.

61. On July 9, 2012, CITI received Plaintiff's debt validation requesting an accurate accounting of the debt sent via certified mail #7011 0470 0001 2645 5777.

62. On August 29, 2012, CITI sent Plaintiff an incomplete payment history, unendorsed copy of note, recorded mortgage and recorded AOM.  CITI also again stated that it received the cease and desist collection calls (Ex. P).

63. On June 14, 2013, SFG filed a Lis Pendens and complaint against Plaintiff in state court, CITI vs. Solis et al, #2013-CA-020961.

64. On June 28, 2013, SFG received Plaintiff's debt validation letter requesting an accurate accounting of the debt dated June 25, 2013, via certified mail #7012 2210 0000 7751 5981 (Ex. Q).  SFG did not respond.

65. On June 28, 2013, CITI received Plaintiff's second debt validation letter dated June 25, 2013 via certified mail #7012 2210 0000 7751 5998.

66. On June 29, 2013, Plaintiff, Sylvia Solis and Shirley Solis were served with the state complaint.  Included with the complaint was a *Notice Required by the FDCPA* from SFG claiming that the amount owed was $32,543.05 and that the creditor was CITI (Ex. R).  No accounting of the debt was included.

67. The state complaint claims that FNMA is the owner of the note and that CITI is the servicer and holder of the note and the amount due was $28,152.23, together with all sums that may be due, which contradicted SFG's FDCPA Notice regarding amount and creditor (Ex. S).

68. The state complaint did not request a reformation of mortgage to add Sylvia Solis and Shirley Solis.

69. The state complaint conflicts with the reported CITI trade-line on Plaintiff's consumer credit reports which states that CITI is the creditor.

70. Attached to the complaint is an alleged copy of the note (Exhibit T) with an undated, second endorsement and signature from Janet L. Sims, Senior VP CITI that was never on the copies of the notes sent previously from CITI to Plaintiff.  The AOM was **not** attached to the complaint.

71. According to the note attached to the state complaint, CITI endorsed the note to itself.

72. There was no payment history or accounting attached to the state complaint to support the amount owed.

73. CITI knew or should have known that the recorded mortgage attached to the complaint as an exhibit was not executed by Sylvia Solis and Shirley Solis since CITI prepared the mortgage.

74. The Defendants knew or should have known that Sylvia Solis and Shirley Solis did not grant a security interest.

75. Plaintiff pledged only her third of the equity of the property, Sylvia Solis and Shirley Solis did not pledge their equity.

76. There is no recorded AOM in public records of Plaintiff's mortgage to FNMA.

77. Plaintiff never received notice of an AOM recorded in FNMA's favor prior to the Lis Pendens or foreclosure action.

78. On August 19, 2013, FNMA received Plaintiff's second QWR via certified mail #7011 3500 0003 0415 7975.

79. On or about September 5, 2013, Plaintiff received a letter from JP MORGAN CHASE BANK, N.A. with a copy of Plaintiff's second QWR addressed to FNMA stating they could not locate Plaintiff's account (Ex. U).

80. Apparently FNMA does not know who Plaintiff's servicer is but allegedly FNMA authorized CITI to file a foreclosure against Plaintiff.

81. CITI has not provided any proof that FNMA authorized it to bring a foreclosure action against Plaintiff.

82. On or about September 17, 2013, Plaintiff received CITI's response to her second QWR. It contained an incomplete payment history, a copy of the note **without** Janet L. Sims' endorsement, a recorded copy of the mortgage and the recorded AOM (Ex. V).

83. Two different notes have been provided to Plaintiff by CITI and SFG.

84. SFG'S note attached to the complaint contain two undated endorsements to CITI.

85. On October 26, 2013, Sylvia Solis passed away.

86. On November 15, 2013, Plaintiff's counsel filed his Notice of Appearance in the state case and it is currently active.

87. In January 2014, CITI sent a statement of amount due of $34,024.39 with a past due amount of $2,825.88 along with the disclaimer on the back THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION WILL BE USED FOR THAT PURPOSE and that the loan was accelerated to Plaintiff, knowing that Plaintiff is represented by an attorney (Ex. W).

88. Each separate incident in which a furnisher of information fails to fulfill its duty to reasonably investigate a dispute gives rise to a new and distinct claim under the FCRA.

10

89. In January 2016, CITI sent a statement of amount due of $ 39,284.63 with the past due amount of $1,973.38 along with the disclaimer on the back THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION WILL BE USED FOR THAT PURPOSE and that the loan was accelerated to Plaintiff, knowing that Plaintiff is represented by an attorney (Ex. X).

90. Plaintiff received twenty-four statements from CITI and continues to receive them even though CITI knows Plaintiff is represented by counsel.

91. Each monthly statement sent by CITI to Plaintiff is a separate, distinct and unique act.

92. For more than twenty-four months, CITI reported different monthly amounts due to the three CRAs and still continues.  There are no past due amounts since the loan was accelerated on April 25, 2011 via SFG's letter that stated all amounts are due and payable.

93.  The FCRA requires a reasonable reinvestigation and a deletion of inaccurate information from the consumer's credit reports after said consumer has disputed the information being provided.

94.  CITI did not perform a reasonable reinvestigation and knowingly and willfully continued to furnish unverified and inaccurate information to the CRAs since August 2011 to the present on Plaintiff's credit reports despite multiple letters of dispute. (Ex. Y).

95.  TRANSUNION, EQUIFAX and EXPERIAN are credit reporting agencies as defined by the FCRA, 15 U.S.C. § 1681a(f).

96.  The continued reporting of false and erroneous information to the credit reporting agencies without performing proper reinvestigation after a consumer disputes violates 15 U.S.C. §1681 s-2(b) the first time a violation occurs each and every time the furnisher knowingly and willfully does so.

97. Each time CITI furnishes information to the CRAs without first performing a reasonable reinvestigation after that reinvestigation has been demanded constitutes a new and separate deliberate violation of the statute.

98. Courts have consistently held that any person who willfully fails to comply with any requirement of the FCRA may be liable for punitive damages, 15 U.S.C. § 1681n. To establish willful noncompliance, a Plaintiff must prove that the Defendant(s) "knowing and intentionally committed an act in conscious disregard for the rights of others' need not show "malice or evil motive".

99. Plaintiff's credit report has been provided to third parties and has been denied credit.

100. Each inaccurate monthly report submitted by CITI to the credit reporting agencies are separate, unique, discrete and distinct acts.

101. CITI willfully furnished inaccurate and unverified information on Plaintiff's consumer credit report which contradicts the statements sent to Plaintiff and the foreclosure complaint.

102. The inaccuracies include but are not limited to: original creditor, the status of the dispute, the amount of the alleged debt, the alleged past due amount, the monthly amounts owed, etc.

103. Discovery of the credit reporting violations occurred on August 30, 2015.

104. Copies of the recorded voice messages from CITI are available.

105. On October 22, 2014, CITI caused a Motion to Substitute Counsel to be filed by ROBERTSON, ANSCHUTZ & SCHNEID (RAS).

106. On or about June 15, 2015, CITI mailed Plaintiff an offer to enter into a Trial Period Plan for a mortgage modification (Ex. Z), knowing that Plaintiff is represented by an attorney. On page three the loan modification states it is an attempt to collect a debt.

107. Upon information and belief, on or about August 4, 2015, RAS'S attorneys drafted an Amended Complaint in the state foreclosure action (Ex. AA).

108. The Amended Complaint mentions that ALLSTATE MORTGAGE & INVESTMENTS, INC. did not require Sylvia Solis and Shirley Solis to sign the refinance mortgage on December 17, 2003.

109. CITI and FNMA were not Plaintiff's creditor.

110. CITI prepared the refinance mortgage that Plaintiff executed.

111. CITI knew or should have known that the mortgage is unenforceable because Shirley Solis and Sylvia Solis did not pledge their equity as a security interest in the mortgage.  CITI prepared the mortgage.

112. The assignment of mortgage is void ab initio because it was created on December 16, 2003 in Maryland before Plaintiff executed the note and mortgage on December 17, 2003 in Florida.

113. CITI is attempting to take one hundred percent of equity when only one third was pledged by Plaintiff alone.

114. On March 12, 2012, The Office of the Inspector General (OIG) U.S. Department of Housing and Urban Development reviewed the foreclosure practices of CITI (Ex. BB) and found:

    a.   Affiants Robo-signed Foreclosure Documents;

    b.   Notaries did not Witness Signatures;

    c.   Attorneys May Have Improperly Prepared Documents.

115. Plaintiff's note was endorsed prior to her signature, the AOM was notarized the day before Plaintiff's signature and closing; note and mortgage was invalidly conveyed to CITI.

116. CITI had a duty of care to the Plaintiff to not file a frivolous complaint.

117. Each violation of law is a separate, unique and distinct act.

118. Plaintiff has suffered high levels of emotional and mental distress, anxiety, familial discord, injury to reputation and credit worthiness due to CITI's action to foreclose on Plaintiff and seek equitable subrogation on Plaintiff's family members and also due to CITI'S continuous reporting of erroneous information to third parties despite multiple dispute letters.

119. Plaintiff attempted to settle these matters with CITI prior to bringing this action and CITI was served on June 14, 2016.

## COUNT I
## VIOLATIONS OF THE TELEPHONE COMMUNICATIONS ACT47 U.S.C. §227 BY DEFENDANT CITIMORTGAGE, INC.

120. Plaintiff alleges and incorporates the information in paragraphs 1through 119.

121. CITI assured Plaintiff that the calls would stop via their letter to Plaintiff. Since then CITI refused and continued to violate 47 U.S.C. An unintentional call carries a damage amount of $500; an intentional call carries a damage amount of $1,500 per violation.

122. CITI demonstrated willful or knowing non-compliance with 47 U.S.C. §227(b) (1) (A) by calling Plaintiff's cell phone without her prior express consent.

123. CITI demonstrated willful or knowing non-compliance with 47 U.S.C. §227(b) (1)(A)(iii) by using an automatic telephone dialing system to call Plaintiff's cell phone.

124. CITI has demonstrated willful or knowing non-compliance with 47 U.S.C. §227(b)(1)(A)(iii) by calling the Plaintiff's phone number, which is assigned to a cellular telephone service contrary 47 U.S.C. §227(b)(1)(A)(iii) which states in part;

(1) PROHIBITIONS.—it shall be unlawful for any person within the United States or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

125. Plaintiff revoked her consent from CITI to call her cell phone on several occasions via certified mail.

126. The TCPA provides a private right of action as stated in 47 U.S.C. §227(b)(3)B:

(3) **Private right of action**

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State-

(A)   an action based on a violation of this subsection or the regulations prescribed under subsection to enjoin such violation,

(B)   an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C)   both such actions.  If the court finds that the Defendants willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the available under subparagraph (B) of this paragraph.

127. CITI called Plaintiff's cell phone approximately seventy-seven times without express consent.

128.  Each call is a separate, unique and distinct act.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.   Adjudging that CITIMORTGAGE, INC. violated the TCPA 47 U.S.C. §227.

b.   Awarding Plaintiff statutory damages pursuant to TCPA 47 U.S.C. §227(b)(3)(B)(C) of $500 for the first call and $1500 for each call thereafter made to Plaintiff's wireless phone as knowing and/or willful violations;

c.   Awarding Plaintiff any fees and costs incurred in this action;

    d.    Awarding Plaintiff any post-judgment interest as may be allowed under the law;

Awarding such other and further relief as the Court may deem just and proper and the opportunity to amend this complaint and/or additional parties after conducting appropriate discovery.

## COUNTS II
## WILLFUL AND NEGLIGENT VIOLATIONS OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681 et seq BY DEFENDANT CITIMORTGAGE, INC.

130. Plaintiff alleges and incorporates the information in paragraphs 1 through 119.

131. CITI willfully and negligently violated the FCRA when it continued to report erroneous and derogatory information for over twenty four months to EQUIFAX, EXPERIAN and TRANSUNION after receiving Plaintiff's multiple QWRs and disputes in violation of the FCRA 15 U.S.C. § 1681s-2(a)(1)(B)(i),(ii).

132. CITI violated 15 U.S.C. § 1681s-2(b) by its failure to assure that a proper reinvestigation was conducted after receiving Plaintiff's disputes directly or through the CRAs. These inaccurate account reports on Plaintiff's credit report for more than twenty four months damaged her credit score and reputation.

133. CITI violated the Fair Credit Reporting Act, 15 U.S.C.§1681s-2(b) by failing to fully and properly investigate the Plaintiff's disputes regarding the account, and/or by reporting inaccurately the results of such investigation

134. As a result of this conduct, action and inaction of CITI, the Plaintiff suffered actual damages including without limitation, by example only and as described herein: loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

135. CITI's conduct, action and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, CITI was negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

136. The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from CITI in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

137. FCRA U.S.C. §1681o states:

Civil liability for negligent noncompliance (a) In general.  Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of --(1) any actual damages sustained by the consumer as a result of the failure; and (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

FCRA U.S.C. §1681n states:

(a) **In general**

Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1)

(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

138. (b) **Duties of furnishers of information upon notice of dispute**

(1) **In general**

After receiving notice pursuant to section 1681i (a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i (a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

    (i) modify that item of information;

    (ii) delete that item of information; or

    (iii) permanently block the reporting of that item of information.

139. Plaintiff requested several Qualified Written Requests and debt validation letters from CITI and it willfully and/or negligently reported to the CRAs inaccurate information.

140. Plaintiff disputed the account with the CRAs and the CRAs requested CITI'S verification of the trade-lines. These inaccurate account reports on Plaintiff's credit report for more than two years damaged her credit score, reputation and caused lost credit opportunities.

141. CITI knowingly and inaccurately reported a disputed account on Plaintiff's credit report and knowingly and willfully caused damage to Plaintiff by reducing Plaintiff's credit score.

141. CITI reported it was Plaintiff's creditor when it is not and claimed amounts past due when the acceleration letter claimed all amounts are due and payable.

142. CITI filed a foreclosure case claiming all amounts due and payable.

**WHEREFORE**, Plaintiff demands judgment for damages against Defendant CITI for actual damages as they may bear or statutory damages, punitive damages, declaratory and injunctive relief, attorney's fees and costs, pursuant to FCRA 15 U.S.C. §1681n and §1681o and also awarding such other and further relief as the Court may deem just and proper and the opportunity to amend this complaint and/or additional parties after conducting appropriate discovery.

## COUNTS III
## WILLFUL AND NEGLIGENT VIOLATION OF FLORIDA CONSUMER COLLECTION PRACTICES ACT (FCCPA), FLA. STAT. §559(Part VI) BY DEFENDANT CITIMORTGAGE, INC.,

143. Plaintiff alleges and incorporates the information in paragraphs 1 through 119.

144. Plaintiff is a consumer within the meaning of the FCCPA, Fla. Stat. §559.55(2).

145. CITI is a debt collector within the meaning of the FCCPA, Fla. Stat. §559.55(6).

146. CITI is a creditor within the meaning of the FCCPA, Fla. Stat. §559.55(3).

147. CITI willfully and negligently violated the FCCPA.  CITI's violations include, but are not limited to the following:

Fla. Stat. §559.72(18) reads:

> (18)  Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within a reasonable period of time to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication..

148. CITI sent twenty-four monthly debt collection statements to Plaintiff beginning January 2014 to date knowing Plaintiff is represented by an attorney.  Each monthly statement is a separate and distinct violation.

149.  CITI mailed Plaintiff a trial Loan Modification on or about June 15, 2015 knowing Plaintiff is represented by an attorney.  The loan mod is a separate and distinct violation.

19

150. Florida Statute 559.715 reads:

> Assignment of consumer debts.--This part does not prohibit the assignment, by a creditor, of the right to bill and collect a consumer debt. However, the assignee must give the debtor written notice of such assignment within 30 days after the assignment. The assignee is a real party in interest and may bring an action in a court of competent jurisdiction to collect a debt that has been assigned to such assignee and is in default.

151. FNMA never provided to Plaintiff notice of an AOM nor is an AOM in favor of FNMA recorded in public records. CITI does not have a valid AOM.

152. FL Statute §559.72(9) reads:

> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist.

153. CITI caused SFG to file a frivolous state foreclosure complaint claiming that FNMA owns the note and that CITI is a creditor according to an FDCPA notice knowing that neither is true.

154. CITI filed a frivolous foreclosure action against Plaintiff knowing that the mortgage was unenforceable and never requesting to reform the mortgage when Sylvia Solis was alive.

155. CITI deprived Shirley Solis of her equity, which she never pledged.

156. FL Statute §559.72 (5) reads:

> (5) Disclose to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false.

157. CITI claimed to be Plaintiff's creditor and reported an inaccurate trade-line to the three credit bureaus for twenty-four months and still continues. CITI is not Plaintiff's creditor and the different past due amounts and total amounts due are inaccurate. Each monthly report is a separate, unique and distinct event. CITI is foreclosing on Plaintiff and requesting all amounts due and owing, not past due amounts.

158. FL Statute §559.72 (7) reads:

Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family;

159. CITI, through its attorneys, contacted Edward Solis to add as a Defendant in the Amended Complaint knowing that he cannot be added as a Defendant because the mortgage is unenforceable and he never had an interest in the property.  It concerns Edward Solis that he may be included in litigation in which he has no part.

**WHEREFORE**, Plaintiff demands judgment for damages against CITIMORTGAGE, INC., for actual damages as they may bear or statutory damages, punitive damages, declaratory and injunctive relief, attorney's fees and costs, pursuant to Fla. Stat §559.77 and also awarding such other and further relief as the Court may deem just and proper and the opportunity to amend this complaint and/or additional parties after conducting appropriate discovery.

<u>**VERIFICATION**</u>

All the above statements are true to the best of my knowledge.  I understand that a false statement in this Verified Second Amended Complaint may subject me to penalties of perjury.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Respectfully submitted this 2nd day of September 2017th day with an effective date of March 18, 2016 according to the Court's Order.

Grace Solis
730 86th Street
Miami Beach, FL  33141
*Pro se*

21

# EXHIBIT A

## COPY OF RECORDED QUIT CLAIM DEED

RECORD & RETURN TO:
FAMILY TITLE CORP.
150 S. Pineisland Rd. #110
Plantation, FL 33324

This Instrument Prepared By:
Family Title Corporation
Record & Return To:
Family Title Corporation
150 S. Pine Island Road Suite 110
Plantation, Florida
Tax Folio:02-3203-011-0170
Grantee SSN:

21014 PG 2049

03R093865 2003 FEB 11 14:36

### QUIT-CLAIM- DEED

THIS QUIT-CLAIM DEED, Executed this 4th day of February , 2003, by and between first party, GRACE DENISE SOLIS, a single woman of the first part, whose post office address: 730 86th Street Miami Beach, Florida 33141 TO GRACE DENISE SOLIS, a single woman, SYLVIA SOLIS, an unmarried woman and SHIRLEY JANICE SOLIS, a single woman of property whose post office address: 730 86 Street Miami Beach, Florida 33141 second part, GRANTEE. (Wherever used herein the terms "first party" , " second party " shall include singular and plural, heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, wherever the context so admits or requires. )

WITNESSETH, That the said first party, for and in consideration of the sum of $10.00 in hand paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quit-claim unto the said second party forever, all the right, title, interest, claim and demand which the said first party has in and to the following described lot, piece or parcel of land, situate, lying and being in the County of Broward, State of Florida, to-wit:

The West 24.85 feet of Lot 10, in Block 12, of BISCAYNE BEACH SECOND ADDITION, according to the Plat thereof, as recorded in Plat Book 46, at Page 39, of the Public Records of Miami-Dade County, Florida.

HAVE AND TO HOLD the same together with all and singular the appurtenances thereunto belonging or in anywise appertaining, and all the estate, right, title, interest, lien, equity and claim whatsoever of the said first party, either in law or equity, to the only proper use, benefit and behalf of the said second party forever.

IN WITNESS WHEREOF, The said first party/GRANTOR has signed and sealed these presents the day and year first above written.

Signed, sealed and delivered
in the presence of
Sign: _Jose Martinez_
Print: _Jose Martinez_

Sign: _Jessica Lopez_
Print: _Jessica Lopez_

_Grace Denise Solis_
GRACE DENISE SOLIS

STATE OF Florida )
COUNTY OF Broward )

DOCSIPDEE    0.60 SURTX    0.00
HARVEY RUVIN, CLERK DADE COUNTY, FL

I HEREBY CERTIFY that on this 4th day of February , 2003 before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, personally appeared GRACE DENISE SOLIS the person described in and who executed the foregoing instrument, or who produced DRIVERS LICENSE as identification, and he acknowledged before me that they executed the same.

WITNESS my hand and official seal in the County and State last aforesaid this 4th day of February , 2003.

(NOTARY SEAL)

_Angela Fraginals_
Notary Public,

_Angela Fraginals_
Printed Name of Notary Public

COMMISSION NO: CC 988771
COMMISSION EXPIRES: 12/17/04

ANGELA FRAGINALS
My Comm Exp. 12/17/04
No. CC 988771
[ ] Personally Known [ ] Other I.D.

RECORDED IN OFFICIAL RECORDS BOOK
OF DADE COUNTY, FLORIDA
RECORD VERIFIED
HARVEY RUVIN
CLERK CIRCUIT COURT

6

# EXHIBIT B

## UNEXECUTED COPY OF NOTE WITH CITI

## ENDORSEMENT

# NOTE

December 17, 2003        Plantation           Florida

    [Date]                 [City]              [State]

**730 86TH ST, Miami Beach, FL 33141**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **50,000.00**       (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Allstate Mortgage & Invest Inc**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.750** %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **First** day of each month beginning on **February 1, 2004** . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **January 1, 2019** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1000 Technology Drive, O' Fallon, MO 63304**

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **388.92**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

002001377837

FLORIDA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT



**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15                        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000                    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.———

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

002001377837

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____        _____ (Seal)
                                        Grace D. Solis                  -Borrower

                                                          *(Sign Original Only)*

_____

Pay To The Order of CitiMortgage, Inc.
F/K/A Citicorp Mortgage, Inc.
This _16th_ Day of _December 2003_
Without recourse
By: _Trina Ellbert_
Print Name: _Trina Ellbert_
Title: _Ass't Secretary_

CITIMORTGAGE, INC.
F/K/A CITICORP MORTGAGE, INC.
ATTORNEY IN FACT FOR:

_Allstate Mortgage + Investment_

002001377837

# EXHIBIT C

# UNEXECUTED, UNRECORDED COPY OF

# MORTGAGE PREPARED BY CITIMORTGAGE

Return To:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO  63179-0021


This document was prepared by:
CitiMortgage, Inc.
5280 Corporate Drive
WSE
Frederick, MD  21703

────────────────[Space Above This Line For Recording Data]────────────────

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **December 17, 2003**
together with all Riders to this document.
(B) "Borrower" is  **Grace D. Solis, a Single Woman**


Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is   **Allstate Mortgage & Invest Inc**

Lender is a **Broker**
organized and existing under the laws of  **Florida**

**002001377837**

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3010  10/02

-6(FL) (0005)

Page 1 of 15                    Initials:_____

VMP MORTGAGE FORMS - (800)521-7291

Lender's address is  **8363 Pines Blvd, Pembroke Pines, FL   33024-6607**

Lender is the mortgagee under this Security Instrument.
(D) **"Note"** means the promissory note signed by Borrower and dated  **December 17, 2003**
The Note states that Borrower owes Lender  **Fifty Thousand**

                                                                                                        Dollars
(U.S. $ **50,000.00**                         ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  **January 1, 2019**                          .
(E) **"Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | **Schedule ''A''** |

(H) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) **"Escrow Items"** means those items that are described in Section 3.
(L) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

002001377837

VMP®-6(FL) (0005)                                 Page 2 of 16                  Initials:_____          Form 3010  10/02

(O) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the **County**          [Type of Recording Jurisdiction]
of **Miami-dade**          [Name of Recording Jurisdiction]:
**Legal Description is attached hereto and made a part hereof**

Parcel ID Number:                                        which currently has the address of
**730 86TH ST**                                                        [Street]
**Miami Beach**                              [City], Florida **33141-**          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

002001377837

-6(FL) (0005)                     Page 3 of 16          Initials: _____          Form 3010  10/02

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

002001377837                                                                                          Form 3010  10/02

VMP®-6(FL) (0005)

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

002001377837

-6(FL) (0005)

Initials:_____

Form 3010  10/02

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

002001377837

VMP®-6(FL) (0005)          Page 6 of 16          Initials_____          Form 3010   10/02

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

002001377837

Initials: _____

Form 3010  10/02

VMP®-6(FL) (0005)

Page 7 of 16

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

002001377837

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

002001377837

**VMP** ®-6(FL) (0005)

Page 9 of 16

Initials: _____

Form 3010  10/02

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of 002001377837

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

002001377837

 -6(FL) (0005)

Initials _____

Form 3010  10/02

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

   **16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

   As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

   **17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

   **18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   **19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

002001377837



purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

    **20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

    Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

    **21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

002001377837

-6(FL) (0005)

Initials:_____

Form 3010   10/02

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

002001377837

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

Witnesses:

_____                    _____ (Seal)
                                                                                                           -Borrower
_____                    **Grace D. Solis**

_____

002001377837



**STATE OF FLORIDA,**                                County ss:

The foregoing instrument was acknowledged before me this                                by

who is personally known to me or who has produced                              as identification.

_____

Notary Public

002001377837

   -6(FL) (0005)                Page 16 of 16        Initials _____        Form 3010  10/02

# EXHIBIT D

# UNRECORDED ASSIGNMENT OF MORTGAGE

# (AOM)

Recording Requested By/Return to:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO 63179-0021

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of the Mortgage (herein "Assignor") whose address is **8363 Pines Blvd, Pembroke Pines, FL 33024-6607**, does hereby grant, sell, assign, transfer and convey, unto CitiMortgage, Inc., a corporation organized and existing under the laws of the **State of Delaware** (herein "Assignee"), whose address is **15851 Clayton Road Ballwin, MO 63011**, a certain Mortgage dated **December 17, 2003**, made and executed by **Grace D. Solis, a Single Woman**, to and in favor of **Allstate Mortgage & Invest Inc** upon the following described property situated in **Miami-dade** County, State of **Florida**:

**Legal Description is attached hereto and made a part hereof,**

such Mortgage having been given to secure payment of     **$50,000.00**     which Mortgage is of record
                                    (Original Principal Amount)
in Book, Volume, or Liber No.         , at page         (or as No.      ) of the Records of **Miami-dade** County, **Florida**, together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

**ASSIGNMENT OF MORTGAGE - FLORIDA**

P09119FL · 3/09/2001     [0020013778371]     Page 1 of 2

TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on

(Witness)

(Witness)

(Attest)

Seal:

Allstate Mortgage & Invest Inc
(Assignor)

BY: _____
(Authorized Signature)

This Instrument Prepared By:   **Allstate Mortgage & Invest Inc**
**8363 Pines Blvd**
**Pembroke Pines, FL  33024-6607**
**(954) 450-9099**

CITIMORTGAGE, INC.
F/K/A CITICORP MORTGAGE, INC.
ATTORNEY IN FACT FOR:

Allstate Mortgage + Invst Inc

Loan No: 002001377837

---
**Acknowledgment**
---

State of  MD                                     )
                                                 ) ss.:
County of  Frederick                             )

On  12/16/2003                , before me a Notary Public in and for said County, appeared  Irina
    Elbert              , ASSISTANT SECRETARY, to me personally known, who, being by me duly
sworn, did say that he(she) is a duly authorized officer of  Citimortgage                , the
corporation named and which executed the within instrument that the seal affixed to said instrument is
the corporate seal of said corporation, and that said instrument was signed and sealed on behalf of
said corporation by authority of its Board of Directors and said officer did acknowledge said
instrument to be the free act and deed of said corporation.


NOTARY PUBLIC
MY COMMISSION EXPIRES:


KAREN D. BURRISS
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires December 11, 2005

MB2923  7/2001
Version CITI 2.4.0.20 11/19/2003

Page 1 of 1

# EXHIBIT E

# FIRST QUALIFIED WRITTEN REQUEST (QWR)

## TO CITIMORTGAGE (CITI) RECEIVED

## FEBRUARY 18, 2011

Grace D Solis
730 86th Street
Miami Beach, FL  33141

CITIMORTGAGE, INC.
PO Box 660065
San Antonio, TX 75266-0065

ATTN: ACCOUNT MANAGER

Certified Mail #:  7010 0780 0001 7592 8500

February 8, 2011

RESPA QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT & VALIDATION OF
DEBT LETTER, TILA REQUEST

This letter is a "qualified written request" in compliance with and under the Real Estate Settlement
Procedures Act, 12 U.S.C. Section 2605(e) and Regulation X at 24 C.F.R. 3500, and The Gramm
Leach Bliley Act.

REF: Alleged Account # 2001377837-6

Dear Madam or Sir:

I am writing to you to complain about the accounting and servicing of this mortgage and my need for
understanding and clarification of various sale, transfer, funding source, legal and beneficial owner-
ship, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related
to the servicing of this account from its origination to the present date.

To date, the documents and information I have, that you have sent, and the conversations with your
service representatives, have been unproductive and have not answered many questions.
It is my understanding that your company may have been accused of engaging in one or more preda-
tory servicing or lending and servicing schemes. As a consumer, I am extremely concerned about
such practices by anyone, let alone this mortgage company or anyone who has any interest this mat-
ter. I am concerned that such abuses are targeting the uneducated and uninformed consumer and
disadvantaged, poor, elderly and minority Americans.

Needless to say, I am most concerned. I am worried that potential fraudulent and deceptive practices
by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and
fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent account-
ing tricks and practices may have also negatively affected any credit rating, mortgage account and/or
the debt or payments that I am currently, or may be legally obligated to.

I hereby demand absolute 1st hand evidence from you of the original un-certificated or certificated se-
curity regarding account number 2001377837-6. In the event you do not supply me with the very secu-
rity it will be a positive confirmation on your part that you never really created and owned one. I also
hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to
me as well. Absent the actual evidence of the security I have no choice but to dispute the validity of
your lawful ownership, funding, entitlement right, and the current debt you allege I owe. By debt I am
referring to the principal balance you claim I owe; the calculated monthly payment, calculated escrow
payment and any fees claimed to be owed by you or any trust or entity you may service or subservice
for.

mation of set off of wrongful liability of GRACE D. SOLIS and issuing a certified check for the difference between the original value of GRACE D. SOLIS's monetary instrument/asset and what GRACE D. SOLIS mistakenly sent to CITIMORTGAGE, INC. as payment for such wrongful liability.

CITIMORTGAGE, INC. or any transfers, agents or assigns offering a rebuttal of this RESPA RE-QUEST must do so in the manner of this "RESPA REQUEST" in accordance of and in com-pliance with current statutes and/or laws by signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury while offering direct testimony with the official capacity as an appointed agent for CITIMORTGAGE, INC., in accordance with CITIMORTGAGE, INC., Articles of Incorporation, Article of Incorporation, By Laws duly signed by a current and duly sworn under oath director(s) of such corporation/Holding Corpora-tion/National Association. Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within sixty days. When no verified rebut-tal of this "RESPA REQUEST" is made in a timely manner, a "Certificate of Non-Response" serves as CITIMORTGAGE, INC. judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

Power of Attorney: When CITIMORTGAGE, INC. fails by not rebutting to any part of this "RESPA RE-QUEST" CITIMORTGAGE, INC. agrees with the granting unto GRACE D. SOLIS's unlimited Power of Attorney and any and all full authorization in signing or endorsing CITIMORTGAGE, INC. name upon any instruments in satisfaction of the obligation(s) of this RESPA REQUEST/Agreement or any agreement arising from this CITIMORTGAGE, INC. GRACE D. SOLIS's agreement. Pre-emption of or to any Bankruptcy proceeding shall not discharge any obligation(s) of this agreement. Consent and agreement with this Power of Attorney by CITIMORTGAGE, INC. waives any and all claims of GRACE D. SOLIS, and/or defenses and remains in effect until satisfaction of all obligation(s) by CITIMORT-GAGE, INC. has been satisfied.

Sincerely,

Grace D Solis

CC:

1. Federal Trade Commission
600 Pennsylvania Avenue NW,
Washington, DC. 20580

3. Office of RESPA and Interstate Land Sales
Office of Housing, Room 9146
Department of Housing and Urban Development
451 Seventh Street, SW

2. Office of Housing Enterprise Oversight (OFHEO )
1700 G Street, NW., Fourth Floor,
Washington, DC 20552.

USPS - Track & Confirm


**UNITED STATES POSTAL SERVICE®**

Home | Help | Sign In

Track & Confirm          FAQs

# Track & Confirm

### Search Results

Label/Receipt Number: **7010 0780 0001 7592 8500**
Expected Delivery Date: **February 11, 2011**
Class: **First-Class Mail®**
Service(s): **Certified Mail™**
         **Return Receipt**
Status: **Delivered**

Your item was delivered at 8:55 am on February 12, 2011 in DALLAS, TX 75266.

Detailed Results:

• Delivered, February 12, 2011, 8:55 am, DALLAS, TX 75266
• Notice Left (No Authorized Recipient Available), February 11, 2011, 10:57 pm, DALLAS, TX 75222
• Arrival at Unit, February 11, 2011, 10:53 pm, DALLAS, TX 75260
• Acceptance, February 08, 2011, 3:43 pm, MIAMI, FL 33180

Notification Options

**Track & Confirm by email**
Get current event information or updates for your item sent to you or others by email.   Go >

---

Track & Confirm

Enter Label/Receipt Number

Go >

---

Site Map   Customer Service   Forms   Gov't Services   Careers   Privacy Policy   Terms of Use   Business Customer Gateway

Copyright© 2010 USPS. All Rights Reserved.   No FEAR Act EEO Data   FOIA

---

**SENDER: COMPLETE THIS SECTION**

Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
Print your name and address on the reverse so that we can return the card to you.
Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to:

~~t~~i mortgage, Inc.
'0 Box 660065
Dallas, TX 75266-0065

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _JJ Beck_          ☐ Agent
                      ☐ Address

B. Received by (Printed Name)   FEB 18 2011   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

Article Number
(Transfer from service label)    7010 0780 0001 7592 8500

Form 3811, February 2004    Domestic Return Receipt    102595-02-M-15

7010 0780 0001 7592 8500

2/25/2011

# EXHIBIT F

# LETTER DATED APRIL 25, 2011 FROM SHAPIRO, FISHMAN & GACHÉ (SFG) CLAIMING THAT CITI WAS PROCEEDING WITH FORECLOSURE



# SHAPIRO, FISHMAN & GACHÉ, LLP
### ATTORNEYS AT LAW

| • Gerald M. Shapiro | • David S. Kreisman | • Barry S. Fishman | • Ronald M. Gaché, P.A. |
| Also Licensed in Illinois | Licensed in Illinois only | Also licensed in Illinois & California | |

## NOTICE REQUIRED BY THE FAIR DEBT COLLECTIONS
## PRACTICES ACT, 15 U.S.C. SECTION 1692, et seq.

1st Class Regular Mail

April 25, 2011

**RE:  Property Address: 730 86th Street, Miami Beach, FL 33141**
**Loan #: 2001377837**

The law firm of SHAPIRO, FISHMAN & GACHÉ, LLP has been retained to initiate a lawsuit to foreclose the mortgage on your property.  The following information is provided to you as required by the Federal Fair Debt Collections Practices Act:

1. As of April 22, 2011, our client has advised us that the amount of the debt is $28,732.19.
2. The creditor to whom the debt is owed is CITIMORTGAGE, INC.
3. The Fair Debt Collection Practices Act entitles you to dispute the debt, or any portion thereof, within thirty (30) days of your receipt of this notice.  If you do not dispute the debt within that period, it will be assumed to be valid by this office.  The law also entitles you to request that we provide you the name of the original creditor if the original creditor is different from the current creditor, CITIMORTGAGE, INC.  If you chose to dispute the debt, or any portion thereof, or if you choose to request the name of the original creditor, you must notify us within thirty (30) days of the date you receive this letter.
4. If you notify us in writing within thirty (30) days of the date you receive this notice that you are disputing the debt or any portion thereof, or if you notify us within thirty (30) days of the date you receive this letter that you want to know the name of the original creditor if that creditor is different from our client, CITIMORTGAGE, INC., then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.
5. The Fair Debt Collection Practices Act does not require that we wait until thirty (30) days from the date you receive this letter before filing a lawsuit to foreclose your mortgage.  In the event we do file a lawsuit to foreclose your mortgage, within thirty (30) days from the date you receive this letter, you still retain the right to dispute the debt or any portion thereof and you also retain the right to request the name of the original creditor if the original creditor is different from the current creditor, our client CITIMORTGAGE, INC.
6. If you request proof of the debt or the name of the original creditor within the thirty (30) day period that begins with your receipt of this letter, the law requires us to cease our efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you.

2424 North Federal Highway, Suite 360 • Boca Raton, Florida 33431 • voice: (561) 998-6700 • fax: (561) 998-6707
Also 4630 Woodland Corporate Boulevard, Suite 100 • Tampa, Florida 33614 • voice: (813) 880-8888 • fax: (813) 880-8800

**Boca Raton Office:** Marisa D. Ayrne•Marni Avidon•Richard W. Bassett•Danielle Stacy Bolton•Michelle B. Bonder•Ileen Cantor•Samantha Carr•Jennifer Chapkin•Ana Cohen•David Cramer•
Megan E. Crandall•Lara Nicole Diskin•Denise E. Elder•Jaline Fenwick•Jason Goldstein•Erika Hengst•Mark Holmberg•Cassandra Jeffries•Sarah R. Klein•Joy L. Kohl•Jennifer Kopf•Jacob Linhart•
Jennifer Maldonado•Adam L. Malloy•Chad Muney•Ugo Nwadike•Vanessa Ortiz•Vanessa Pelote•Robin Luis Reyes•Myrnabell Roche•Ryan Matthew Scher•Katherine B. Seele•Edward Snahady•
Scott Simone•Tracy Starasoler•Luciana Ugarte•Amy Weaver•Heidi J. Weinzetl•Matthew Weissberg•Rebecca Federspiel Wisner•David Wolin.
**Tampa Office:** Krishn Begneskie•Kelly Chase•Jessica Conte•Barbara A. Couture•Natalie Curtis•Chandra Dasrat•Joseph N. Dayan•Elizabeth Eckhart•Vivian J. Elliott•Gina Esposito•Michael Esposito•
Holian M. Fintel•Megan K. Gajewski•John Gallagher•Chris Gacinto•Melissa Giasi•Scott Griffith•Kevin Hinge•Summer Hodges•Greg Hughes•James Johnson•Caroline Kane•Dienpre Kelsey-Hofley•
Meghan Kenefic•Sarah Kinnett•Kenneth W. Lockwood•Stephanie Lorde•Kimberly Malot•Thomas McFadyen•Farzad M. Milani•Ben Molloe•Brandon K. Mullis•Barbara C. Peddicord•Tony Perez•
Maria L. Prohle•Steven G. Powrozek•Karla A. Ravenola•Jonathan Rosser•William Ruby•Jennifer Mouser Scott•Victoria Sheppard-Anderson•Craig T. Smith•James Spanolios•John N. Slupanich * of Counsel•
Jillian L. Tefft•Jennifer Terrana•Andrea Telle•Juree Vance•Mike Wallace•Daniel Whitney

Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, call (561) 998-6700.

Any written requests should be addressed to:

SHAPIRO, FISHMAN & GACHÉ, LLP
2424 North Federal Highway
Suite 360
Boca Raton, Florida 33431
S&F #: 11-227387

**PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, YOU ARE ADVISED THAT THIS OFFICE IS DEEMED TO BE A DEBT COLLECTOR. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

# EXHIBIT G

## PLAINTIFF'S RESPONSE TO SFG RECEIVED BY

## SFG ON MAY 6, 2011

730 86th Street
Miami Beach, FL  33141


April 29, 2011


Shapiro, Fishman & Gaché
4630 Woodland Corporate Boulevard, Suite 100
Tampa, FL  33614

Via Certified Mail #7010 3090 0002 4312 6505

Re:   CITIMORTGAGE, INC.
      Loan #2001377837-6
      S&F File #11-227387
      Address:  730 86th Street, Miami Beach, FL  33141

To Whom It May Concern:

On February 18, 2011, CITIMORTGAGE, INC. received via certified mail number 7010-0780-0001-7592-8500 my RESPA QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT & VALIDATION OF DEBT LETTER, TRUTH IN LENDING ACT REQUEST (copy of receipt provided for your records).   CITIMORTGAGE, INC. has not responded and on many occasions, I have spoken to CITIMORTGAGE, INC.'s representatives and informed them that I have confirmation that this letter has been received by CITIMORTGAGE, INC., but I have not received acknowledgement nor response.  CITIMORTGAGE, INC. is in violation of RESPA, TILA, Federal Debt Collection Practices Act and several others by not responding to my request and proceeding with collection and/or foreclosure activity.

I will report CITIMORTGAGE, INC.'s violation of the above referenced acts to the Federal Trade Commission, to the three major credit reporting bureaus.  I will also forward this letter to the Office of Housing Enterprise Oversight, Office of RESPA, the Office of the Comptroller of the Currency and the Florida Attorney General.

You are hereby notified that if you proceed with collection and/or foreclosure activity in CITIMORTGAGE, INC.'s name without CITIMORTGAGE, INC.'s response to my RESPA letter, your office will be violating my rights in accordance with the Federal Debt Collection Practices Act and the Florida Fair Debt Collection Practices Act.

Respectfully,



Grace D Solis

Encs

USPS - Track & Confirm


**UNITED STATES**
**POSTAL SERVICE**®

Track & Confirm          FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **7010 3090 0002 4312 6505**
Expected Delivery Date: **May 6, 2011**
Class: **First-Class Mail**®
Service(s): **Certified Mail**™
        **Return Receipt**
Status: **Delivered**

Your item was delivered at 10:45 am on May 06, 2011 in TAMPA, FL 33614.

Detailed Results:

- **Delivered, May 06, 2011, 10:45 am, TAMPA, FL 33614**
- **Arrival at Unit, May 06, 2011, 5:18 am, TAMPA, FL 33614**
- **Processed through Sort Facility, May 05, 2011, 10:56 pm, TAMPA, FL 33630**
- **Acceptance, May 04, 2011, 3:36 pm, MIAMI, FL 33180**

Notification Options

Track & Confirm by email

Get current event information or updates for your item sent to you or others by email.   ( Go > )

---

**Track & Confirm**

Enter Label/Receipt Number.

Go >

---

Site Map   Customer Service   Forms   Gov't Services   Careers   Privacy Policy   Terms of Use   Business Customer Gateway

Copyright© 2010 USPS. All Rights Reserved.   No FEAR Act EEO Data   FOIA

---

7010 3090 0002 4312 6505

**SENDER: COMPLETE THIS SECTION**

Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
Print your name and address on the reverse so that we can return the card to you.
Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to:

:piro, Fishman + Gache' LLP
30 Woodland Corporate Blvd.
ute 100
mpa, FL 33614

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X  C. Sully            ☐ Agent
                       ☐ Addressee
B. Received by ( Printed Name )   C. Date of Delivery
  Sully                  5-6-11
D. Is delivery address different from item 1?  ☐ Yes
  If YES, enter delivery address below:  ☐ No

3. Service Type
  ☐ Certified Mail    ☐ Express Mail
  ☐ Registered        ☐ Return Receipt for Merchandise
  ☐ Insured Mail      ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)    ☐ Yes

Article Number
nsfer from service la...    7010 3090 0002 4312 6505

orm 3811, February 2004      Domestic Return Receipt          102595-02-M-1540

# EXHIBIT H

# SECOND QWR RECEIVED BY CITI ON MAY 9, 2011 INFORMING IT THAT IT DID NOT RESPOND TO THE FIRST QWR

Grace D Solis
730 86th Street
Miami Beach, FL 33141

CITIMORTGAGE, INC.
Customer Research Team
PO Box 9442
Gaithersburg, MD 20898-9442

ATTN: ACCOUNT MANAGER

Certified Mail #: 7010 3090 0002 4312 6512

April 29, 2011

SECOND REQUEST - RESPA QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT
& VALIDATION OF DEBT LETTER, TILA REQUEST

This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e) and Regulation X at 24 C.F.R. 3500, and The Gramm Leach Bliley Act.

REF: Account # 2001377837-6

Dear Madam or Sir:

You are hereby notified that this is the second letter I send to your office.  I sent one previously on February 8, 2011 and I have not received a response within the sixty days time period allotted by Federal law.  Your office has proceeded in foreclosure activity through Shapiro, Fishman & Gaché in violation of RESPA, TILA, Federal Debt Collection Practices Act and several other laws.

I am again writing to you to complain about the accounting and servicing of this mortgage and my need for understanding and clarification of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.

I am writing to you to complain about the accounting and servicing of this mortgage and my need for understanding and clarification of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.

To date, the documents and information I have, that you have sent, and the conversations with your service representatives, have been unproductive and have not answered many questions.
It is my understanding that your company may have been accused of engaging in one or more predatory servicing or lending and servicing schemes. As a consumer, I am extremely concerned about such practices by anyone, let alone this mortgage company or anyone who has any interest this matter. I am concerned that such abuses are targeting the uneducated and uninformed consumer and disadvantaged, poor, elderly and minority Americans.

Needless to say, I am most concerned. I am worried that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected any credit rating, mortgage account and/or the debt or payments that I am currently, or may be legally obligated to.

3. GRACE D. SOLIS's right of collection via CITIMORTGAGE, INC. liability insurance and/or bond.

4. GRACE D. SOLIS's entitlement in filing and executing any instruments, as power of attorney for and by CITIMORTGAGE, INC. including but not limited by a new certificated security or any security agreement perfected by filing a UCC Financing Statement with the Secretary of State in the State where the CITIBANK, N.A., is located.

5. GRACE D. SOLIS's right to damages because of CITIMORTGAGE, INC. wrong-ful registra-tion, breach of intermediary responsibility with regard to GRACE D. SOLIS's asset by CITI-MORTGAGE, INC. issuing to Grace D Solis's a certified check for the original value of GRACE D. SOLIS's monetary instrument.

6. GRACE D. SOLIS's right to have account # 2001377837-6 completely set off because of CITIMORTGAGE, INC. wrongful registration, breach of intermediary responsibility with regard to GRACE D. SOLIS's monetary instrument/asset by CITIMORTGAGE, INC., sending confir-mation of set off of wrongful liability of GRACE D. SOLIS and issuing a certified check for the difference between the original value of GRACE D. SOLIS's monetary instrument/asset and what GRACE D. SOLIS mistakenly sent to CITIMORTGAGE, INC.as payment for such wrong-ful liability.

CITIMORTGAGE, INC. or any transfers, agents or assigns offering a rebuttal of this RESPA RE-QUEST must do so in the manner of this "RESPA REQUEST" in accordance of and in com-pliance with current statutes and/or laws by signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury while offering direct testimony with the official capacity as an appointed agent for CITIMORTGAGE, INC., in accordance with CITIMORTGAGE, INC., Articles of Incorporation, Article of Incorporation, By Laws duly signed by a current and duly sworn under oath director(s) of such corporation/Holding Corpora-tion/National Association. Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within sixty days. When no verified rebut-tal of this "RESPA REQUEST" is made in a timely manner, a "Certificate of Non-Response" serves as CITIMORTGAGE, INC. judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

Power of Attorney: When CITIMORTGAGE, INC. fails by not rebutting to any part of this "RESPA RE-QUEST" CITIMORTGAGE, INC. agrees with the granting unto GRACE D. SOLIS's unlimited Power of Attorney and any and all full authorization in signing or endorsing CITIMORTGAGE, INC.name upon any instruments in satisfaction of the obligation(s) of this RESPA REQUEST/Agreement or any agreement arising from this CITIMORTGAGE, INC. GRACE D. SOLIS's agreement. Pre-emption of or to any Bankruptcy proceeding shall not discharge any obligation(s) of this agreement. Consent and agreement with this Power of Attorney by CITIMORTGAGE, INC. waives any and all claims of GRACE D. SOLIS, and/or defenses and remains in effect until satisfaction of all obligation(s) by CITIMORT-GAGE, INC. has been satisfied.

Sincerely,

Grace D Solis

CC:

1. Federal Trade Commission
600 Pennsylvania Avenue NW,
Washington, DC. 20580

3. Office of RESPA and Interstate Land Sales
Office of Housing, Room 9146
Department of Housing and Urban Development
451 Seventh Street, SW

USPS - Track & Confirm



Home | Help |
Sign In

Track & Confirm          FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: 7010 3090 0002 4312 6512
Expected Delivery Date: May 7, 2011
Class: **First-Class Mail**®
Service(s): **Certified Mail**™
             **Return Receipt**
Status: **Delivered**

Your item was delivered at 1:17 am on May 09, 2011 in
GAITHERSBURG, MD 20898.

Detailed Results:
- **Delivered, May 09, 2011, 1:17 am, GAITHERSBURG, MD 20898**
- **Notice Left, May 07, 2011, 12:31 pm, GAITHERSBURG, MD 20898**
- **Arrival at Unit, May 07, 2011, 12:30 pm, GAITHERSBURG, MD 20898**
- **Processed through Sort Facility, May 06, 2011, 8:54 pm, GAITHERSBURG, MD 20898**
- **Acceptance, May 04, 2011, 3:35 pm, MIAMI, FL 33180**

Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.   Go >

Track & Confirm

Enter Label/Receipt Number.

Go >

Site Map    Customer Service    Forms    Gov't Services    Careers    Privacy Policy    Terms of Use    Business Customer Gateway

Copyright© 2010 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA

---

**SENDER: COMPLETE THIS SECTION**

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

Article Addressed to:

.timortgage, Inc.
Customer Research Team
P Box 9442
Gaithersburg, MD 20898-
9442

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X  *Kent Burgess*                    ☒ Agent
                                     ☐ Addressee

B. Received by ( Printed Name )      C. Date of Delivery
KENT BURGESS                         5-9-11

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☒ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

Article Number
(Transfer from service label)    7010 3090 0002 4312 6512

Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

7010 3090 0002 4312 6512

5/12/2011

# EXHIBIT I

# COPY OF EXECUTED NOTE, EXECUTED

# MORTGAGE AND RECORDED AOM SENT BY

# CITI ON MAY 20, 2011

I HEREBY CERTIFY
THAT THIS IS A
TRUE & CORRECT COPY
OF THE ORIGINAL INSTRUMENT

# NOTE

| | | | | Florida | |
|---|---|---|---|---|---|

December 17, 2003                    Plantation
[Date]                                          [City]                                           [State]

730 86TH ST, Miami Beach, FL  33141

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 50,000.00          (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is  Allstate Mortgage & Invest Inc

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of 4.750          %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First          day of each month beginning on February 1, 2004          . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on January 1, 2019          , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at 1000 Technology Drive, O' Fallon, MO  63304
                                                   or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 388.92

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

002001377837

FLORIDA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N(FL) (0005)                    Form 3210 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                    Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000     % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

002001377837

Form 3210 1/01

-5N(FL) (0005)

Page 2 of 3

Initials:

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____   _____        _____ (Seal)
                                                         Grace D. Solis            -Borrower

                                                            *(Sign Original Only)*

_____   _____

Pay To The Order of CitiMortgage, Inc.
F/K/A Citicorp Mortgage, Inc.
This _16th_ Day of _December_ 2003
Without recourse
By: _____
Print Name: Tina L. Abbott
Title: Ass't Secretary

CITIMORTGAGE, INC.
F/K/A CITICORP MORTGAGE, INC.
ATTORNEY IN FACT FOR:

Allstate Mortgage + Investment

002001377837

VMP-5N(FL) (0005)                        Page 3 of 3                     Form 3210 1/01

, 04-28-2004   03:29PM   FROM-FAMILY TITLE CORP.            954 693 8540      T-785  P.009/030  F-735

RECORD & RETURN TO:
FAMILY TITLE CORP.
150 S. Pinelsland Rd. #110
Plantation, Fl 33324
63-7754

Return To:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO  63179-0021

This document was prepared by:
CitiMortgage, Inc.
5280 Corporate Drive
WSE
Frederick, MD  21703

CFN  2003R0959001
Ok Bk 21934 Pgs 3834 - 3880; (17pgs
RECORDED 12/29/2003 10:01:44
MTG DOC TAX 175.00
INTANG TAX 100.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

*2001377837*

———————————————— [Space Above This Line For Recording Data] ————————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  December 17, 2003
together with all Riders to this document.
(B) "Borrower" is  Grace D. Solis, a Single Woman

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is   Allstate Mortgage & Invest Inc

Lender is a Broker
organized and existing under the laws of  Florida

002001377837

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3010  10/02

-6(FL) (0005)
Page 1 of 16                    Initials
VMP MORTGAGE FORMS - (800)521-7291

17

04-28-2004   03:30PM   FROM-FAMILY TITLE CORP.            954 693 8540        T-785   P.010/030   F-735

Lender's address is 8363 Pines Blvd, Pembroke Pines, FL  33024-6607

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated  December 17, 2003
The Note states that Borrower owes Lender  Fifty Thousand

Dollars
(U.S. $ 50,000.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than January 1, 2019
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider        ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                   ☐ Biweekly Payment Rider   ☒ Other(s) [specify]
                                                          Schedule "A"

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

002001377837

☻-6(FL) (0005)                       Page 2 of 16                        Form 3010  10/02

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the  County          [Type of Recording Jurisdiction]
of  Miami-dade                                                          [Name of Recording Jurisdiction]:
Legal Description is attached hereto and made a part hereof

Parcel ID Number:                                    which currently has the address of
730 86TH ST                                                                        [Street]
Miami Beach                                   [City] , Florida  33141-        [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

002001377837

BMP -6(FL) (0008)                       Page 3 of 16                Initials                Form 3010  10/02

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

002001377837

MP -6(FL) (0008)                                   Page 4 of 16                        Form 3010   10/02

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

0070011377837

-6(FL) (0005)                          Page 5 of 16                    Initials:        Form 3010  10/02

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

002001377837

~6(FL) (0005)

Page 6 of 16

Initials

Form 3010  10/02

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

002001377837

-6(FL) (0005)                                        Page 7 of 16              Initials                 Form 3010  10/02

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

002001377837

VMP®-6(FL) (0005)                              Page 8 of 16              Initials [signature]         Form 3010 10/02

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

002001377837

-6(FL) (0008)                          Page 9 of 16                        Form 3010  10/02

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

002001377837

Initials: _____

Page 10 of 18                          Form 3010  10/02

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

002001377837

-6(FL) (0005)                           Page 11 of 18                    Initials: _____        Form 3010  10/02

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

002001377837

-6(FL) (2005)                          Page 12 of 16                                    Form 3010  10/02

04-28-2004  03:32PM   FROM-FAMILY TITLE CORP.        954 693 8540         T-785  P.021/030  F-735

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

002001377837

Page 12 of 16                     Form 3010  10/02

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

002001377837

-6(FL) (0008)                                      Page 14 of 16                                    Form 3010   10/02

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

Witnesses:

_____          _____ (Seal)
Luis Fernandez                                          Grace D. Solis                    -Borrower

_____
Twilda S. Shbane.

002001377837

-6(FL) (0005)                                    Page 15 of 16                         Form 3010  10/02

**STATE OF FLORIDA,**                     *Broward*             County ss:
    The foregoing instrument was acknowledged before me this *17, Day of December*          by

*Grace D. Solis*


who is personally known to me or who has produced *his Drivers License*          as identification.

                                                                Notary Public    *Luis Rafael Campos*

> LUIS RAFAEL CAMPOS
> MY COMMISSION # DD 209078
> EXPIRES: May 6, 2007

002001377837

D2D.6(FL) (0005)                          Page 16 of 18            Initials                Form 3010  10/02

^ 04-28-2004   03:32PM   FROM-FAMILY TITLE CORP                    954 693 8540        T-785   P.028/030   F-735

CFN  2003R1959002
OR Bk 21934 Ps 3881 - 3884; (4pgs)
RECORDED 12/29/2003 10:01:44
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

*2001377837*

03-9758
RECORD & RETURN TO:
FAMILY TITLE CORP.
150 S. Pineisland Rd. #110
Plantation, Fl. 33324

Recording Requested By/Return to:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO 63179-0021

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of the Mortgage (herein "Assignor") whose address is 8363 Pines Blvd, Pembroke Pines, FL 33024-6607, does hereby grant, sell, assign, transfer and convey, unto CitiMortgage, Inc., a corporation organized and existing under the laws of the State of Delaware (herein "Assignee"), whose address is 15851 Clayton Road Ballwin, MO 63011, a certain Mortgage dated December 17, 2003, made and executed by Grace D. Solis, a Single Woman, to and in favor of Allstate Mortgage & Invest Inc upon the following described property situated in Miami-dade County, State of Florida:

Legal Description is attached hereto and made a part hereof,

such Mortgage having been given to secure payment of     $50,000.00     which Mortgage is of record
                                                 (Original Principal Amount)
in Book, Volume, or Liber No.     , at page     (or as No.    ) of the Records of Miami-dade County, Florida, together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

ASSIGNMENT OF MORTGAGE - FLORIDA
F0911BFL - 3/09/2001     (002001377637)          Page 1 of 2

04/28/2004 WED 15:52   [TX/RX NO 6485]  @026

TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on

_____ (Witness)

_____ (Witness)

_____ (Attest)

Seal:

Allstate Mortgage & Invest Inc
(Assignor)

BY: _____
(Authorized Signature)

This Instrument Prepared By:   Allstate Mortgage & Invest Inc
8363 Pines Blvd
Pembroke Pines, FL  33024-6607
(954) 450-9099

CITIMORTGAGE, INC.
F/K/A CITICORP MORTGAGE, INC.
ATTORNEY IN FACT FOR:

Allstate Mortgage + Invest Inc

04-28-2004   03:33PM   FROM-FAMILY TITLE CORP.                954 693 8540            T-785   P.028/030   F-735

SEE EXHIBIT " A "

THE WEST 24.85 FEET OF LOT 10, THE BLOCK 12, OF BISCAYNE BEACH SECOND ADDITION, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 46, AT PAGE 39, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

04-28-2004   03:33PM   FROM-FAMILY TITLE CORP          954 693 8540      T-785  P.028/030  F-735

LAST PAGE

Loan No. 002001377837

---

## Acknowledgment

State of  MD                    )
                                ) ss.:
County of  Frederick            )

On  12/16/2003          , before me a Notary Public in and for said County, appeared  Tim
  Elbot          , ASSISTANT SECRETARY, to me personally known, who, being by me duly
sworn, did say that he(she) is a duly authorized officer of  Citimortgage          , the
corporation named and which executed the within instrument that the seal affixed to said instrument is
the corporate seal of said corporation, and that said instrument was signed and sealed on behalf of
said corporation by authority of its Board of Directors and said officer did acknowledge said
instrument to be the free act and deed of said corporation.

NOTARY PUBLIC
MY COMMISSION EXPIRES:

KAREN D. BURRISS
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires December 11, 2005

MB2923  7/2001                          Page 1 of 1
Version CITI 2.4.0.20 11/19/2003

04/28/2004 WED 15:52  [TX/RX NO 6485] ☒029

# EXHIBIT J

# FIRST QWR TO ALLSTATE MORTGAGE SENT ON AUGUST 11, 2011 RETURNED AS UNABLE TO FORWARD

Grace Solis
730 86th St.
Miami Beach, FL 33141
USA



7011 0470 0001 2647 7670

CERTIFIED MAIL

U.S. POSTAGE
PAID
MIAMI,FL
33181
AUG 11 '11
AMOUNT
$6.43
00068479-10



Allstate Mortgage + Invest.
8363 Pines Boulevard
Pembroke Pines, FL 33024

NIXIE            330   DC 1        00  09/18/11
        RETURN TO SENDER
        NOT DELIVERABLE AS ADDRESSED
        UNABLE TO FORWARD
BC: 33141115530       *1487-00365-18-35

33141@11116

# EXHIBIT K

# FNMA RECEIVED FIRST QWR ON AUGUST 15, 2011

Grace D Solis
730 86th Street
Miami Beach, FL  33141

FANNIEMAE
7707 Bonneval Avenue, Suite 450
Jacksonville, FL  32216

ATTN: ACCOUNT MANAGER

Certified Mail #:  7011 0470 0001 2647 7687

August 10, 2011

RESPA QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT & VALIDATION OF
DEBT LETTER & TILA REQUEST
Federal Debt Collection Practices Act

**This letter is a "qualified written request" in compliance with and under the Real Estate
Settlement Procedures Act, 12 U.S.C. Section 2605(e) and Regulation X at 24 C.F.R.
3500 and The Gramm Leach Bliley Act.**

REF:  Account # 2001377837-6

Dear Madam or Sir:

I am writing to you to complain about the accounting and servicing of this mortgage and my need for
understanding and clarification of various sale, transfer, funding source, legal and beneficial owner-
ship, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related
to the servicing of this account from its origination to the present date.

To date, the documents and information I have, that you have sent, and the conversations with your
service representatives, have been unproductive and have not answered many questions. It is my un-
derstanding that your company may have been accused of engaging in one or more predatory servic-
ing or lending and servicing schemes. As a consumer, I am extremely concerned about such practices
by anyone, let alone this mortgage company or anyone who has any interest this matter. I am con-
cerned that such abuses are targeting the uneducated and uninformed consumer and disadvantaged,
poor, elderly and minority Americans.

Needless to say, I am most concerned. I am worried that potential fraudulent and deceptive practices
by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and
fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent account-
ing tricks and practices may have also negatively affected any credit rating, mortgage account and/or
the debt or payments that I am currently, or may be legally obligated to.

I hereby demand absolute 1st hand evidence from you of the original un-certificated or certificated se-
curity regarding account number 2001377837-6. In the event you do not supply me with the very secu-
rity it will be a positive confirmation on your part that you never really created and owned one. I also
hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to
me as well. Absent the actual evidence of the security I have no choice but to dispute the validity of
your lawful ownership, funding, entitlement right, and the current debt you allege I owe. By debt I am
referring to the principal balance you claim I owe; the calculated monthly payment and any fees
claimed to be owed by you or any trust or entity you may service or subservice for.

ble under the penalty of perjury while offering direct testimony with the official capacity as an appointed agent for FANNIEMAE., in accordance with FANNIEMAE., Articles of Incorporation, Article of Incorporation, By Laws duly signed by a current and duly sworn under oath director(s) of such corporation/Holding Corporation/National Association. Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within thirty days.  When no verified rebuttal of this "Debt Validation Letter" is made in a timely manner, a "Certificate of Non-Response" serves as FANNIEMAE judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

Power of Attorney: When FANNIEMAE fails by not rebutting to any part of this "Debt Validation Letter" FANNIEMAE agrees with the granting unto GRACE D. SOLIS's unlimited Power of Attorney and any and all full authorization in signing or endorsing FANNIEMAE name upon any instruments in satisfaction of the obligation(s) of this RESPA REQUEST/Agreement or any agreement arising from this FANNIEMAE GRACE D. SOLIS's agreement. Pre-emption of or to any Bankruptcy proceeding shall not discharge any obligation(s) of this agreement. Consent and agreement with this Power of Attorney by FANNIEMAE waives any and all claims of GRACE D. SOLIS, and/or defenses and remains in effect until satisfaction of all obligation(s) by FANNIEMAE has been satisfied.

Sincerely,

Grace D Solis

CC:

1. Federal Trade Commission
600 Pennsylvania Avenue NW,
Washington, DC. 20580

2. Office of Housing Enterprise Oversight (OFHEO )
1700 G Street, NW., Fourth Floor,
Washington, DC 20552.

3. Office of the Comptroller of the Currency
1301 McKinney Street, Suite 3450
Houston, TX  77010-9050

USPS.com® - Track & Confirm                                      Page 1 of 1

Customer Service          USPS Mobile                                    Register / Sign In

**USPS.COM**

Search USPS.com or Track Packages

Quick Tools          Ship a Package    Send Mail     Manage Your Mail      Shop     Business Solutions

# Track & Confirm

PRINT DETAILS

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| 70110470000126477687 | First-Class Mail® | Delivered | August 15, 2011, 11:34 am | JACKSONVILLE, FL 32216 | Expected Delivery By: August 13, 2011 Certified Mail™ Return Receipt |
| | | Notice Left (Business Closed) | August 13, 2011, 9:22 am | JACKSONVILLE, FL 32216 | |
| | | Acceptance | August 11, 2011, 4:25 pm | MIAMI, FL 33161 | |

**Check on Another Item**

What's your label (or receipt) number?

                                        Find

LEGAL                  ON USPS.COM              ON ABOUT.USPS.COM        OTHER USPS SITES
Privacy Policy         Government Services      About USPS Home          Business Customer Gateway
Terms of Use           Buy Stamps & Shop        Newsroom                 Postal Inspectors
FOIA                   Print a Label with Postage  Mail Service Updates  Inspector General
No FEAR Act EEO Data   Customer Service         Forms & Publications     Postal Explorer
                       Site Index               Careers

Copyright© 2011 USPS. All Rights Reserved.

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Fannie Mae
707 Bonneval Avenue
Suite 450
Jacksonville, FL 32216

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature]                    ☐ Agent
                                 ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
Rosa Estes

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   Transfer from service label    7011 0470 0001 2647 7687

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

7011 0470 0001 2647 7687

JACKSONVILLE FL 32216

https://tools.usps.com/go/TrackConfirmAction.action                9/16/2011

# EXHIBIT L

## SECOND QWR SENT TO ALLSTATE MORTGAGE

## & INVESTMENTS, INC. ON OCTOBER 27, 2011

## AND WAS RETURNED ATTEMPTED NOT KNOWN



UNITED STATES
POSTAL SERVICE

7010 2780 0002 2412 3416

Allstate Mortgage + Investments
8363 Pines Boulevard
Pemi, oi: Fi 22024

U.S.
MIA
OCT
AMI

B6 10/31/11

NIXIE   320   CE 1

RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD

BC: 33141111630   *0806-03554-27-40

Grace Solis
730 86th St
Miami Beach, FL 33141

# EXHIBIT M

# CITI'S RESPONSE TO QWR DATED NOVEMBER 4,

# 2011 STATING THEY WOULD REMOVE

# PLAINTIFF'S NUMBER FROM AUTOMATIC

# DIALER

CitiMortgage, Inc.
Research & Litigation
1000 Technology Drive
MS 321 / 3N
O'Fallon, MO 63368

www.citimortgage.com

CitiMortgage



November 4, 2011

**VIA Regular Mail**

GRACE SOLIS
730 86TH ST
MIAMI BEACH  FL  33141

Dear CitiMortgage Customer(s):

This letter is in response to your inquiry that was received in the Default Research and Litigation Department of CitiMortgage Inc. (CMI) on November 3, 2011. I am responding on behalf of CMI as a Legal Support Specialist.

Please be advised that CMI is a wholly owned subsidiary of a federally chartered financial institution. CMI expects its customers to abide fully with the legal obligations set out in the loan documentation.

As requested, CMI has placed an "In Dispute" comment on your CMI trade line. CMI does not control or determine credit scoring models or calculations. Therefore, we are unable to provide information on how or if this dispute code may impact your credit report, FICO, or other credit scores. If you have questions regarding this comment appearing on your credit report, please contact the credit bureau agencies directly.

We are in receipt of your written request to cease and desist all collection calls with regard to your mortgage loan. In accordance with the Fair Debt Collections Practices Act (FDCPA), we have removed your information from our auto-dialer system.

With regard to your dispute of the debt, the attached Note, Mortgage Agreement and payment history provide verification of the debt.

Item 1 – Enclosed please find a complete Payment History and CMI Transaction Codes for payment history.

Item 2 – Please contact the Law Offices of Shapiro & Fishman at 813- 880- 8888 for reinstatement figures for this loan.

Item 3 – Enclosed please find a copy of the Assignment of Mortgage from Allstate Mortgage & Invest Inc to CitiMortgage, Inc. CMI is the servicer of the Note and Mortgage.

# EXHIBIT N

# PLAINTIFF'S CELL PHONE WITH CALLS FROM

# CITI'S TELEPHONE NUMBERS 636-261-2484 and

# 469-220-0000



**Incoming(63/7...**

CITIMORT...

636-261-2484

 

Received time & date
11-04-2011 09:13 AM

Call Time
00:00:24

**Add To Contacts**   **Erase**   **Unlock**   **Copy to dialer**

SAMSUNG



‹ *ncoming(62/79* ›

CITY FIN M...

469-220-0000



Received time & date
11/07/2011 06:20 PM

Call Time
00:00:23

**Add To Contacts**   **Erase**   **Unlock**   **Copy to dialer**

SAMSUNG

# EXHIBIT O

## PLAINTIFF'S CELL PHONE WITH CALLS FROM

## CITI'S TELEPHONE NUMBERS 636-261-9024



# Inbox(2/140)

‹   ›

From:6362619024

1/2 VM2TXT: This
message for Grace Elise
this is Monique calling
from city mortgage.
Please give me a call at
                extension
        Thank you.

**Reply | Forward | Erase | More**

SAMSUNG



Inbox(1/140)

From:6362619024

2/2 VM2TXT: -To listen.
call VM & Press ##38

Wed. May 30 5:39PM

Reply | Forward | Erase | More

SAMSUNG

# EXHIBIT P

## CITI'S LETTER SENT TO PLAINTIFF ON AUGUST 29, 2012 STATING THAT IT RECEIVED THE CEASE AND DESIST LETTER

CitiMortgage, Inc.
Research & Litigation
1000 Technology Drive
MS F 42 X 204
O'Fallon, MO 63368

**citi**

Mortgage

August 29, 2012

VIA Regular Mail

GRACE D SOLIS
730 86TH ST
MIAMI BEACH FL 33141

Dear CitiMortgage Customer(s):

This letter is in response to an inquiry received in the Default Research and Litigation Department of CitiMortgage Inc. (CMI) on

Below is the response to the inquiry.

CMI reports the borrower's loan to the four credit reporting agencies, Equifax, Experian, Trans Unions, and Innovis. This loan has been reported as 180 days past due foreclosure started. Per the Fair Credit Reporting Act, CMI is required to only report accurate information to the credit reporting bureaus. As such, we are unable to make any amendments to the credit reporting of your account. CMI does not control or determine credit scoring calculations; therefore we are unable to provide information on how the borrower's loan impacts the credit report, FICO, or other credit scores. Please contact the credit bureaus directly

We are in receipt of your written request to cease and desist all collection calls with regards to your client's mortgage loan. In accordance with the Fair Debt Collections Practices Act (FDCPA) we have removed their information from our auto-dialer system.

Enclosed please find a copy of your Payment History, Note, Mortgage, and Assignment. These documents serve as validation of debt and include the originating lenders name and address.

CMI is the servicer of the note and mortgage and has the right to collect payments on this loan.

Item 1 - Enclosed please find copy of payment history.

Item 2 through Item 5 - Enclosed please find copy of Note and Mortgage.

Item 6 through Item 8 - CMI is not obligated to provide you with the information you requested in your letter under items 6 through 8 as these questions are outside the scope of information required to be provided under the Qualified Written Request provisions as set forth in RESPA.

**EXHIBIT Q**


**PLAINTIFF'S DEBT VALIDATION LETTER**

**RECEIVED BY SFG ON JUNE 25, 2013**

730 86th Street
Miami Beach, FL  33141


June 25, 2013


Shapiro, Fishman & Gaché, LLP
2424 North Federal Highway, Suite 360
Boca Raton, FL  33431

Re:  Account #2001377837

Via Certified Mail #7012 2210 0000 7751 5981

To Whom It May Concern:

This letter is being sent to you in response to a notice sent to me.  Be advised that this is not a refusal to pay, but a notice sent pursuant to the Fair Debt Collection Practices Act, 15 USC 1692g Sec. 809 (b) that your claim is disputed and validation is requested.

This is NOT a request for "verification" or proof of my mailing address, but a request for VALIDATION made pursuant to the above named Title and Section.  I respectfully request that your offices provide me with competent evidence that I have any legal obligation to pay you.

Please provide me with the following:

What the money you say I owe is for;
Explain and show me how you calculated what you say I owe;
Provide me with copies of any papers that show I agreed to pay what you say I owe;
Provide a verification or copy of any judgment, if applicable;
Identify the original creditor;
Prove the Statute of Limitations has not expired on this account;
Show me that you are licensed to collect in my state;
Provide me with your license numbers and Registered Agent;

At this time I will also inform you that if your offices have reported invalidated information to any of the three major credit bureaus (Equifax, Experian, or TransUnion) this action may constitute fraud under both Federal and State Laws.  Due to this fact, if any negative mark is found on any of my credit reports by your company or the company that you represent, I will not hesitate in bringing legal action against you for the following:

1

Violation of the Fair Credit Reporting Act;
Violation of the Fair Debt Collection Practices Act;
Defamation of Character.

If your offices are able to provide the proper documentation as requested in the following Declaration, I will require at least thirty days for reviewing and investigating this information. During such time, all collection activity must cease and desist.

Also during this validation period, if any action is taken which could be considered detrimental to any of my credit reports, I will consult with my legal counsel for suit. This includes any listing of any information to a credit reporting repository that could be inaccurate or invalidated or verifying an account as accurate when in fact there is not provided proof that it is.

If your offices fail to respond to this validation request within thirty days from the date of your receipt, all references to this account must be deleted and completely removed from my credit file and a copy of such deletion request shall be sent to me immediately.

I also request, in writing, that no telephone contact be made by your offices to my home or to my place of employment. If your offices attempt telephone communication with me, including but not limited to, computer generated calls, calls or correspondence sent to or with any third parties, it will be considered harassment and I will have no choice but to file suit. All future communications with me MUST be done in writing and sent to the address noted in this letter by USPS.

It would be advisable that you assure that your records are in order before I am forced to take legal action. This is an attempt to correct your records and any information obtained shall be used for that purpose.

Best regards,

Grace D Solis

USPS.com® - Track & Confirm

English          Customer Service          USPS Mobile                                        Register / Sign In

USPS.COM

Enter up to 10 Tracking # Find

**Track & Confirm**

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| 7012221010007751981 | First-Class Mail® | Delivered | June 28, 2013, 8:04 am | BOCA RATON, FL 33431 | Expected Delivery By: June 27, 2013 Certified Mail™ Return Receipt |
| | | Available for Pickup | June 27, 2013, 4:23 pm | BOCA RATON, FL 33431 | |
| | | Arrival at Unit | June 27, 2013, 4:02 pm | BOCA RATON, FL 33431 | |
| | | Depart USPS Sort Facility | June 27, 2013 | WEST PALM BEACH, FL 33416 | |
| | | Processed at USPS Origin Sort Facility | June 26, 2013, 11:32 pm | WEST PALM BEACH, FL 33416 | |
| | | Depart USPS Sort Facility | June 25, 2013 | MIAMI, FL 33152 | |
| | | Processed at USPS Origin Sort Facility | June 25, 2013, 8:16 pm | MIAMI, FL 33152 | |
| | | Dispatched to Sort Facility | June 25, 2013, 8:34 pm | MIAMI BEACH, FL 33141 | |
| | | Acceptance | June 25, 2013, 1:39 pm | MIAMI BEACH, FL 33141 | |

**Check on Another Item**

What's your label (or receipt) number?

Find

LEGAL                    ON USPS.COM                    ON ABOUT.USPS.COM                    OTHER USPS SITES



# EXHIBIT R

## _NOTICE REQUIRED BY THE FDCPA_ SERVED BY

## SFG ON JUNE 29, 2013 CLAIMING CITI IS THE

## CREDITOR

## NOTICE REQUIRED BY THE FAIR DEBT COLLECTIONS
## PRACTICES ACT, 15 U.S.C. SECTION 1692, et seq.

The law firm of SHAPIRO, FISHMAN & GACHÉ, LLP has been retained to initiate a lawsuit to foreclose the mortgage on your property. The following information is provided to you as required by the Federal Fair Debt Collections Practices Act:

1.    As of February 19, 2013, our client has advised us that the amount of the debt is $32,543.05.

2.    The creditor to whom the debt is owed is CITIMORTGAGE, INC.

3.    The Fair Debt Collection Practices Act entitles you to dispute the debt, or any portion thereof, within thirty (30) days of your receipt of this notice. If you do not dispute the debt within that period, it will be assumed to be valid by this office. The law also entitles you to request that we provide you the name of the original creditor if the original creditor is different from the current creditor, CITIMORTGAGE, INC.. If you chose to dispute the debt, or any portion thereof, or if you choose to request the name of the original creditor, you must notify us within thirty (30) days of the date you receive this letter.

4.    If you notify us in writing within thirty (30) days of the date you receive this notice that you are disputing the debt or any portion thereof, or if you notify us within thirty (30) days of the date you receive this letter that you want to know the name of the original creditor if that creditor is different from our client, CITIMORTGAGE, INC., then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

5.    Florida law provides that your answer to the attached complaint is to be filed within twenty (20) days. The Fair Debt Collection Practices Act allows you thirty (30) days to dispute the debt. Therefore, no request will be made to the Court for a judgment until the expiration of thirty (30) days after your receipt of this complaint and summons. If you request proof of the debt or the name of the original creditor within the thirty (30) day period that begins with your receipt of this petition and summons, the law requires us to cease our efforts (through litigation or otherwise) to collect the debt until we mail the request information to you.

6.    Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, call (561) 998-6700.

7.    Please be advised that if your personal liability for this debt has been modified or extinguished by a discharge in bankruptcy, this Notice is provided solely to foreclose the mortgage remaining on your property and is not an attempt to collect the discharged personal obligation.

Any written requests should be addressed to:

# EXHIBIT S

## STATE FORECLOSURE COMPLAINT CLAIMS

## FNMA IS THE OWNER OF THE NOTE AND THAT

## CITI IS THE SERVICER CONTRADICTING THE

## *NOTICE REQUIRED BY THE FDCPA* FILED BY SFG

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

CitiMortgage, Inc.

      Plaintiff,

-vs.-

Grace Denise Solis a/k/a Grace D. Solis and Sylvia
Solis and Shirley Janice Solis a/k/a Shirley J. Solis;
Unknown Spouse of Grace Denise Solis a/k/a
Grace D. Solis; Unknown Spouse of Sylvia Solis;
Unknown Spouse of Shirley Janice Solis a/k/a
Shirley J. Solis; CitiBank, N.A, Successor in
Interest to CitiBank, Federal Savings Bank; Miami-
Dade County, Florida; Kingsway Amigo Insurance
Company f/k/a U.S. Security Insurance Company
a/s/o Esther Gonzalez; Bristol West Insurance
Company a/s/o Lesly Augustine Hogu; Capital One
Bank (USA), N.A.; Biscayne Beach Homeowners
Association, Inc.; Unknown Parties in Possession
#1, If living, and all Unknown Parties claiming by,
through, under and against the above named
Defendant(s) who are not known to be dead or
alive, whether said Unknown Parties may claim an
interest as Spouse, Heirs, Devisees, Grantees, or
Other Claimants; Unknown Parties in Possession
#2, If living, and all Unknown Parties claiming by,
through, under and against the above named
Defendant(s) who are not known to be dead or
alive, whether said Unknown Parties may claim an
interest as Spouse, Heirs, Devisees, Grantees, or
Other Claimants

      Defendant(s).

Case #:

2012 — c A - C20531

## VERIFIED COMPLAINT TO FORECLOSE MORTGAGE

Plaintiff, **CitiMortgage, Inc.**, sues the Defendants and states:

1. This is an action to foreclose a mortgage on real property located in Miami-Dade
County, Florida, and by reason thereof the venue for this matter is in Miami-Dade County,
Florida.

2.   Borrower(s) Grace Denise Solis a/k/a Grace D. Solis executed and delivered a Promissory Note ("Note") dated December 17, 2003 and Grace Denise Solis a/k/a Grace D. Solis executed a Mortgage ("Mortgage") dated December 17, 2003 securing payment of the Note to the payee named thereon.  The Mortgage was recorded in Official Records Book 21934, Page 3864, of the Public Records of Miami-Dade County, Florida, and mortgaged the property described in the mortgage then owned by and in possession of the mortgagor(s).  True and correct copies of said Note and Mortgage, are attached hereto as Exhibit "A" and Exhibit "B" respectively.

3.   Federal National Mortgage Association is the owner of the note.   Plaintiff is the servicer of the loan and is the holder of the note.  Federal National Mortgage Association has authorized Plaintiff to bring this action.

4.   The Mortgage of the Plaintiff is a lien superior in dignity to any prior or subsequent right, title, claim, lien or interest arising out of mortgagor or the mortgagee's predecessors in interest.

5.   The Defendants, Grace Denise Solis a/k/a Grace D. Solis and Sylvia Solis and Shirley Janice Solis a/k/a Shirley J. Solis, are the current owners of the real property which is the subject of the Mortgage.

6.   All conditions precedent to the acceleration of the Note and Mortgage and the filing of the instant foreclosure complaint have been fulfilled.

7.   There has been a default in the payment of the amounts due under the Note and Mortgage in that the payment due for February 1, 2011 and all subsequent payments have not been made.

8.   Plaintiff declares the full amount payable under the Note and Mortgage to be due and payable.

9.   Defendant who may be held personally liable for a deficiency, if any, is the notemaker, Grace Denise Solis a/k/a Grace D. Solis, unless any of such Defendant have been discharged in bankruptcy in which event no deficiency is or will be sought.

10.   There is now due and owing the principal sum of $28,152.23, together with all sums that may be due for taxes, insurance, escrow advances, and expenses and costs of suit including but not limited to filing fees, recording fees, title search and examination fees, fees due for service of process and such other costs as may be allowed by the court.

11.   Plaintiff is obligated to pay Plaintiff's attorney a reasonable fee for their services and seeks an award of attorney's fees.

12.   That the Defendant, Unknown Spouse of Grace Denise Solis a/k/a Grace D. Solis, might have some claim or demand in the subject property by virtue of spousal homestead interest, if any, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property.  The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

13.   That the Defendant, Unknown Spouse of Sylvia Solis, might have some claim or demand in the subject property by virtue of spousal homestead interest, if any, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property.  The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

14.   That the Defendant, Unknown Spouse of Shirley Janice Solis a/k/a Shirley J. Solis, might have some claim or demand in the subject property by virtue of spousal homestead interest, if any, and all other rights, claims, liens, interest, encumbrances and equities, either

recorded or unrecorded, if any in the subject real property.  The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

15. That the Defendant, CitiBank, N.A, Successor in Interest to CitiBank, Federal Savings Bank, might have some claim or demand in the subject property by virtue of a Mortgage in the amount of $104,000.00, filed September 29, 2005, in Official Records Book 23824, Page 3563, and by virtue of a Judgment filed in Official Records Book 27826, Page 438, by virtue of a Lis Pendens filed in Official Records Book 28197, Page 126, of the Public Records of Miami-Dade County, Florida, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property.  The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

16. That the Defendant, Miami-Dade County, Florida, might have some claim or demand in the subject property by virtue of Order of the Special Master, filed in Official Records Book 20926, Page 3636, of the Public Records of Miami-Dade County, Florida, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property.  The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

17. That the Defendant, Kingsway Amigo Insurance Company f/k/a U.S. Security Insurance Company a/s/o Esther Gonzalez, might have some claim or demand in the subject property by virtue of a Judgment, filed in Official Records Book 23870, Page 4650, of the Public Records of Miami-Dade County, Florida, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property.

The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

18. That the Defendant, Bristol West Insurance Company a/s/o Lesly Augustine Hogu, might have some claim or demand in the subject property by virtue of a Judgment, filed in Official Records Book 25254, Page 642, of the Public Records of Miami-Dade County, Florida, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property. The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

19. That the Defendant, Capital One Bank (USA), N.A., might have some claim or demand in the subject property by virtue of a Judgment, filed in Official Records Book 28395, Page 2996, of the Public Records of Miami-Dade County, Florida, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property. The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

20. That the Defendant, Biscayne Beach Homeowners Association, Inc., might have some claim or demand in the subject property by virtue of all unpaid assessments, if any, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property. The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

21. That the Defendant, UNKNOWN PARTIES IN POSSESSION #1, if living, and all Unknown Parties claiming by, through, under and against the above named Defendant(s) who are not known to be dead or alive, whether said Unknown Parties may claim an interest as Spouse, Heirs, Devisees, Grantees, or Other Claimants might have some claim or demand in the

subject real property by virtue of possession, whether by tenancy from the record title holder or mere possession only, however, any such claim or demand is inferior to the lien of the Mortgage.

22. That the Defendant, UNKNOWN PARTIES IN POSSESSION #2, if living, and all Unknown Parties claiming by, through, under and against the above named Defendant(s) who are not known to be dead or alive, whether said Unknown Parties may claim an interest as Spouse, Heirs, Devisees, Grantees, or Other Claimants might have some claim or demand in the subject real property by virtue of possession, whether by tenancy from the record title holder or mere possession only, however, any such claim or demand is inferior to the lien of the Mortgage.

WHEREFORE, the Plaintiff respectfully requests that the court enter a Final Judgment: (a) enumerating all amounts the court determines due to Plaintiff pursuant to said Note and Mortgage, (b) ordering the Clerk of the Court to sell the subject property to satisfy the amount due Plaintiff, in whole or in part; (c) adjudging that the right, title and interest of any party claiming by, through, under or against any Defendant named herein be deemed inferior and subordinate to the Plaintiff's Mortgage lien and be forever barred and foreclosed; (d) retaining jurisdiction of the court in this action to make any and all further orders and judgments as may be necessary and proper, including issuance of a writ of possession and the entry of a deficiency, when and if such deficiency is sought if the parties liable under the Note have not been discharged in bankruptcy (however no deficiency will be sought if the parties liable under the Note were subject to an order allowing Plaintiff or its predecessors-in-interest only in rem relief

(This space intentionally left blank.)

from the bankruptcy automatic stay); and, (e) for such other and further relief as the court may

deem just and proper.

### FLA. R. CIV. P. 1.110(b) VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing Complaint to Foreclose Mortgage, and the facts alleged therein are true and correct to the best of my knowledge and belief.

By: _Abigail Beach_
Print Name: Abigail Beach
Title: Vice President- Document Control
Date: June 7 2013
Plaintiff: CitiMortgage, Inc.

\*Pursuant to Fla. R. Jud. Admin. 2.516(b)(1)(A), Plaintiff's counsel hereby designates its primary email address for the purposes of email service as: SFGBocaService@logs.com\*

SHAPIRO, FISHMAN & GACHÉ, LLP
Attorneys for Plaintiff
2424 North Federal Highway, Ste 360
Boca Raton, Florida 33431
Telephone: (561) 998-6700
Email: sdickinson@LOGS.com

By: _Lara Diskin_
Scott Dickinson, Esq.
FL Bar # 542970

LARA DISKIN
FL BAR #43811

Pursuant to the Fair Debt Collections Practices Act, you are advised that this office may be deemed a debt collector and any information obtained may be used for that purpose.
11-227387 FC01 CMI

**EXHIBIT T**

**NOTE ATTACHED TO THE COMPLAINT WITH A**

**SECOND ENDORSEMEMENT AND SIGNATURE**

**FROM JANET L. SIMS, SENIOR VP CITI**

# NOTE

December 17, 2003              Plantation                    Florida

[Date]                        [City]                       [State]

730 86TH ST, Miami Beach, FL  33141

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 50,000.00          (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is  Allstate Mortgage & Invest Inc

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of 4.750           %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the First          day of each month beginning on February 1, 2004          . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on January 1, 2019          , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."
I will make my monthly payments at 1000 Technology Drive, O' Fallon, MO  63304
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 388.92

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

FLORIDA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N(FL) (0005)          Form 3210 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                        Initials: 

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000**    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Notice of Dishonor" means the "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



Form 3210 1/01
Initials: ___

-5N(FL) (0006)



## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____          _____ (Seal)
                                          Grace D. Solis                -Borrower

                                                    *(Sign Original Only)*

_____

Pay To The Order of CitiMortgage, Inc.
F/K/A Citicorp Mortgage, Inc.
This 16th Day of December 2003
Without recourse
By _____
Print Name: Tina C. Albert
Title: Ass't Secretary

CITIMORTGAGE, INC.
F/K/A CITICORP MORTGAGE, INC.
ATTORNEY IN FACT FOR:

Allstate Mortgage + Investment

Pay to the order of

without recourse on us CitiMortgage, Inc.
F/K/A Citicorp Mortgage, Inc.
D/B/A Citicorp Mortgage, Inc in NM, on it's own
behalf or as Attorney-In-Fact for: Citibank FSB;
Citibank (New York State); Citibank (Nevada), NA;
Citibank, NA F/K/A Citibank (West) FSB

Janet L. Sims, Senior Vice President
CitiMortgage, Inc.



-5N(FL) (0005)                    Page 3 of 3                    Form 3210 1/01

# EXHIBIT U

# JP MORGAN CHASE BANK, N.A. SENDS LETTER TO PLAINTIFF ON SEPTEMBER 5, 2013 WITH A COPY OF PLAINTIFF'S QWR ADDRESSED TO FNMA STATING THEY COULD NOT LOCATE PLAINTIFF'S ACCOUNT

# CHASE ⬡

**Chase**
3415 Vision Drive
Columbus, OH 43219-6009
(800) 848-9136 Customer Care
(800) 582-0542 TDD/Text Telephone

September 3, 2013

Grace D. Solis
730 86th St.
Miami Beach, FL 33141

Dear Grace D. Solis:

This letter is in response to the enclosed correspondence that
JPMorgan Chase Bank, N.A. received recently.

With the information provided in the correspondence, we could not identify a Chase account.
You may resubmit your request with additional information, such as a
JPMorgan Chase Bank, N.A. statement, a Chase loan number, or the Social Security number of
the primary borrower.  Please send the information to:

JPMorgan Chase Bank, N.A.
P.O. Box 24696
Columbus, OH  43224-0696

If you have questions about information on a credit report, contact the credit bureau that
provided the information to initiate an inquiry with the credit bureau.  If you initiate an inquiry
with the credit bureau, Chase will automatically receive and respond to the inquiry within 30
days.

Chase's goal is to provide the highest level of quality service.  If you have any questions, please
contact Customer Care at (800) 848-9136.

Sincerely,

Customer Care

730 86th Street
Miami Beach, FL 33141

Customer Request
Management

AUG 2 3 2013

August 14, 2013

27

Fannie Mae
3900 Wisconsin Avenue, NW
Washington, DC 20016-2892

Via US Certified Mail #7011 3500 0003 0415 7975

Attn: Mortgage loan accounting department

RE Loan #2001377837-6

Dear Sir or Madam,

I dispute the amount that is owed and request that you send me information about the fees and costs of the accounting on the account. This is a Qualified Written Request, pursuant to Real Estate Settlement and Procedures Act section (2605(e)) and the Helping Families Save Their Homes Act.

Specifically, I am requesting the itemization of the following:

1. a complete payment history that can be easily read and understood including, but not limited to, the dates and amounts of all the payments made on the loan to date:

2. a breakdown of the amount of claimed arrears of delinquencies;

3. The name, address and phone number of the owner of the mortgage/debt.

4. An explanation of what you mean by assignment, sale, or transfer. Which one is it? Please include a copy of any all assignments, proof of sale, proof of transfer and to whom.

In order to avoid any misunderstanding, all communication shall henceforth be on the record, i.e. in writing and duly served. Please serve all communications and process directly to the mailing address provided above.

**I am hereby requesting in writing that neither you, nor any agent on your behalf, call me at home or at work. Do not call me at my home number, or at my place of employment. Please give this information to the appropriate parties within your company so they may comply.**

Thank you for taking to acknowledge and answer the request s required by Real Estate Settlement and Procedures Act section (2605(e)) and the Helping Families Save Their Homes Act.

Very truly yours,

Grace D Solis

**From:** US_Postal_Service <US_Postal_Service@usps.com>
**To:** solis.g <solis.g@aol.com>
**Subject:** U.S. Postal Service Track & Confirm email Restoration - 70113500000304157975
**Date:** Tue, Feb 4, 2014 9:51 am

This is a post-only message. Please do not respond.

Grace Solis has requested that you receive this restoration information for Track & Confirm as listed below.

Current Track & Confirm e-mail information provided by the U.S. Postal Service.

Label Number: 70113500000304157975

Service Type: Certified Mail

| Shipment Activity | Location | Date & Time |
|---|---|---|
| Delivered | WASHINGTON DC 20016 | August 19, 2013 11:01 am |
| Arrival at Unit | WASHINGTON DC 20016 | August 19, 2013 8:55 am |
| Processed through USPS Sort Facility | WASHINGTON DC 20066 | August 19, 2013 3:26 am |
| Depart USPS Sort Facility | WASHINGTON DC 20066 | August 18, 2013 |
| Processed through USPS Sort Facility | WASHINGTON DC 20066 | August 17, 2013 11:42 pm |
| Depart USPS Sort Facility | MIAMI FL 33152 | August 15, 2013 |
| Processed at USPS Origin Sort Facility | MIAMI FL 33152 | August 15, 2013 8:19 pm |
| Dispatched to Sort Facility | HOLLYWOOD FL 33024 | August 15, 2013 6:09 pm |
| Acceptance | HOLLYWOOD FL 33024 | August 15, 2013 3:30 pm |

USPS has not verified the validity of any email addresses submitted via its online Track & Confirm tool.

For more information, or if you have additional questions on Track & Confirm services and features, please visit the Frequently Asked Questions (FAQs) section of our Track & Confirm tool at http://www.usps.com/shipping/trackandconfirmfaqs.htm.



# EXHIBIT V

## CITI'S SEPTEMBER 17, 2013 RESPONSE TO QWR, COPY OF NOTE DID NOT CONTAIN JANET L. SIM'S ENDORSEMENT AS PRESENTED IN THE STATE COMPLAINT

CitiMortgage Inc           1000 Technology Drive
Research & Litigation      MS203 / TN
www.citimortgage.com       O'Fallon, MO 63368



September 16, 2013

<u>VIA Regular Mail</u>

GRACE D SOLIS
730 86TH ST
MIAMI BEACH FL 33141

Dear CitiMortgage Customer(s):

This letter is in response to an inquiry dated August 14, 2013 received in the Default
Research and Litigation Department of CitiMortgage Inc. (CMI) on August 27, 2013.

Below is the response to the inquiry.

We are in receipt of your written request to cease and desist all collection calls with
regards to your mortgage loan.  In accordance with the Fair Debt Collections Practices
Act (FDCPA), we have removed your information from our auto-dialer system.

As requested, CMI has placed an "In Dispute" comment on your CMI trade line.  CMI
does not control or determine credit scoring models or calculations.  Therefore, we are
unable to provide information on how or if this dispute code may impact your credit
report, FICO, or other credit scores.  If you have further questions regarding this
comment appearing on your credit report, please contact the credit bureau agencies
directly.

Enclosed please find a copy of your Payment History, CMI Transaction Codes, Note,
Mortgage, Name/Signature Certification, Assignment and Welcome Letter(s).  These
documents serve as validation of debt and include the originating lenders name and
address.

CMI is the servicer of the note and mortgage and has the right to collect payments on this
loan. As of August 28, 2013 the account is paid to January 1, 2011.

CMI is the servicer of the Note and Mortgage.  Federal National Mortgage Association
(FNMA), 3900 Wisconsin Avenue NW, Washington DC 20016, 1-800-732-6643 is the
investor.

SOLIS
PAGE 2


Based on the completed research, CitiMortgage trusts this letter has addressed your concerns on the above loan. Should you have any further questions, please feel free to contact me directly at 1-636-261-7751, Monday through Friday 8:00am until 4:00pm (CT).  When you call or write to us, please refer to loan number 2001377837. Thank you.

Sincerely,

Kimberly Siller
Legal Support Specialist

Enclosure(s)


"This is an attempt to collect a debt, any information obtained will be used for those purposes"


'Calls are randomly monitored and recorded to ensure quality service


If an attorney represents you, please refer this letter to such attorney and provide us with such attorney's name, address and telephone number.

# NOTE

December 17, 2003                    Plantation                                      Florida
        [Date]                              [City]                                        [State]

730 86TH ST, Miami Beach, FL  33141

                                    [Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 50,000.00            (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  Allstate Mortgage & Invest Inc

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.750        %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First     day of each month beginning on February 1, 2004          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on January 1, 2019          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1000 Technology Drive, O' Fallon, MO  63304

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 388.92

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

002001377837

FLORIDA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®-5N(FL) (0005)                    Form 3210 1/01
        VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                        Initials: ___

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

002001377837

VMP®-5N(FL) (0005)                           Page 2 of 3                           Form 32 ▨ 1/01

Initials: ▨

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____          _____ (Seal)
                                          Grace D. Solis                -Borrower

                                                    *(Sign Original Only)*

_____


Pay To The Order of CitiMortgage, Inc.          CITIMORTGAGE, INC.
F/K/A Citicorp Mortgage, Inc.                   F/K/A CITICORP MORTGAGE, INC.
This _16th_ Day of _December_ 2003              ATTORNEY IN FACT FOR:
Without recourse
By: _____                       _Allstate Mortgage + Investment_
Print Name: _Tom L. Abert_
Title: _Asst Secretary_

002001377837

 -5N(FL) (0005)                    *Page 3 of 3*                    Form 3210 1/01

**EXHIBIT W**


**CITI'S FEBRUARY 2014 STATEMENT WITH**

**AMOUNT DUE $34,132.16, THIS IS AN ATTEMPT**

**TO COLLECT A DEBT AND ANY**

**INFORMATION WILL BE USED FOR THAT**

**PURPOSE**

## Mortgage Account Information  citi

Page 1 of 6

|  |  |
|---|---|
| Account Number: | 2001377837-6 |
| Payment Due Date:† | N/A |
| **Amount Due:†** | **$34,132.16** |

Statement Date:  02/21/14

How to reach us
www.citimortgage.com
Homeowner Assistance: 1-877-435-3314*
Please reference your account number 2001377837 when calling.
*Calls are randomly monitored and recorded to ensure quality service.

**The CitiMortgage Foreclosure Attorney is SHAPIRO FISHMAN & GACHE, LLP, 813-880-8888.**

### Explanation of Amount Due

| | |
|---|---|
| Principal | $28,152.23 |
| Interest | $4,196.55 |
| Past Due Fees/Late Charges | $1,783.38 |
| Total Amount Due† | $34,132.16 |

### Past Payments Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Total | $0.00 | $0.00 |

### Account Information

GRACE D SOLIS
Property Address:  730 86TH ST
MIAMI BEACH, FL 33141

| | |
|---|---|
| Type of Mortgage | FIXED RATE LOAN |
| Outstanding Principal Balance | $28,152.23 |
| Interest Rate | 4.75000% |

### Transaction Activity (01/23/14 to 02/21/14)

| Date | Description | Charges | Payments |
|---|---|---|---|
| NO TRANSACTIONS HAVE OCCURRED SINCE YOUR LAST STATEMENT | | | |

### Important Messages

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**citi®**
P.O. Box 6243
Sioux Falls, SD 57117-6243

Mortgage Statement
Enclosed

†THIS AMOUNT DUE IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NO[T]
REFLECT FEES AND COSTS NOT BILLED OR POSTED TO YOUR ACCOUNT AS O[F]
THE STATEMENT DATE. YOUR LOAN HAS BEEN ACCELERATED UNDER STAT[E]
LAW AND THE ACCELERATED AMOUNT SHOWN IS NOW DUE. CITIMORTGAGE,
HOWEVER, ALLOWS REINSTATEMENTS OF LOANS ACCELERATED PRIOR TO
FORECLOSURE SALE. YOU MUST CONTACT THE CITIMORTGAGE ATTORNEY
IDENTIFIED ON PAGE 1 FOR YOUR CURRENT REINSTATEMENT AMOUNT OR
PAYOFF AMOUNT. IF YOU ARE REPRESENTED BY AN ATTORNEY, PROVIDE A
COPY OF THIS STATEMENT TO YOUR ATTORNEY.

00017973 1    26501785 DTF 00017973

GRACE D SOLIS
730 86TH ST
MIAMI BEACH FL 33141-1116



## Important Information To Help Us Serve You Better

Please be sure to write your **Mortgage Account Number** on your correspondence.

**Customer Service**
**1-800-283-7918\***
Monday–Friday
7:00 a.m.–12:00 Midnight ET
Saturday
8:00 a.m.–8:00 p.m. ET
Sunday
10:00 a.m.–10:00 p.m. ET

**Collections**
**1-800-723-7906\***
Monday–Friday
8:00 a.m.–12:00 Midnight ET
Saturday–Sunday
8:00 a.m.–8:00 p.m. ET

**TTY Services:**
Dial 711 from the U.S.;
Dial 1-866-280-2050
from Puerto Rico

**Regular Payments**
CitiMortgage, Inc.
PO Box 689196
Des Moines, IA 50368-9196

**Air Express Payments**
CitiMortgage, Inc.
4740 121st St.
Urbandale, IA 50323-2402

**Credit Bureau Disputes/**
**Account Inquiries**
CitiMortgage, Inc.
PO Box 6243
Sioux Falls, SD 57117-6243

**Air Express Correspondence**
CitiMortgage, Inc.
14700 Citicorp Drive, MC 0251
Hagerstown, MD 21742

**Insurance Claim Center**
CitiMortgage, Inc.
PO Box 8855
Springfield, OH 45501-8855
1-866-844-2198\*

**Tax Bills**
CitiMortgage, Inc.
PO Box 23689
Rochester, NY 14692

**Property Insurance**
**Correspondence**
CitiMortgage, Inc.
PO Box 7706
Springfield, OH 45501
1-800-442-8774\*

In accordance with federal law, CitiMortgage has designated the following address where you can send a written **request for information**, a written **notice of error**, or a **qualified written request**:

CitiMortgage, Inc.
Attn: Customer Research Team
PO Box 10002
Hagerstown, MD 21747-0002
Please visit www.citimortgage.com for details.

**If You Are Experiencing Financial Difficulty:** HUD-approved housing counseling agencies are available to provide you with the information about mortgage and foreclosure counseling and assistance. Call **1-800-569-4287** to speak with an expert about your individual situation or visit HUD at **www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm**

 ©2013 CitiMortgage, Inc. Fixed Rate Home Equity Loans and Home Equity Lines of Credit are made available through Citibank, NA, equal housing lender. Citi, Citibank, Arc Design and Citi and Arc Design are registered service marks of Citigroup Inc. \*Calls are randomly monitored and recorded to ensure quality service.
**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

Changed your mailing address or email?
Please provide your new information here. If you provide your email address, we may use it to contact you about your account or to send you information about products and services you might find useful.

By providing your cell phone number, you agree that we may contact you at this number. You also agree to receive calls and messages, such as pre-recorded messages, calls and messages from automated dialing systems, or text messages. Normal cell phone charges may apply.

† THIS AMOUNT DUE IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT REFLECT FEES AND COSTS NOT BILLED OR POSTED TO YOUR ACCOUNT AS OF THE STATEMENT DATE. YOUR LOAN HAS BEEN ACCELERATED UNDER STATE LAW AND THE ACCELERATED AMOUNT SHOWN IS NOW DUE. CITIMORTGAGE, HOWEVER, ALLOWS REINSTATEMENTS OF LOANS ACCELERATED PRIOR TO FORECLOSURE SALE. YOU MUST CONTACT THE CITIMORTGAGE ATTORNEY IDENTIFIED ON PAGE 1 FOR YOUR CURRENT REINSTATMEMENT AMOUNT OR PAYOFF AMOUNT. IF YOU ARE REPRESENTED BY AN ATTORNEY, PROVIDE A COPY OF THIS STATEMENT TO YOUR ATTORNEY.

# EXHIBIT X

## CITI'S JANUARY 2016 STATEMENT WITH AMOUNT DUE $39,284.63, THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION WILL BE USED FOR THAT PURPOSE

| Account Number: | 2001377837-6 | Statement Date:  01/20/16 |
| Payment Due Date:† | N/A | How to reach us |
| **Amount Due:†** | **$39,284.63** | www.citimortgage.com |

Homeowner Assistance: 1-877-435-3314*
Please reference your account number 2001377837 when calling.
*Calls are randomly monitored and recorded to ensure quality service.

**The CitiMortgage Foreclosure Attorney is ROBERTSON, ANSCHUTZ & SCHNEID, P.L., 561-241-6901.**

## Explanation of Amount Due

| | |
| --- | --- |
| Principal | $28,152.23 |
| Interest | $6,756.01 |
| Escrow | $2,403.01 |
| Past Due Fees/Late Charges | $1,973.38 |
| Total Amount Due† | $39,284.63 |

### Account Information

GRACE D SOLIS
Property Address:  730 86TH ST
                   MIAMI BEACH, FL 33141

| | |
| --- | --- |
| Type of Mortgage | FIXED RATE LOAN |
| Outstanding Principal Balance | $28,152.23 |
| Interest Rate | 4.75000% |
| Escrow Balance | -$2,403.01 |
| CitiMortgage Taxes Paid Year to Date | $0.00 |

## Past Payments Breakdown

| | Paid Since Last Statement | Paid Year to Date |
| --- | --- | --- |
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Total | $0.00 | $0.00 |

## Transaction Activity Since Last Statement (12/18/15 to 01/20/16)

| Date | Description | Charges/Adjustments | Payments |
| --- | --- | --- | --- |
| | NO TRANSACTIONS HAVE OCCURRED SINCE YOUR LAST STATEMENT | | |

## Important Messages

Your monthly escrow payment has been adjusted to $374.35 effective 02/01/16.

A tax and interest statement for 2015 income tax purposes is either enclosed with this monthly statement or will be mailed separately by January 31,2016. To protect your identity, your full social security number will not be printed on the document but will be used in IRS reporting.

---

citi®

P.O. Box 6243
Sioux Falls, SD 57117-6243

Mortgage Statement
Enclosed

**†THIS AMOUNT DUE IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT REFLECT FEES AND COSTS NOT BILLED OR POSTED TO YOUR ACCOUNT AS OF THE STATEMENT DATE. YOUR LOAN HAS BEEN ACCELERATED UNDER STATE LAW AND THE ACCELERATED AMOUNT SHOWN IS NOW DUE. CITIMORTGAGE, HOWEVER, ALLOWS REINSTATEMENTS OF LOANS ACCELERATED PRIOR TO FORECLOSURE SALE. YOU MUST CONTACT THE CITIMORTGAGE ATTORNEY IDENTIFIED ON PAGE 1 FOR YOUR CURRENT REINSTATMENT AMOUNT OR PAYOFF AMOUNT. IF YOU ARE REPRESENTED BY AN ATTORNEY, PROVIDE A COPY OF THIS STATEMENT TO YOUR ATTORNEY.**

00002528 1    26501591 DTF 00002528

GRACE D SOLIS
730 86TH ST
MIAMI BEACH FL 33141-1116

## Important Information To Help Us Serve You Better

Please be sure to write your **Mortgage Account Number** on your correspondence.

**Customer Service**
**1-800-283-7918***
Monday- Friday
8:00 a.m.-10:00 p.m. ET
Saturday
8:00 a.m.- 6:00 p.m. ET

**Collections**
**1-800-723-7906***
Monday - Friday
8:00 a.m.-12:00 Midnight ET
Saturday-Sunday
8:00 a.m.-8:00 p.m. ET

**TTY Services:**
Dial 711 from the U.S.;
Dial 1-866-280-2050
from Puerto Rico

**Regular Payments**
CitiMortgage, Inc.
PO Box 78015
Phoenix, AZ 85062-8015

**Air Express Payments**
CitiMortgage, Inc.
Attention: Exception Payment
MS1156-7
4740 121st Street
Urbandale, IA 50323-2402

Credit Bureau Disputes/
Account Inquiries
CitiMortgage, Inc.
PO Box 6243
Sioux Falls, SD 57117-6243

**Air Express Correspondence**
CitiMortgage, Inc.
14700 Citicorp Drive, MC 0251
Hagerstown, MD 21742

**Insurance Claim Center**
CitiMortgage, Inc.
PO Box 8855
Springfield, OH 45501-8855
1-866-844-2198*
https://www.
insuranceclaimcheck.com/
cmortgage

**Tax Bills**
CitiMortgage, Inc.
PO Box 23689
Rochester, NY 14692

**Property Insurance Correspondence**
CitiMortgage, Inc.
PO Box 7706
Springfield, OH 45501
1-800-442-8774*
https://www.mycoverageinfo.com

In accordance with federal law, CitiMortgage has designated the following address where you can send a written **request for information**, a written **notice of error**, or a **qualified written request**:

CitiMortgage, Inc.
Attn: Customer Research Team
PO Box 10002
Hagerstown, MD 21747-0002
Please visit www.citimortgage.com for details.

**If You Are Experiencing Financial Difficulty:** HUD-approved housing counseling agencies are available to provide you with the information about mortgage and foreclosure counseling and assistance. Call **1-800-569-4287** to speak with an expert about your individual situation or visit HUD at **www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm**

©2015 CitiMortgage, Inc. Fixed Rate Home Equity Loans and Home Equity Lines of Credit are made available through Citibank, NA, equal housing lender. Citi, Citibank, Arc Design and Citi and Arc Design are registered service marks of Citigroup Inc. *Calls are randomly monitored and recorded to ensure quality service. **This is an attempt to collect a debt and any information obtained will be used for that purpose.**

Changed your mailing address or email?
Please provide your new information here. If you provide your email address, we may use it to contact you about your account or to send you information about products and services you might find useful.

**By providing your cell phone number,** you agree that we may contact you at this number. You also agree to receive calls and messages, such as pre-recorded messages, calls and messages from automated dialing systems, or text messages. Normal cell phone charges may apply.

† THIS AMOUNT DUE IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT REFLECT FEES AND COSTS NOT BILLED OR POSTED TO YOUR ACCOUNT AS OF THE STATEMENT DATE. YOUR LOAN HAS BEEN ACCELERATED UNDER STATE LAW AND THE ACCELERATED AMOUNT SHOWN IS NOW DUE. CITIMORTGAGE, HOWEVER, ALLOWS REINSTATEMENTS OF LOANS ACCELERATED PRIOR TO FORECLOSURE SALE. YOU MUST CONTACT THE CITIMORTGAGE ATTORNEY IDENTIFIED ON PAGE 1 FOR YOUR CURRENT REINSTATEMENT AMOUNT OR PAYOFF AMOUNT. IF YOU ARE REPRESENTED BY AN ATTORNEY, PROVIDE A COPY OF THIS STATEMENT TO YOUR ATTORNEY.

# EXHIBIT Y

## REDACTED CREDIT REPORTS FROM

## EQUIFAX, TRANSUNION and EXPERIAN FROM

## 2015

P.O. Box 105069
Atlanta, GA 30348

May 21, 2015

# EQUIFAX

 To Start An Investigation, Please Visit Us At:
www.investigate.equifax.com



000000641 FGECA0522150207250000 01 000000
001946095-3316
Grace D Solis
730 86th St
Miami Beach, FL 33141-1116

Dear Grace D Solis:

Enclosed is a copy of your Equifax credit file. Please review it for any unauthorized accounts or inquiries.  If unauthorized information is reporting on your Equifax credit file, you may start an investigation immediately on-line at www.investigate.equifax.com. Using the Internet to initiate an on-line investigation request will expedite the resolution of your concerns. You may also start an investigation by completing and returning the enclosed Research Request Form or by calling the toll free telephone number on the credit file. Please advise us of any documents that may help us in the reinvestigation, such as an identity theft report or letters from credit grantors.

Please note, when you provide documents, including a letter, to Equifax as part of your dispute, the documents may be submitted to one or more companies whose information are the subject of your dispute.

You should contact the credit grantors that are reporting information you believe is fraudulent. Ask them to explain their fraud investigation process, what steps should be taken and how long the process normally takes. Additionally request that they send you a letter or documentation stating the results of the investigation. Upon receipt, forward a copy of that letter to us.

If your ID information, such as driver's license or social security card, was lost or stolen, contact the appropriate issuing agency.

**Citimortgage**   PO Box 6243 Sioux Falls SD 57117-6243 ; (800) 283-7918

Account Number 200137*

| | Date Opened | High Credit | Credit Limit |
|---|---|---|---|
| | 12/17/2003 | $50,000 | |

| Items - As of Date Reported | Balance Amount | Amount Past Due | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | Terms Duration | Date of 1st Delinquency | Terms Frequency | Date of Last Activity | Date Maj Del 1st Paid | Date Maj Del | Charge Off Amount | Deferred Pay Start Date | Months Revd | Balloon Pay Amount | Sixicon Pay Amount | Activity Designator | Creditor Classification | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/30/2015 | $28,152 | $19,834 | $388 | | 03/2011 | 15 Years | 01/2011 | Monthly | | | | | | 99 | | | | | |

Status - Over 120 Days Past Due; Type of Account - Mortgage; Type of Loan - Conventional Re Mortgage; Whose Account - Individual Account;   ADDITIONAL INFORMATION - Consumer Disputes This Account Information; Foreclosure Process Started; 180 Days or More Past Due;

**Account History with Status Codes**

| 03/2015 | 02/2015 | 01/2015 | 12/2014 | 11/2014 | 10/2014 | 09/2014 | 08/2014 | 07/2014 | 06/2014 | 05/2014 | 04/2014 | 03/2014 | 02/2014 | 01/2014 | 12/2013 | 11/2013 | 10/2013 | 09/2013 | 08/2013 | 07/2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |

| 06/2013 | 05/2013 | 04/2013 | 03/2013 | 02/2013 | 01/2013 | 12/2012 | 11/2012 | 10/2012 | 09/2012 | 08/2012 | 07/2012 | 06/2012 | 05/2012 | 04/2012 | 03/2012 | 02/2012 | 01/2012 | 12/2011 | 11/2011 | 10/2011 | 09/2011 | 08/2011 | 07/2011 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 4 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |

| 06/2011 | 05/2011 | 04/2011 | 03/2011 | 02/2011 | 01/2011 |
|---|---|---|---|---|---|
| 5 | 4 | 3 | 2 | 2 | 1 |

**Historical Account Information**

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan |
|---|---|---|---|---|---|---|---|---|
| 04/15 | No Data Available | | | | | | | |
| 03/15 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $19,446 | Conventional Re Mortgage |

Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due

| 02/15 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $19,057 | Conventional Re Mortgage |
|---|---|---|---|---|---|---|---|---|

Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due

| 01/15 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $18,668 | Conventional Re Mortgage |
|---|---|---|---|---|---|---|---|---|

Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due

( Continued On Next Page )

5120014534IUI-001946095- 3316 - 10162 - ASD

## Historical Account Information

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|
| 12/14 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $18,279 | Conventional Re Mortgage | |
| Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due | | | | | | | | | |
| 11/14 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $17,890 | Conventional Re Mortgage | |
| Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due | | | | | | | | | |
| 10/14 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $17,501 | Conventional Re Mortgage | |
| Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due | | | | | | | | | |
| 09/14 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $17,112 | Conventional Re Mortgage | |
| Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due | | | | | | | | | |
| 08/14 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $16,723 | Conventional Re Mortgage | |
| Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due | | | | | | | | | |
| 07/14 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $16,334 | Conventional Re Mortgage | |
| Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due | | | | | | | | | |
| 06/14 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $15,945 | Conventional Re Mortgage | |
| Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due | | | | | | | | | |
| 05/14 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $15,556 | Conventional Re Mortgage | |
| Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due | | | | | | | | | |
| 04/14 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $15,167 | Conventional Re Mortgage | |
| Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due | | | | | | | | | |
| 03/14 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $14,778 | Conventional Re Mortgage | |
| Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due | | | | | | | | | |
| 02/14 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $14,390 | Conventional Re Mortgage | |
| Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due | | | | | | | | | |
| 01/14 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $14,001 | Conventional Re Mortgage | |
| Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due | | | | | | | | | |
| 12/13 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $13,612 | Conventional Re Mortgage | |
| Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due | | | | | | | | | |

( Continued On Next Page )

5120014534IUI-0019460905-3316 - 10162 - ASD

Historical Account Information

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|
| 11/13 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $13,223 | Conventional Re Mortgage | |
| Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due | | | | | | | | | |
| 10/13 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $12,834 | Conventional Re Mortgage | |
| Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due | | | | | | | | | |
| 09/13 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $12,445 | Conventional Re Mortgage | |
| Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due | | | | | | | | | |
| 08/13 | $28,152 | $388 | | 3/1/2011 | $50,000 | | $12,056 | Conventional Re Mortgage | |
| Additional Information: Consumer Disputes This Account Information; Fannie Mae Account; Foreclosure Process Started; 180 Days or More Past Due | | | | | | | | | |

File Number: 315001157

04/15/2015

-Begin Credit Report-

**Personal Information**

SSN: XXX-XX-7180
Your SSN has been masked for your protection.

**Names Reported:** GRACE D SOLIS and GRACE DSOLIS

**Addresses Reported:**

**Address**
730 86TH ST, MIAMI BEACH, FL 33141-1116

You have been on our files since 02/01/1994
**Date of Birth:**

**Date Reported**
12/01/2004

**CITIMORTGAGE INC  #200137******
PO BOX 6243
SIOUX FALLS, SD 57117-6243
(800) 283-7918

| | | |
|---|---|---|
| Date Opened: | 12/17/2003 | |
| Responsibility: | Individual Account | |
| Account Type: | Mortgage Account | |
| Loan Type: | CONVENTIONAL REAL ESTATE MTG | |

| | | |
|---|---|---|
| Date Updated: | 03/31/2015 | |
| Payment Received: | $0 | |
| Last Payment Made: | 03/15/2011 | |

| | |
|---|---|
| Pay Status: | >Account 120 Days Past Due Date< |
| Terms: | $388 per month, paid Monthly for 180 months |

>Maximum Delinquency of 120 days in 05/2011 and in 03/2015 for $19,446<

High Balance: High balance of $50,000 from 10/2012 to 03/2015
Mortgage Info: Fannie Mae Acct #00017064514330000
Estimated month and year that this item will be removed: 12/2017

| | 03/2015 | 02/2015 | 01/2015 | 12/2014 | 11/2014 | 10/2014 | 09/2014 | 08/2014 | 07/2014 | 06/2014 |
|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $28,152 | $28,152 | $28,152 | $28,152 | $28,152 | $28,152 | $28,152 | $28,152 | $28,152 | $28,152 |
| Scheduled Payment | $388 | $388 | $388 | $388 | $388 | $388 | $388 | $388 | $388 | $388 |
| Amount Paid | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Past Due | $19,446 | $19,057 | $18,668 | $18,279 | $17,890 | $17,501 | $17,112 | $16,723 | $16,334 | $15,945 |
| Remarks | AID >FPI< | AID >FPI< | AID >FPI< | AID >FPI< | AID >FPI< | AID >FPI< | AID >FPI< | AID >FPI< | AID >FPI< | AID >FPI< |
| Rating | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 |

**Experian**
A world of insight

Prepared for: GRACE D SOLIS
Date: May 05, 2015
Report number: 0664-1331-50

You accounts that may be considered negative (continued)

**CITIMORTGAGE INC**
PO BOX 6243
SIOUX FALLS SD 57117
**Phone number**
(800) 283-7918
**Partial account number**
200137...
**Address identification number**
0072258601

| | |
|---|---|
| **Date opened** | **Type** |
| Dec 2003 | Mortgage |
| **First reported** | **Terms** |
| Feb 2005 | 15 Years |
| **Date of status** | **Monthly** |
| Jun 2012 | **payment** |
| | $388 |

| | |
|---|---|
| **Credit limit or** | **Recent balance** |
| **original amount** | $28,152 as of Mar |
| $50,000 | 2015 ® |
| **High balance** | |
| Not reported | |

**Responsibility**
Individual
**Status**
Foreclosure proceedings started $19,446 past due as of Mar 2015.
This account is scheduled to continue on record until Oct 2017
**Comment**
Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).
**Comment:**
Foreclosure proceedings started.
This item was updated from our processing of your dispute in Aug 2011

Payment history



| | 2015 | | | | 2014 | | | | | | | | | | | 2013 | | | | | | | | | | | 2012 | | | | | | | | | | | 2011 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Feb15 | Jan15 | Dec14 | Nov14 | Oct14 | Sep14 | Aug14 | Jul14 | Jun14 | May14 | Apr14 | Mar14 | Feb14 | Jan14 | Dec13 | Nov13 | Oct13 | Sep13 | Aug13 | Jul13 | Jun13 | May13 |
| AB | 28,152 | 28,152 | 28,152 | 28,152 | 28,152 | 28,152 | 28,152 | 28,152 | 28,152 | 28,152 | 28,152 | 28,152 | 28,152 | 28,152 | 28,152 | 28,152 | 28,152 | 28,152 | 28,152 | 28,152 | 28,152 | 28,152 |
| DPR | Mar15 | Mar15 | Mar15 | Mar15 | Mar15 | Mar15 | Mar15 | Mar15 | Mar15 | Mar15 | Mar15 | Mar15 | Mar15 | Mar15 | Mar15 | Mar15 | Mar15 | Mar15 | Mar15 | Mar15 | Mar15 | Mar15 |
| | 388 | 388 | 388 | 388 | 388 | 388 | 388 | 388 | 388 | 388 | 388 | 388 | 388 | 388 | 388 | 388 | 388 | 388 | 388 | 388 | 388 | 388 |
| | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND | ND |

MAR FEB JAN DEC NOV OCT SEP AUG JUL JUN MAY APR MAR FEB JAN DEC NOV OCT SEP AUG JUL JUN MAY APR MAR FEB JAN DEC NOV OCT SEP AUG JUL JUN MAY APR MAR FEB JAN DEC NOV OCT SEP AUG JUL JUN MAY APR
SEP AUG JUL JUN MAY APR MAR FEB JAN DEC NOV OCT SEP AUG JUL JUN MAY APR MAR FEB JAN DEC NOV OCT SEP AUG JUL JUN MAY APR MAR FEB JAN DEC NOV OCT SEP AUG JUL JUN MAY APR
2010                                2009                                2008

**AB** = Account balance ($)
**DPR** = Date payment received    **DPR** = Date payment received

Account history - If your creditor reported your account balances to us, we list them in this section as additional information about your account. Your balance history may also include your credit limit and high balance or the original loan amount for an installment loan. This section also includes the scheduled payment amounts, amounts actually paid and the dates those payments were made. ND: No Data.

= Scheduled payment amount ($)    = Actual amount paid ($)    = Date payment received

▲ The original amount of this account was $50,000.

# EXHIBIT Z

# LOAN MODIFICATION OFFER SENT DIRECTLY

# TO PLAINTIFF



June 15, 2015

Grace D Solis
730 86th St
Miami Beach FL 33141-1116

Re:  Property Address:     730 86th St
                          Miami Beach, FL 33141
       CitiMortgage Loan #: 2001377837

Dear CitiMortgage Customer(s),

Based on a careful review of your Mortgage account, we are offering you an opportunity to enter into a Trial Period Plan for a mortgage modification. This is the first step toward qualifying for more affordable mortgage payments or more manageable terms. It is important that you read this information in its entirety so that you completely understand the actions you need to take to successfully complete the Trial Period Plan to permanently modify your mortgage.

## Proposed Modification Terms

If you successfully complete the Trial Period Plan by making the required payments, you will receive a modification with an interest rate of 4.750%, which will be fixed for 20, 30 or 40 years from the date the modification is effective.

### To Stop the Foreclosure Process (Suspension of Foreclosure)

In order for us to delay referring your mortgage to foreclosure, or suspend foreclosure proceedings if your loan has been referred to foreclosure:

You must contact us at the phone number below or in writing at the address provided below no later than **6/29/2015** to indicate your intent to accept this offer.

You may also make your first Trial Period Plan payment by **6/29/2015**, which is **earlier than the scheduled due date** described below and we will stop the foreclosure process.

However, if you do not respond by **6/29/2015**, we will continue with the foreclosure process, and a foreclosure sale may occur.

This offer will be revoked if a foreclosure sale occurs, even if the sale occurs prior to the first Plan payment due date set forth below.

### To Accept This Offer

If you have notified us of your intent to accept the offer by **6/29/2015**, which is 14 calendar days from the date of this letter, you must send your first Plan payment on or before **7/1/15** or, if you have not notified us of your intent to accept the offer and a foreclosure sale has not occurred, you must send your first Plan payment on or before **7/1/15**. But, if you fail to notify us of your intent to accept the offer prior to the foreclosure sale, this offer will be revoked and foreclosure proceedings may continue and a foreclosure sale may occur. In addition, if you fail to make the first Plan payment by **7/1/15** and we do not receive the payment by the last day of the month in which it is due, this offer will be revoked and foreclosure proceedings may continue and a foreclosure sale may occur.

# EXHIBIT AA

# AMENDED STATE FORECLOSURE COMPLAINT

Filing # 33821171 E-Filed 10/29/2015 10:35:58 AM

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION
CASE NO.: 2013-CA-020961

CITIMORTGAGE INC.,
      Plaintiff,

vs.

GRACE DENISE SOLIS A/K/A GRACE
D. SOLIS, et, al.
      Defendant(s).
_____/

## VERIFIED AMENDED COMPLAINT FOR FORECLOSURE OF MORTGAGE, AND EQUITABLE SUBROGATION

Plaintiff, CITIMORTGAGE INC., sues the Defendants and alleges:

### COUNT I – MORTGAGE FORECLOSURE

1.     This is an action to foreclose a mortgage on real property in MIAMI-DADE County, Florida.

2.     The Court has jurisdiction over the subject matter.

3.     GRACE DENISE SOLIS A/K/A GRACE D. SOLIS executed and delivered a promissory note, dated December 17, 2003, securing payment to ALLSTATE MORTGAGE & INVEST INC. A copy of the note is attached hereto as Exhibit "A". GRACE DENISE SOLIS A/K/A GRACE D. SOLIS executed and delivered the mortgage, dated December 17, 2003. A copy of the mortgage is attached hereto as Exhibit "B". The mortgage was recorded on December 29, 2003, in Official Record Book 21934, at Page 3864-3880, of the Public Records of Miami-Dade County, Florida, and encumbered the property, described in the mortgage, then owned by and in possession of the mortgagor.

4.     The mortgage of the Plaintiff is a lien superior in dignity to any prior or subsequent right, title, claim, lien or interest arising out of mortgagor(s) or the mortgagor(s)' predecessor(s) in interest.

14-82954/EB

5.  Plaintiff is the holder of the original note secured by the mortgage.

6.  Defendant(s) have defaulted under the note and mortgage by failing to pay the payment due February 1, 2011, and all subsequent payments.

7.  Plaintiff declares the full amount payable under the note and mortgage to be due, except to the extent any part of that amount is or would be subject to a statute of limitations defense.

8.  Defendant(s) owe Plaintiff **$28,152.23** that is due and owing on principal on the note and mortgage, plus interest from and after January 1, 2011, and title search expenses for ascertaining necessary parties to this action, pursuant to the documents attached, except for those defendants who have been discharged in bankruptcy.

9.  In order to protect its security, the Plaintiff may have advanced and paid Ad Valorem Taxes, premiums on insurance required by the mortgage and other necessary costs, or may be required to make such advances during the pendency of this action.  Any such sum so paid will be due and owing to the Plaintiff.

10. On or about October 26, 2013, SYLVIA SOLIS died.

11. The property is now owned by Defendants(s), GRACE DENISE SOLIS A/K/A GRACE D. SOLIS, SHIRLEY JANICE SOLIS A/K/A SHIRLEY J. SOLIS, AND THE UNKNOWN HEIRS, BENEFICIARIES, DEVISEES, GRANTEES, ASSIGNEES, LIENORS, CREDITORS, TRUSTEES AND ALL OTHERS WHO MAY CLAIM AN INTEREST IN THE ESTATE OF SYLVIA SOLIS, DECEASED, and the record legal title to said mortgaged property is now vested in Defendant(s), GRACE DENISE SOLIS A/K/A GRACE D. SOLIS, SHIRLEY JANICE SOLIS A/K/A SHIRLEY J. SOLIS, AND THE UNKNOWN HEIRS, BENEFICIARIES, DEVISEES, GRANTEES, ASSIGNEES, LIENORS, CREDITORS, TRUSTEES AND ALL OTHERS WHO MAY CLAIM AN INTEREST IN THE ESTATE OF SYLVIA SOLIS, DECEASED, who hold or holds possession.

12. All conditions precedent to the acceleration of this mortgage note and to foreclosure of the mortgage have been fulfilled and have occurred.

14-82954/EB

13.   Plaintiff is obligated to pay Plaintiff's attorneys a reasonable fee for their services. Plaintiff is entitled to recover its attorneys' fees pursuant to the express terms of the note and mortgage.

14.   Plaintiff alleges that the claims of the remaining Defendants are secondary, junior, inferior and subject to the prior claim of Plaintiff.

15.   The Defendant, BISCAYNE BEACH HOMEOWNERS ASSOCIATION, INC, may claim some right, title, or interest in the property herein sought to be foreclosed by virtue of unpaid dues, liens and/or assessments. However, said interest, if any, is subordinate, junior, and inferior to the lien of Plaintiff's mortgage.

16.   Any interest in the property inuring to the Defendant, CITIBANK, N.A., SUCCESSOR IN INTEREST TO CITIBANK, FEDERAL SAVINGS BANK, is subordinate and inferior to the lien of Plaintiff's mortgage, including, but not limited to, MORTGAGE recorded September 29, 2005, in Official Record Book 23824 at Page 3563, of the Public Records of Miami-Dade County, Florida.

17.   Any interest in the property inuring to the Defendant, MIAMI-DADE COUNTY, FLORIDA, is subordinate and inferior to the lien of Plaintiff's mortgage, including, but not limited to, ORDER OF THE SPECIAL MASTER recorded January 4, 2003, in Official Record Book 20926 at Page 3636 of the Public Records of Miami-Dade County, Florida.

18.   Any interest in the property inuring to the Defendant, KINGSWAY AMIGO INSURANCE COMPANY F/K/A US SECURITY INSURANCE COMPANY A/S/O ESTHER GONZALEZ, C/O CHIEF FINANCIAL OFFICER, R.A., is subordinate and inferior to the lien of Plaintiff's mortgage, including, but not limited to, JUDGMENT recorded October 13, 2005, in Official Record Book 23870 at Page 4650 of the Public Records of Miami-Dade County, Florida.

19.   Any interest in the property inuring to the Defendant, BRISTOL WEST INSURANCE COMPANY A/S/O LESLY AUGUSTINE HOGU, C/O CHIEF FINANCIAL OFFICE, R.A., is subordinate and inferior to the lien of Plaintiff's mortgage, including, but not limited to,

14-82954/EB

JUDGMENT recorded January 5, 2007, in Official Record Book 25254 at Page 642 of the Public Records of Miami-Dade County, Florida.

20.    Any interest in the property inuring to the Defendant, CAPITAL ONE BANK [USA], N.A., is subordinate and inferior to the lien of Plaintiff's mortgage, including, but not limited to, DEFAULT FINAL JUDGMENT recorded December 12, 2012, in Official Record Book 28395 at Page 2996 of the Public Records of Miami-Dade County, Florida.

21.    Any interest in the property inuring to the Defendant, EDWARD SOLIS, is subordinate and inferior to the lien of Plaintiff's mortgage, including, but not limited to, POSSIBLE HEIR IN THE ESTATE OF SYLVIA SOLIS, DECEASED or some other unknown interest, the exact nature of which is unknown to Plaintiff and not a matter of public record; however, said interest, if any, is subordinate, junior, and inferior to the lien of Plaintiff's mortgage.

22.    Any and all unknown parties claiming by, through, under, and against the herein named individual defendant(s) who are not known to be dead or alive, whether said unknown parties may claim an interest as spouses, heirs, devisees, grantees, or other claimants are joined as defendants herein. The claims of said defendants are subordinate, junior, and inferior to the interest of the Plaintiff.

WHEREFORE, Plaintiff demands judgment foreclosing the mortgage, for costs (and, when applicable, for attorneys' fees), and, if the proceeds of the sale are insufficient to pay Plaintiff's claim, a deficiency judgment. Request that subject to any applicable statute of limitations, that the Court ascertain the amount due to Plaintiff for principal and interest on the Mortgage and Note and for late charges, abstracting, taxes, expenses and costs, including attorney's fees, plus interest thereon; that if the sums due Plaintiff under the Mortgage and Note are not paid immediately, the Court foreclose the Mortgage and the Clerk of the Court sell the Property securing the indebtedness to satisfy the Plaintiff's mortgage lien in accordance with the provisions of Florida Statutes §45.031 (2006); that the rights, title and interest of any Defendant,

14-82954/EB

or any party claiming by, through, under or against any Defendant named herein or hereinafter made a Defendant be forever barred and foreclosed; that the Court appoint a receiver of the Property and of the rents, issues, income and profits thereof, or in the alternative, order sequestration of rents, issues, income and profits pursuant to Florida Statutes §697.07 (2006); and that the Court retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including the issuance of a writ of possession and the entry of a deficiency judgment decree, when and if such deficiency decree shall appear proper, if borrower(s) has not been discharged in bankruptcy.

## COUNT II – FOR THE IMPOSITION AND FORECLOSURE OF AN EQUITABLE LIEN BASED UPON EQUITABLE SUBROGATION

23.     The Plaintiff re-alleges and reaffirms the allegations in all paragraphs above, and further alleges as follows.

24.     This is an action to equitably subrogate a mortgage attaching to real property situated in Miami-Dade County, Florida.

25.     In June 2000, GRACE D. SOLIS obtained title to the real property that is the subject of this action.

26.     GRACE D. SOLIS financed her purchase of the subject property by granting a purchase money mortgage in favor of World Savings Bank in the amount of $40,000.00. The purchase money mortgage (hereinafter referred to as the "Prior Mortgage") was recorded on June 27, 2000, in Official Records Book 19172, Page 2115, of the Public Records of Miami-Dade County, Florida. A copy of the Prior Mortgage is attached as Exhibit "C."

27.     Thereafter, GRACE D. SOLIS transferred title from herself to herself and Defendants, SYLVIA SOLIS and SHIRLEY JANICE SOLIS, by way of a Quit-Claim Deed recorded on February 11, 2003 in Official Records Book 21014, Page 2049, of the Public Records of Miami-Dade County, Florida. A copy of the Quit-Claim Deed is attached as Exhibit "D." Thus,

SYLVIA SOLIS and SHIRLEY JANICE SOLIS took title subject to the lien of the Prior Mortgage.

28.    GRACE DENISE SOLIS subsequently refinanced the Prior Mortgage by executing and delivering a promissory note, dated December 17, 2003, securing payment to ALLSTATE MORTGAGE & INVEST INC. A copy of the note is attached hereto as Exhibit "A". Concomitantly, GRACE DENISE SOLIS A/K/A GRACE D. SOLIS executed and delivered the refinance mortgage, dated December 17, 2003, a copy of which is attached hereto as Exhibit "B". The refinance mortgage (hereinafter referred to as "Plaintiff's Mortgage") was recorded on December 29, 2003, in Official Record Book 21934, at Page 3864-3880, of the Public Records of Miami-Dade County, Florida, and encumbered the property, described in the mortgage, then owned by and in possession of the mortgagor. Plaintiff is holder by assignment, recorded in Official Record Book 21934, Page 3864, of the Plaintiff's Mortgage.

29.    In conjunction with the closing of the Plaintiff's Mortgage, a portion of the proceeds of the refinance loan was used to satisfy the Prior Mortgage. A copy of the HUD-1 Settlement Statement, dated December 17, 2003 and reflecting the pay-off of the Prior Mortgage in the amount of $32,731.46, is attached hereto as Exhibit "E." Subsequently, the Prior Mortgage was satisfied of records pursuant to a Release of Mortgage recorded on January 8, 2004 in Book 21959 at Page 78 of the Public Records of Miami-Dade County, Florida. A copy the Satisfaction of Mortgage is attached hereto as Exhibit "F."

30.    Plaintiff's Mortgage is entitled to be equitably subrogated to the lien of the Prior Mortgage holder and is entitled to a first lien position, superior to the interests of all Defendants named herein.

31.    By equitable subrogation, Plaintiff "stands in the shoes" of the holder of the Prior Mortgage to the extent of the pay-off plus interest accruing thereafter.

32.    By inadvertence and mistake, Defendants, SYLVIA SOLIS and SHIRLEY JANICE SOLIS, failed to join in the execution of Plaintiff's Mortgagee, even though as then record

14-82954/EB

owners they were obliged to do so. Nevertheless, insofar as Plaintiff is equitably subrogated to the rights of the Prior Mortgage, Plaintiff is entitled to the imposition and foreclosure of an equitable lien against the interests of said Defendants, who took title subject to the lien of the Prior Mortgage.

33.     No prejudice will be suffered by any party by granting Plaintiff an equitable lien.

34.     Plaintiff was not a volunteer when making the pay-off of the Prior Mortgage.

WHEREFORE, Plaintiff prays that the Court equitably subrogate Plaintiff's mortgage recorded on December 29, 2003 in Official Record Book 21934, at Page 3864-3880, of the Public Records of Miami-Dade County, Florida, to the lien of the Prior Mortgage, in the amount of the pay-off plus interest thereon from and after the date of the payoff, and order the foreclosure of the equitable lien against the interests of all Defendants, including SYLVIA SOLIS and SHIRLEY JANICE SOLIS, and for such further orders as this Court deems necessary and proper.

Respectfully submitted,

Robertson, Anschutz & Schneid, P.L.
Attorney for Plaintiff
6409 Congress Avenue, Suite 100
Boca Raton, Florida 33487
Telephone: 561-241-6901
Fax: 561-241-9181
**Service e-mail: mail@rasflaw.com**

By: _____
     Jonathan Meisels, Esquire
     Florida Bar No. 29235
     Communication Email: jmeisels@rasflaw.com

14-82954/EB

## VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

Executed on this 4th day of August, 20 15.

AFFIANT:

By: _Jennifer Haas_

Print: _Jennifer Haas_

Title: **Business Operations Analyst**

Employed by CitiMortgage, Inc.

Plaintiff: CITIMORTGAGE INC.

Date: 8 | 4 | 15

RE:   Borrower:   GRACE DENISE SOLIS A/K/A GRACE D. SOLIS
      Address:    730 86TH ST, MIAMI BEACH, Florida 33141
      File #:     14-82954

Robertson, Anschutz & Schneid, P.L.
Attorney for Plaintiff
6409 Congress Avenue, Suite 100
Boca Raton, Florida 33487
Telephone: 561-241-6901
Fax: 561-241-9181
**Service e-mail: mail@rasflaw.com**

Melissa Konick
FL Bar No. 17569

By: _____
Jonathan Meisels, Esquire
Florida Bar No. 29235
Communication Email: jmeisels@rasflaw.com

14-82954/EB

## CERTIFICATE OF SERVICE

**I hereby certify that** a copy of the Amended Complaint has been furnished to the parties listed on the attached service list via Mail and/or E-mail in accordance with the corresponding addresses listed therein on this ⎯2⎯3⎯ day of ⎯⎯⎯⎯⎯October⎯⎯⎯⎯⎯, 20⎯I⎯5.

> Robertson, Anschutz & Schneid, P.L.
> Attorneys for Plaintiff
> 6409 Congress Avenue, Suite 100
> Boca Raton, Florida 33487
> Telephone: 561-241-6901
> Fax: 561-241-9181
> **Service e-mail: mail@rasflaw.com**
>
> Melissa Konick
> BY: ⎯⎯⎯⎯⎯⎯⎯⎯  FL Bar No. 17569
> Jonathan Meisels, Esquire
> Florida Bar No. 29235
> Communication Email: jmeisels@rasflaw.com

## SERVICE LIST

THE AJM GROUP, P.A.
ALIX J. MONTES, ESQ.
ATTORNEY FOR GRACE DENISE SOLIS A/K/A GRACE D. SOLIS
290 NW 165TH STREET, SUITE P100
MIAMI, FL 33169
PRIMARY E-MAIL: AMONTES@AJMLAWGROUP.COM

THE AJM GROUP, P.A.
ALIX J. MONTES, ESQ.
ATTORNEY FOR SHIRLEY JANICE SOLIS A/K/A SHIRLEY J. SOLIS
290 NW 165TH STREET, SUITE P100
MIAMI, FL 33169
PRIMARY E-MAIL: AMONTES@AJMLAWGROUP.COM

CITIBANK, N.A., SUCCESSOR IN INTEREST TO CITIBANK, FEDERAL SAVINGS
BANK
C/O PRESIDENT/ VICE PRESIDENT/CHAIRMAN
SIOUX FALLS, SD  57104
PRIMARY E-MAIL:

MIAMI-DADE COUNTY ATTORNEY
THOMAS H ROBERTSON, ESQUIRE
ATTORNEY FOR MIAMI-DADE COUNTY, FLORIDA
111 NW 1 STREET, SUITE 2810
MIAMI, FL 33128-1993
PRIMARY E-MAIL: DMR2@MIAMIDADE.GOV

14-82954/EB

# EXHIBIT BB

# OFFICE OF INSPECTOR GENERAL

# US DEPARTMENT OF HOUSING AND URBAN

# DEVELOPMENT

# CITIMORTGAGE, INC.

# FORECLOSURE AND CLAIMS PROCESS REVIEW'

# MARCH 12, 2012

**OFFICE OF AUDIT**
**REGION VII**
**KANSAS CITY, KS**                                    **MEMORANDUM OF REVIEW**



OFFICE OF

# INSPECTOR GENERAL

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

# CitiMortgage, Inc.
# Foreclosure and Claims Process Review
# O'Fallon, MO

**MEMORANDUM NO. 2012-KC-1801**                        **MARCH 12, 2012**



U.S. Department of Housing and Urban Development
**Office of Inspector General, Region VII**
Gateway Tower II - 5th Floor
400 State Avenue
Kansas City, KS 66101-2406

(913) 551-5870  **FAX** (913) 551-5877
**http://www.hudoig.gov**
OIG Fraud Hotline 1-800-347-3735

**MEMORANDUM NO.**
**2012-KC-1801**

March 12, 2012

**MEMORANDUM**

**FOR:**    Charles S. Coulter, Deputy Assistant Secretary for Single Family Housing, HU

            //signed//
**FROM:**   Ronald J. Hosking, Regional Inspector General for Audit, 7AGA

**SUBJECT:** CitiMortgage, Inc.
            Foreclosure and Claims Process Review
            O'Fallon, MO

## INTRODUCTION AND BACKGROUND

As part of the Office of the Inspector General's (OIG) nationwide effort to review the
foreclosure practices of the five largest Federal Housing Administration (FHA) mortgage
servicers (Bank of America, Wells Fargo Bank, CitiMortgage, JP Morgan Chase, and Ally
Financial, Incorporated), we reviewed CitiMortgage's foreclosure and claims processes. In
addition to this memorandum, OIG issued separate memorandums for each of the other four
reviews.[1]  OIG also plans to issue a summary memorandum reporting the results of all five
memorandums.  We performed these reviews due to reported allegations made in the fall of 2010
that national mortgage servicers were engaged in widespread questionable foreclosure practices
involving the use of foreclosure "mills" and a practice known as "robosigning"[2] of sworn
documents in thousands of foreclosures throughout the United States.  We initially focused our
efforts on examining the foreclosure practices of servicers in the judicial States and jurisdictions
in which they do business.[3]

---

[1]    See review memorandums (2012-FW-1802, 2012-AT-1801, 2012-CH-1801, 2012-PH-1801).
[2]    We have defined the term "robosigning" as the practice of an employee or agent of the servicer signing
       documents automatically without a due diligence review or verification of the facts.
[3]    With respect to foreclosure procedures, there are three variations:  those States that require a complete judicial
       proceeding, which are referred to as "the judicial jurisdictions"; those that do not require a judicial proceeding;
       and those that are a hybrid.  For purposes of this review, we determined that there were 23 judicial States and
       jurisdictions.

CitiMortgage is a nonsupervised FHA direct endorsement lender that can originate, sponsor, and service FHA-insured loans. During Federal fiscal years 2009 and 2010[4], CitiMortgage submitted 19,189 FHA claims totaling $2.4 billion.[5]

CitiMortgage did not halt judicial foreclosures while it reviewed its policies and procedures, like some servicers did in the fall of 2010. According to the November 2010 testimony to Congress of a managing director of CitiMortgage, CitiMortgage believed that there was no reason to suspend its foreclosure process because it had been taking measures to strengthen its practices beginning in the fall of 2009 to ensure that foreclosures were processed correctly. Further, CitiMortgage was reviewing approximately 10,000 affidavits that were executed in pending judicial foreclosures and expected to refile affidavits executed before the fall of 2009. Separately, CitiMortgage was also reviewing approximately 4,000 pending foreclosure affidavits in judicial States that were executed at its Dallas processing center that may not have been signed in the presence of a notary. CitiMortgage expected that it would refile those affidavits as well.

Because we identified potential False Claims Act[6] violations, we provided the U.S. Department of Justice (DOJ) with our analyses and preliminary conclusions as to whether CitiMortgage engaged in the reported foreclosure practices.

DOJ used our review and analysis in negotiating a settlement agreement with CitiMortgage. On February 9, 2012, DOJ and 49 States attorneys general announced a proposed settlement of $25 billion with CitiMortgage and four other mortgage servicers for their reported violations of foreclosure requirements. As part of the proposed settlement agreement, each of the five servicers will pay a portion of their settlement to the United States and also must undertake certain consumer relief activities. The proposed settlement agreement described tentative credits that each mortgage servicer would receive for modifying loans, including principal reduction and refinancing, and established a monitoring committee[7] and a monitor to ensure compliance with agreed-upon servicing standards and the consumer relief provisions. Once the final settlement agreement has been approved by the court, OIG will issue a separate summary memorandum detailing each of the five servicers' allocated share of payment due as a result of the settlement agreement.

Our objective was to determine whether CitiMortgage complied with applicable foreclosure procedures when processing foreclosures on FHA-insured loans.

## METHODOLOGY AND SCOPE

To accomplish our review objective, we
- Obtained an understanding of relevant legislation, program guidance, and criteria related to FHA single-family mortgage insurance.

---

[4]  For the period October 1, 2008 through September 30, 2010.
[5]  Properties located in judicial foreclosure States and jurisdictions accounted for $778 million in claims (34 percent of the claims). Properties located in nonjudicial foreclosure States and jurisdictions accounted for more than $1.6 billion in claims (66 percent of the total loans with claims). These amounts include all categories of FHA claims.
[6]  31 U.S.C. §3729 *et. seq.*
[7]  Comprised of representatives of the State attorneys general, DOJ, and HUD.

2

- Obtained and reviewed relevant CitiMortgage written policies and procedures regarding its foreclosure process.
- Obtained and examined relevant reviews of CitiMortgage's servicing and foreclosure processes.
- Obtained and reviewed various congressional testimonies and documents from various court proceedings related to the foreclosure practices of CitiMortgage and other lenders and law firms.
- Interviewed CitiMortgage management and staff and vendor staff, including those involved in the document execution, notary, foreclosure, and claims processes.
- Coordinated with CitiMortgage's legal counsel, our Office of Legal Counsel, and DOJ attorneys.
- Identified and reviewed a sample of 28 conveyance CitiMortgage FHA claims processed by the U.S. Department of Housing and Urban Development (HUD) during the review period. We selected a nonrepresentative sample of 28 conveyance claims to review for affidavits. A conveyance claim occurs when the servicer conveys the property to HUD in exchange for insurance benefits. We chose our first nine conveyance claims based on the number of days between the default date and the claim processed date (to get a variety of lengths of time) and based on the claim process date (to get claims from a variety of timeframes). We later chose 19 additional conveyance claims with high loss amounts in States that were listed as judicial only in a RealtyTrac listing.[8]
- Reviewed FHA claims and related documents, including affidavits, for the 28 claims in our sample.
- Obtained and analyzed FHA claims data from HUD.
- Issued one Inspector General administrative subpoena for documents and records.

During the course of our review and the drafting of this memorandum, CitiMortgage was actively engaged in negotiations with DOJ in an attempt to resolve potential claims under the False Claims Act or other statutes for the conduct we were reviewing. Accordingly, OIG determined that our work product was privileged and not releasable to CitiMortgage for any purpose, including the solicitation of written comments on our findings from CitiMortgage. For this same reason, we did not provide CitiMortgage with a copy of the draft memorandum. Both DOJ and HUD concurred with our determination that the work product was privileged.

OIG also issued memorandums reporting the results of the reviews of four other servicers. The results reported in the five OIG memorandums differ due to various factors. These factors include (1) the level of information made available to auditors at the time of the onsite reviews or that was obtained later through subpoenas or civil investigative demands[9]; (2) variances between review procedures used, including the analysis of the data, that were governed in part by the amount and types of information obtained; (3) differences between the foreclosure procedures used by the servicers; and (4) scope limitations imposed by some servicers.

---

[8]   RealtyTrac, Inc., is a private company operating an online marketplace for foreclosed-upon properties. It collects and aggregates foreclosure data from more than 2,200 counties, covering more than 90 percent of U.S. households.

[9]   Under 31 U.S.C. § 3733 *et. seq.*, CIDs can be served on a person to give oral testimony whenever the Attorney General has reason to believe that the person may be in control of information relevant to a false claim investigation.

Our review generally covered CitiMortgage's foreclosure and claims processes for its FHA claims initially processed by HUD between October 1, 2008, and September 30, 2010, including its procedures for signing and notarizing sworn judgment affidavits. The review included both judicial and nonjudicial foreclosure States and jurisdictions, which provided a broad overview of CitiMortgage's practices and compliance with requirements. We expanded the scope as needed to accomplish our objective. We initiated our review on October 15, 2010, and performed onsite work at CitiMortgage's office in O'Fallon, MO, between October and December 2010.

## Scope Limitation

Our review was significantly hindered by CitiMortgage's lack of records. For instance, CitiMortgage did not have a mechanism for tracking how many foreclosure documents were signed during our review period or which documents were signed by each individual. The lack of tracking impaired our review because it prevented us from accurately measuring the number of foreclosure documents signed by employees and measuring the complete impact of CitiMortgage's foreclosure practices.

## RESULTS OF REVIEW

CitiMortgage did not establish effective control over its foreclosure process. This failure permitted a control environment in which

- Affiants[10] routinely signed foreclosure documents, including affidavits, certifying that they had personal knowledge of the facts when they did not. Specifically, affiants signed large volumes of foreclosure documents without reviewing the supporting or source documentation referenced in them.
- Notaries public routinely notarized documents without witnessing affiant signatures.
- Attorneys may have improperly prepared documents and misrepresented the work they performed.

This flawed control environment resulted in CitiMortgage's filing improper legal documents, thereby misrepresenting its claims to HUD and may have exposed it to liability under the False Claims Act.

## Questionable Affidavit and Foreclosure Document Processes

CitiMortgage failed to follow HUD requirements[11] for properties it foreclosed upon in judicial foreclosure States and jurisdictions. These provisions required CitiMortgage to obtain and convey to the Secretary of HUD good and marketable title to properties. CitiMortgage may have conveyed improper titles to HUD because it did not establish a control environment which ensured that affiants performed a due diligence review of the facts submitted to courts and employees properly notarized documents.

Judicial foreclosures were processed through the court system beginning with CitiMortgage's filing a complaint or petition regarding a mortgage purportedly in default. The formal legal

---

[10]   An affiant is a person who signs an affidavit and attests to its truthfulness before a notary public.
[11]   24 C.F.R. § 203.366(a) and HUD Handbook 4330.4, paragraphs 2-6 and 2-23

document stated what the debt was and why the default should allow CitiMortgage to foreclose on the property. In many judicial foreclosures, an affidavit was part of the foreclosure documentation. Generally, a representative of CitiMortgage swore in a notarized affidavit that CitiMortgage owned or held the mortgage in question and that the borrower was in arrears. As judicial States and jurisdictions routinely resolved foreclosures through summary judgment,[12] the accuracy and propriety of the documents were essential to ensure the integrity of the foreclosure process. CitiMortgage used a flawed process to submit FHA conveyance claims for judicially foreclosed-upon properties during the review period and received FHA claim payments of nearly $597 million.[13]

*Affiants Robosigned Foreclosure Documents*

Because CitiMortgage did not have written policies and procedures for the signing process before November 2009 and did not have a mechanism for tracking foreclosure documents signed during our review period, we relied on interviews to gain an understanding of its practices. We found that CitiMortgage's employees signed foreclosure documents without reviewing them for accuracy. However, CitiMortgage also made significant changes to its process for reviewing and signing foreclosure documents during our review period, which included consolidating the process.

Before November 2009, CitiMortgage employees regularly signed foreclosure documents with only a cursory review for completeness. They did not review the documents for accuracy. This process was corroborated by interviews with vice presidents, assistant vice presidents, and contractor employees; an April 2008 deposition; a November 2010 testimony before Congress; and a November 2010 internal CitiMortgage report. In our sample of 28 conveyance claims, we identified 12 with foreclosure documents signed by 6 CitiMortgage employees that contained financial figures or default information. We interviewed four of these affidavit signers, who all confirmed that they signed documents without verifying their accuracy; the other two are no longer employed by CitiMortgage. According to several employees, the process of signing documents was inherited with their positions.

Beginning in November 2009, CitiMortgage began to consolidate its process for reviewing and signing foreclosure documents into the process it uses today. The consolidation was completed in February 2010. This change resulted in the creation of a department in which nonmanagement employees were full-time document signers. These employees were made officers of CitiMortgage in September 2010. They reviewed facts and figures in foreclosure documents before signing. Since the consolidation process began, CitiMortgage had also begun various levels of tracking and review of the process.

When asked about the number of foreclosure documents they signed before the consolidation, employees were unable to provide consistent estimates. Some employees indicated that they signed 60-200 documents per day. Another employee indicated that he would sometimes receive 1- to 2-inch stacks of documents multiple times in a day. Several employees acknowledged that the number of documents increased over time.

---

[12]   A decision made on the basis of statements and evidence presented for the record without a trial. It is used when there is no dispute as to the facts of the case and one party is entitled to judgment as a matter of law.

[13]   This amount was calculated based on information in HUD's Single Family Data Warehouse and excludes claims for deeds in lieu of foreclosure.

The process CitiMortgage used before the consolidation did not ensure that its foreclosure documents were properly executed before it submitted them to courts or that it conveyed good and marketable title to HUD.

*Notaries Did Not Witness Signatures*

CitiMortgage did not establish a control environment which ensured that its notaries met their responsibilities under State laws that required them to witness affiants' signatures on documents that they notarized.[14]  CitiMortgage employed notaries[15] who notarized signatures on foreclosure documents and used notaries of its collocated vendors.

Before November 2009, CitiMortgage employees regularly signed foreclosure documents when not in the presence of a notary.  This process was corroborated by several interviews with signers and notaries, including vice presidents, assistant vice presidents, and contractor employees; an April 2008 deposition; a November 2010 testimony before Congress; and a November 2010 internal CitiMortgage report.  If a notary did not witness the signature, the notarization of the document was improper.  Since February 2010, CitiMortgage had changed its process to require signing to take place in the presence of a notary.

As one of the primary purposes of using a notary was to verify the authenticity of the signer, CitiMortgage's failure to ensure that notaries witnessed signatures was a significant control weakness.  Because this type of deficiency undermined the integrity of the control environment, the affidavits and other foreclosure documents submitted by CitiMortgage were unreliable and inauthentic, and may have exposed it to False Claims Act liability.

*Attorneys May Have Improperly Prepared Documents*

CitiMortgage used law firms that may have engaged in questionable practices to process FHA-insured foreclosures.  These practices ranged from allegations of employees' or agents' signing documents automatically without a due diligence review or verification of the facts and unauthorized practice of law to a judge's ruling that in an attempt to collect on questionable debt, a firm filed deceptive documents.

Before October 2010, CitiMortgage indicated that there was a subset of affidavits that were signed directly by the attorneys whose firms prepared them.  The number and extent of these activities is not known as affidavits were not tracked.  However, in a November 2010 internal CitiMortgage report, CitiMortgage indicated that it did not have a process in place to validate the accuracy of affidavits signed under power of attorney delegation authorities.

Our review found that several of the law firms used by CitiMortgage to process judicial and nonjudicial foreclosures had been named in various court proceedings throughout the country, alleging questionable foreclosure activities.

---

[14]   Every state's notary laws require that the notary personally administer an oath and/or personally verify the identity of the document signer.

[15]   These notaries had additional job duties and responsibilities.

For example, CitiMortgage was referred to in a complaint[16] against Goldbeck, McCafferty, and McKeever, PC, a law firm that conducted foreclosure work.  The complaint alleged that nonlawyers in the firm's employ engaged in the unauthorized practice of law by preparing foreclosure complaints, signing lawyers' names to those complaints, and filing those complaints in county courts around the Commonwealth of Pennsylvania.  The complaint included 27 exhibits containing signatures to support the plaintiff's allegation that hundreds or thousands of cases were prepared, signed, and filed by the nonlawyer defendants without attorney review.  If nonlawyers, on Goldbeck, McCafferty, and McKeever's behalf, signed and filed documents for FHA-insured foreclosures, these filings may not have been valid.  As table 1 shows, the exhibits included in the complaint against the firm contained eight signatures on CitiMortgage documents for attorney Michael McKeever, several of which appeared to have been by different individuals.

Table 1:  Different signatures and signers for attorney Michael McKeever



In addition, the chief U.S. bankruptcy judge for Western Pennsylvania ruled that the firm filed copies of three key letters, created after the fact in an attempt to collect on questionable debt, that were not sent to the homeowner or her lawyer.  The judge ordered Goldbeck, McCafferty, and McKeever and the attorney to report to the Disciplinary Board of the State Supreme Court.[17]

In another example, a notary for Phelan, Hallinan & Schmieg testified in a deposition that over a 3-year period, he falsely acknowledged tens of thousands of mortgage assignments for the firm, often outside the signer's presence.  The notary also acknowledged under oath that he notarized documents in New Jersey when he did not hold a notary license in that State.[18]  In addition, a

---

[16] *Loughren vs. Lion, et al.*, GD-10, Allegheny County, PA
[17] *In re Hill*, 437 B.R. 503 (Bankr. W.D. Pa., November 24, 2010)
[18] *Bank of New York v. Ukpe*, Docket No. F-10209-08

7

partner was accused of having potential conflicts of interest in the assignment of mortgage notes. It was argued that the partner executed an assignment in his capacity as a Mortgage Electronic Registration Systems officer while Phelan, Hallinan & Schmieg was also a vendor for Mortgage Electronic Registration Systems, the assignor. The notary and partner had both been individually named in proceedings involving questionable foreclosure practices for servicers other than CitiMortgage.[19] According to CitiMortgage's records, Phelan, Hallinan & Schmieg was used for foreclosure cases in two judicial foreclosure States.[20] It signed foreclosure documents for 3 of the 28 sample loans we reviewed.

On November 16, 2010, the Congressional Oversight Panel released an indepth report analyzing the robosigning allegations.[21] Its report concluded that "[t]he foreclosure documentation irregularities unquestionably show a system riddled with errors" and emphasized "that mortgage lenders and securitization servicers should not undertake to foreclose on any homeowner unless they are able to do so in full compliance with applicable laws and their contractual agreements."

If third-party law firms engaged in questionable practices on behalf of CitiMortgage, the foreclosures may not have complied with laws and agreements. Based upon our review, we made a determination that CitiMortgage's practices may have exposed it to liability under the False Claims Act.

## CONCLUSION

CitiMortgage did not establish an effective control environment to ensure the integrity of its foreclosure process. Because it failed to establish proper policies and procedures that fostered compliance with laws and regulations, its affiants robosigned foreclosure documents, its notaries failed to authenticate signatures, and it used law firms that may have falsified signatures on legal foreclosure documents. As a result of its flawed control environment, CitiMortgage engaged in improper practices by not fully complying with applicable foreclosure procedures when processing foreclosures on FHA-insured loans. This flawed control environment resulted in CitiMortgage's filing improper legal documents, thereby misrepresenting its claims to HUD.

During the review period, CitiMortgage submitted 5,182 conveyance claims[22] totaling nearly $597 million in the 23 judicial foreclosure States and jurisdictions. DOJ used our review and analysis in negotiating the settlement.

Once the settlement agreement is approved by the court, OIG will issue a separate summary memorandum to HUD containing recommendations to correct weaknesses discussed in this and the other four memorandums. Accordingly, this memorandum contains no recommendations.

---

[19] *U. S. Bank NA v. Sinchegarcia*, F-18446-08. *Deutsche Bank National Trust Company v. Charlene Smith*, No. 08-3089

[20] CitiMortgage indicated in a foreclosures referral matrix that Phelan, Hallinan & Schmieg was used for 100 percent of its loans in New Jersey and 50 percent of its loans in Pennsylvania. However, CitiMortgage did not maintain a list of all affidavits and documents filed.

[21] Congressional Oversight Panel, November Oversight Report Examining the Consequences of Mortgage Irregularities for Financial Stability and Foreclosure Mitigation (November 16, 2010), available at http://cop.senate.gov/documents/cop-111610-report.pdf (submitted under section 125(b)(1) of Title 1 of the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343)

[22] Excludes deeds in lieu of foreclosure

**OFFICE OF AUDIT**
**REGION VII**
**KANSAS CITY, KS**                                    **MEMORANDUM OF REVIEW**



OFFICE OF
# INSPECTOR GENERAL
U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

# CitiMortgage, Inc.
# Foreclosure and Claims Process Review
# O'Fallon, MO

**MEMORANDUM NO. 2012-KC-1801**                    **MARCH 12, 2012**