FILED by _____ D.C.

OCT 2 0 2017

STEVEN M. LARIMORE
CLERK U. S. DIST. CT
S. D. of FLA. – MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

Grace Solis
    Plaintiff

v.                          Case #16-cv-20612-UU

CITIMORTGAGE, INC.,

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS THIRD
## AMENDED COMPLAINT

      Plaintiff, Grace Solis, *pro se*, hereby files her Response to Defendant's (CITI) Motion to Dismiss Third Amended.  Plaintiff states the following:

**Background**

1. Plaintiff filed her original complaint on February 19, 2016.

2. The Court dismissed the complaint without prejudice *sua sponte* on March 3, 2016.

3. Plaintiff filed her First Amended Complaint (FAC) on March 18, 2016 to comply with the Court's order.

4. On March 21, 2016, the Court dismissed without prejudice the FAC on March 21, 2016 and administratively closed the file.

5. On March 22, 2016, Plaintiff filed her Motion for Clarification requesting the Court to clarify the problems with the FAC and the Court refused to respond.

6. On June 10, 2016, Plaintiff filed her Motion to Re-Open the Case with a Second Amended Complaint (SAC) dismissing all the defendants except CitiMortgage, after being informed by several clerk's that to re-open a case, Plaintiff just had to file a Motion to Re-Open,

7. On June 13, 2016, the Court refused to re-open the case.

1

8. On July 6, 2016, Plaintiff filed her Notice of Appeal.

9. On July 17, 2017, the 11th Circuit Appellate Court vacated and remanded Plaintiff's case and stated that the district court abused its discretion in dismissing Plaintiff's FAC.

10. On August 14, 2017, the District Court instructed Plaintiff to file an Amended Complaint without guidance.

11. On August  , 2017, Plaintiff was uncertain which complaint to file and asked the court for guidance..

12. On August 29, 2017, the court instructed Plaintiff to file her complaint, either the First Amended Complaint, the Second Amended Complaint or a Third Amended Complaint (TAC).

13. Plaintiff filed her Third Amended Complaint on September 5, 2017.

Plaintiff addresses Defendant's claims in its Motion to Dismiss TAC as follows:

## I.      Plaintiff's Complaint Fails to Meet Basic Pleading Standards Under Fed. R. Civ. P. 8 & 12(b).

CITI claims that Plaintiff's TAC fails to plead facts and then provides too much surplusage. Plaintiff makes clear allegations regarding CITI's conduct.  Plaintiff plead FACTS, not conclusory allegations.  Defendant misleads the court by stating that Plaintiff conclusorily alleged that CITI used an auto dialer when Plaintiff included TWO letters from CITI wherein CITI informed Plaintiff it was removing her from CITI'S AUTODIALER, that is a fact from CITI, not a conclusory allegation.  Furthermore, Plaintiff answered these calls and made notes at the time of each call.

Defendant then goes on to state the Circuit Court's final judgment of foreclosure bars the Fair Credit Reporting Act.  Failure to provide accurate information to the credit reporting agencies has nothing to do with a judgment of foreclosure.  If the **wrong** dates, amount,

2

payments, etc., are reported, those are VIOLATIONS of the Fair Credit Reporting Act and are covered by the Act.  Plaintiff included copies of the mortgage statement and the credit reports which demonstrates the discrepancies.

Plaintiff's allegations were cited chronologically in order, to assist CITI to see what transpired.  Plaintiff did not go from past to present to past to future to present to confuse CITI. Plaintiff plead factual allegations chronologically, as they happened over several years, just like a report.  Plaintiff alleged facts so that the court does not have to fill in the blank as the District Court for the Southern District of Georgia explained in *Bivens v. Roberts,* 2009 U.S. Dist. LEXIS 11832, 12-13 (S.D. Ga. Feb. 18, 2009).  Defendant states there is too much information but then there is not enough information, which is it?

## II.     Plaintiff Fails to Adequately Plead a TCPA Claim

It seems Defendant CITI has not reviewed any of the 28 exhibits provided in the TAC.  There are two letters from CITI in exhibits wherein they state they RECEIVED Plaintiff's cease and desist letters and have removed Plaintiff from their AUTO DIALER (Exhibit A).  Plaintiff answered these calls and observed a brief pause and then someone came on the line.  Plaintiff revoked her consent to be called in each written communication sent to Defendant via certified mail, ¶42 of the TAC.  Defendant admitted it called Plaintiff from an auto-dialer in these letters to Plaintiff.

Defendant proceeds to sight numerous cases that are not on point with the case at bar. Plaintiff observed and Defendant admitted in two separate letters to Plaintiff that it received Plaintiff's cease and desist letters and Defendant used an automatic dialer to call Plaintiff.  The cases cited do not override the FACTS admitted by Defendant in its 2011 and 2012 letters to Plaintiff which were provided in the TAC.  Defendant refuses to ADMIT that it called Plaintiff

with the use of an auto dialer AFTER receiving Plaintiff's cease and desist letters.  The United

States Court of Appeals for the Eleventh Circuit held that a consumer can partially revoke

consent under the TCPA. In *Schweitzer v. Comenity Bank*, No. 16-10498 (11th Cir. 2017).  In the

case at bar, Plaintiff completely revoked consent to be called.

### III.      Plaintiff's FCRA claim Fails as a Matter of Law Because of the Statute of Limitations and Res Judicata of the State's Final Judgment of Foreclosure

Plaintiff thanks Defendant for pointing out that she mistakenly left out the fact that

Plaintiff did make another complaint about Defendant to the credit bureaus in July 2015, via

certified mail, (Exhibit B).  Defendant continued to report inaccurate and incomplete

information to the credit bureaus to date without conducting a reasonable investigation.

Plaintiff has brought the action within the 2 years' statute of limitations.

. FCRA U.S.C. §1681o states:

Civil liability for negligent noncompliance (a) In general.  Any person who is negligent in
failing to comply with any requirement imposed under this title with respect to any
consumer is liable to that consumer in an amount equal to the sum of --(1) any actual
damages sustained by the consumer as a result of the failure; and (2) in the case of any
successful action to enforce any liability under this section, the costs of the action together
with reasonable attorney's fees as determined by the court.

FCRA U.S.C. §1681n states:

(a) **In general**

Any person who willfully fails to comply with any requirement imposed under this
subchapter with respect to any consumer is liable to that consumer in an amount equal to
the sum of—

(1)

(A) any actual damages sustained by the consumer as a result of the failure or damages of
not less than $100 and not more than $1,000; or

(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

138. (b) **Duties of furnishers of information upon notice of dispute**

(1) **In general**

After receiving notice pursuant to section 1681i (a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i (a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

Nowhere in the FCRA does it state that if there is a foreclosure action, that it bars Plaintiff from seeking legal redress regarding Defendant's violations of the FCRA. The FCRA is a tool for consumers to monitor and keep creditors from reporting inaccurate, misleading or incomplete information. Defendant's reporting inaccurate information to a credit bureau has nothing to do

with the foreclosure.  These are not necessary details for a foreclosure.  Plaintiff filed this action in February 2016 when the foreclosure was not completed.  There is no compulsory counter claim regarding federal claims in a state court action.  Jurisdiction over congressionally enacted statues is usually reserved for the federal court.

Jurisdictions vary in the tests they apply for determining whether the causes of action in two suits are the same. Some use a "same evidence" test, under which two causes of action are the same if the evidence needed to sustain the second suit would have sustained the first, or if the same facts would be essential to maintain both actions, *Walker v. Contimortgage* (*In re* Walker), 232 B.R. 725, 734 (Bankr. N.D. Ill. 1999).

Another common standard is a "transactional" test, which asks whether a single group of operative facts gives rise to the claims for relief in both cases, *R.G. Fin. Corp. v. Vergara-Nuñez,* 446 F.3d 178, 183 (1st Cir. 2006) (Puerto Rico law).  Under this test, while both arise from the same credit transaction, the operative facts for a foreclosure, eviction, or collection may be regarded differently. A majority of courts to apply the transactional test to foreclosure judgments have found a final judgment to bar subsequent rescission claims, *See, e.g., Dye v. Ameriquest Mortgage Co.*, 289 Fed. Appx. 941 (7th Cir. 2008) (TILA rescission claim barred because based on same transaction as foreclosure case); *R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178 (1st Cir. 2006) (applying Puerto Rico law) (TILA rescission claim barred by prior state court foreclosure judgment, because both arise out of loan transaction, entail determination of its validity, and call into question the parties' rights as to the loan and the mortgaged premises); *Radford v. U.S. Bank,* 2011 WL 4054863, at *9–11 (D. Haw. Sept. 9, 2011) (default judgment in foreclosure case bars TILA and other claims that could have been raised there).

Some courts have reached the opposite conclusion, *Council v. Better Homes Depot*, 2006 WL 2376381 (E.D.N.Y. Aug. 16, 2006) (applying transactional test; origination of mortgage is not same transaction as borrower's subsequent nonpayment, so TILA and fraud-type claims based on the former are not barred by foreclosure judgment); *Walker v. Contimortgage* (*In re* Walker), 232 B.R. 725, 734 (Bankr. N.D. Ill. 1999) (applying both transactional and evidence test, concluding rescission claim did not involve same cause of action as prior foreclosure judgment). *See also Daniels v. Funding USA, Inc.,* 350 B.R. 619 (Bankr. S.D. Fla. 2006) (state court foreclosure judgment may bar TILA claim that challenges legality of fees but does not bar TILA rescission claim, because it goes to making of loan rather than obligations under it).

A third formulation of the identity test is whether the primary right and duty or wrong are the same in both actions. *White v. World Fin. of Meridian, Inc.*, 653 F.2d 147 (5th Cir. 1981) (pre-*Migra* case. Miss. law). Applying this test, the Fifth Circuit held that res judicata did not bar a TILA action that a consumer brought after having previously litigated and won a state law claim involving disclosure requirements different from TILA's. *White v. World Fin. of Meridian, Inc.,* 653 F.2d 147 (5th Cir. 1981) (Miss. law).

In order to prove that a foreclosure action is a compulsory counterclaim to an FDCPA action, a borrower must first show that the two claims "arise" out of the same transaction or occurrence.  A court looks to whether there is "a logical relationship between the two claims[.]" See *Maddox v. Ky. Fin. Co.*, 736 F.2d 380, 382 (6th Cir, 1984).  "Under this test, [a court] determines whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claim." See *Sanders v. First Nat'l Bank & Trust Co. in Great Bend*, 936 F.2d 273, 277 (6th Cir. 1991).   A partial overlap in issues of law and fact does not compel a finding that two claims are logically related.

See *Peterson v. United Accounts, Inc.* 628 F.2d 134, 1137 (8th Cir. 1981). The Sixth Circuit noted that it had previously held that a counterclaim on the underlying debt in a Truth in Lending Act ("TILA") action is permissive rather than compulsory. See *Maddox*, 736 F.2d at 383, While the claim and counterclaim do arise out of the same transaction within the literal terms of Rule 13(a), we do not believe that they are logically related in such a way as to make the counterclaim compulsory. The claim and counterclaim will present entirely different legal, factual and evidentiary questions. It is not clear that the interests of judicial economy and efficiency would be served in the least by requiring that the two claims be heard. See id. at 383, construing *Whigham v. Beneficial Finance Co. of Fayetteville, Inc.*, 599 F.2d 1322, 1323-24 (4th Cir. 1979) (concluding that debt collection and TILA claims raise "significantly different" issues of fact and law).

Next, the Court noted that while it had yet to address whether a counterclaim to collect the underlying debt is a compulsory in a FDCPA action, the Sixth Circuit noted that the framework in cases dealing with TILA supported a finding that Defendants were not required to bring a debt collection action as a counterclaim to Borrowers' FDCPA lawsuit. See, e.g., *Maddox,* 736 F.2d at 380; *Sanders*, 936 F.2d at 273; *Whigham*, 599 F.2d at 1322.

First, the Sixth Circuit noted that the FDCPA claim raises different issues of law than a foreclosure action. A foreclosure action alleges "that the borrower has defaulted on a private loan contract governed by state law." *Whigham,* 599 F2d at 1324. Conversely, a FDCPA action requires interpretation of federal statutory law and regulations designed to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e).

Second, the Sixth Circuit concluded that the factual issues presented by a FDCPA claim and a foreclosure action are not largely the same. Notably, the dispositive issue in the FDCPA

action, the date in which the Defendants acquired their interest in the debt, was entirely irrelevant in a foreclosure action.  Further, the Sixth Circuit noted that while a foreclosure action requires a lender to prove that a debtor is in default and to prove the amount that a debtor owes, an FDCPA claim focuses on the "use of unfair methods to collect [a debt]." *Peterson*, 638 F.2d at 1136.

Finally, the Sixth Circuit noted that policy considerations supported finding that a counterclaim on the underlying debt in an FDCPA action is permissive rather than compulsory. Such a rule could systematically usurp state law debt claims for adjudication by state courts. *See Maddox*, 736 F.3d at 383.  Likewise, such a rule would require lenders to initiate foreclosure proceedings as a counterclaim when they otherwise may not have done so – frustrating the purposes of the FDCPA by creating a disincentive for debtors to sue.  See id. at 383 n.1.

Defendant fails to inform this court that COUNT I- MORTGAGE FORECLOSURE of the Amended Verified Foreclosure filed on October 23, 2015 (Exhibit C) was DISMISSED.  The underlying facts for the mortgage foreclosure were NOT litigated.  Defendant succeeded in obtaining an equitable subrogation, which Plaintiff paid.  Plaintiff filed this complaint in February 2016 when the equitable subrogation was still in litigation.  Had Plaintiff not had to appeal this case, she would have been able to conduct discovery regarding these issues in 2016. Plaintiff will be deprived of her due process rights if she is not allowed to proceed regarding these facts regardless of the judgment that was reached on July 7, 2017.  The Eleventh Circuit Court of Appeals decided that Plaintiff should not have been dismissed in 2016.

**IV. Plaintiff's FCCPA Claim Fails Because Defendant's conduct was Mandatory under Federal Law, and Because Plaintiff's Claim Collaterally Attacks the Already Complete State Foreclosure Action.**

Plaintiff's FCCPA action is not barred by res judicata because they are **monthly** communications that were sent to Plaintiff by Defendant knowing she was represented by an attorney. How is this violation barred by the state foreclosure when it is communication with a represented party? Defendant is reaching for excuses for its behavior and not addressing this issue it its Motion to Dismiss.

¶147 of the TAC states:

Fla. Stat. §559.72(18) reads:

(18) Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within a reasonable period of time to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication..

Defendant's attorney communicated with Plaintiff's attorney in the foreclosure. If the mortgage statements were enforced by a statute, why did Defendant STOP sending the mortgage statements after Plaintiff filed her complaint? Defendant now admits to violating federal law because it stopped sending the monthly mortgage statements? How could they willingly violate federal law by not sending the mortgage statements to Plaintiff. Instead, Defendant's counsel is colluding with CITI'S foreclosure attorney by sending Plaintiff communications from the foreclosure attorney, addressed to OCCUPANT (Exhibit D). If it is acceptable to communicate directly with a represented party, why is Defendant's counsel sending Plaintiff communication from the foreclosure attorney, a third party? Defendant knows Plaintiff lives at her address and is the occupant. Defendant could easily have sent the mortgage statements to her foreclosure attorney. Judge Peck recently adopted this interpretation in the case of *Carey v. Everbank* in Hernando County, Case No. 14-CC-142 where he ruled that:

"The Court finds that Fla. Stat. 559.72(18) is not preempted by 12 CFR 1026.41 and that simultaneous compliance with both 12 CFR 1026.41 and Fla. Stat. 559.72(18) can be achieved by sending the monthly mortgage statements required by 12 CFR 1026.41 to legal counsel for a consumer. The Court rejects Defendant's arguments to the contrary.

In summary, Plaintiff believes she has plead facts to inform the Defendant of its violations. Defendant called Plaintiff's cell phone after receiving numerous letters via certified mail informing Defendant to not call Plaintiff and then Defendant sent Plaintiff two letters stating it removed Plaintiff from its auto dialer. Defendant admitted it used an auto dialer twice. Plaintiff informed Defendant that it violated the FCRA by reporting inaccurate, incomplete information after receiving communications from the credit bureaus that Plaintiff disputed the information Defendant provided. Plaintiff realizes that she forgot to include the July 30, 2015 letters she sent to the three credit bureaus regarding Defendant's inaccurate reporting of its trade-lines. The FCRA has nothing to do with the equitable subrogation case, the facts for the FCRA were not needed for the state equitable subrogation case, indeed, they were not included in the equitable subrogation case and it succeeded. Plaintiff reminds Defendant that it **did not** succeed with the mortgage foreclosure as Defendant intimated. Federal claims are not compulsory in state court actions. Finally, Plaintiff was impeded in conducting discovery regarding her allegations because her federal case was dismissed and the Eleventh Circuit Court of Appeals decided that she was unfairly dismissed. Plaintiff will be deprived of her due process if she is unable to proceed with her complaint because the case at bar was filed in February 2016 and she was hindered from moving forward and conducting discovery regarding her allegations that were proven by the exhibits provided in the Original Complaint. Plaintiff filed a prima facie case in February 2016. Plaintiff has

been unable to locate a case on point with hers since the facts are unusual and Defendant

certainly hasn't.  Defendant is acting as if this case was filed after the equitable subrogation

which was decided on July 17, 2017 when the case at bar was filed in February 2016.

  **WHEREFORE**, Plaintiff moves the court to grant Plaintiff's Response to Defendant

CITIMORTGAGE'S Motion to Dismiss Third Amended Complaint and permit Plaintiff to

Amend her Complaint to include the July 30, 2015 letters that were sent to the credit bureaus

and/or to Amend her Complaint as the court requires.

Respectfully submitted,        October 20, 2017

Grace Solis
*Pro se*
730 86th Street
Miami Beach, FL  33141

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of October, 2017, I filed the foregoing document

with the Clerk of the Court.  I also certify that the forgoing document is being served this day on

all parties and counsel of record listed below in the service list, by U.S mail.

## SERVICE LIST

ADAMS and REESE LLP
101 E. Kennedy Boulevard, Suite 4000
Tampa, FL  33602
Attorneys for CITIMORTGAGE

12

# EXHIBIT A

## CITIMORTGAGE'S LETTERS STATING THEY

## RECEIVED PLAINTIFF'S CEASE AND DESIST LETTER

## AND REMOVED HER FROM THEIR AUTO DIALER

CitiMortgage, Inc.
Research & Litigation
1000 Technology Drive
MS 314 73N
O'Fallon, MO 63368

www  citimortgage.com

## CitiMortgage



November 4, 2011

### VIA Regular Mail

GRACE SOLIS
730 86TH ST
MIAMI BEACH  FL  33141

Dear CitiMortgage Customer(s):

This letter is in response to your inquiry that was received in the Default Research and Litigation Department of CitiMortgage Inc. (CMI) on November 3, 2011.  I am responding on behalf of CMI as a Legal Support Specialist.

Please be advised that CMI is a wholly owned subsidiary of a federally chartered financial institution.  CMI expects its customers to abide fully with the legal obligations set out in the loan documentation.

As requested, CMI has placed an "In Dispute" comment on your CMI trade line.  CMI does not control or determine credit scoring models or calculations.  Therefore, we are unable to provide information on how or if this dispute code may impact your credit report, FICO, or other credit scores.  If you have questions regarding this comment appearing on your credit report, please contact the credit bureau agencies directly.

We are in receipt of your written request to cease and desist all collection calls with regard to your mortgage loan.  In accordance with the Fair Debt Collections Practices Act (FDCPA), we have removed your information from our auto-dialer system.

With regard to your dispute of the debt, the attached Note, Mortgage Agreement and payment history provide verification of the debt.

Item 1 – Enclosed please find a complete Payment History and CMI Transaction Codes for payment history.

Item 2   Please contact the Law Offices of Shapiro & Fishman at 813- 880- 8888 for reinstatement figures for this loan.

Item 3 –  Enclosed please find a copy of the Assignment of Mortgage from Allstate Mortgage & Invest Inc to CitiMortgage, Inc. CMI is the servicer of the Note and Mortgage.

CitiMortgage, Inc., does business as Citicorp Mortgage in NM.



Mortgage

August 29, 2012

VIA Regular Mail

GRACE D SOLIS
730 86TH ST
MIAMI BEACH FL 33141

Dear CitiMortgage Customer(s):

This letter is in response to an inquiry received in the Default Research and Litigation
Department of CitiMortgage Inc. (CMI) on

Below is the response to the inquiry.

CMI reports the borrower's loan to the four credit reporting agencies, Equifax, Experian, Trans
Unions, and Innovis. This loan has been reported as 180 days past due foreclosure started. Per
the Fair Credit Reporting Act, CMI is required to only report accurate information to the credit
reporting bureaus. As such, we are unable to make any amendments to the credit reporting of
your account. CMI does not control or determine credit scoring calculations; therefore we are
unable to provide information on how the borrower's loan impacts the credit report, FICO, or
other credit scores. Please contact the credit bureaus directly

We are in receipt of your written request to cease and desist all collection calls with regards to
your client's mortgage loan. In accordance with the Fair Debt Collections Practices Act
(FDCPA) we have removed their information from our auto-dialer system.

Enclosed please find a copy of your Payment History, Note, Mortgage, and Assignment. These
documents serve as validation of debt and include the originating lenders name and address.

CMI is the servicer of the note and mortgage and has the right to collect payments on this loan.

Item 1 - Enclosed please find copy of payment history.

Item 2 through Item 5 - Enclosed please find copy of Note and Mortgage.

Item 6 through Item 8 - CMI is not obligated to provide you with the information you requested
in your letter under items 6 through 8 as these questions are outside the scope of information
required to be provided under the Qualified Written Request provisions as set forth in RESPA.

# EXHIBIT B

## PLAINTIFF'S REDACTED JULY 30, 2015 LETTERS TO

## THE THREE CREDIT BUREAUS VIA CERTIFIED MAIL

730 86th Street
Miami Beach, FL  33141


July 30, 2015


TransUnion Consumer Relations
PO Box 2000
Chester, PA  19022

Via Certified Mail #7015 0920 0002 3808 1655

To Whom It May Concern:

I re-dispute the accuracy of the following accounts:



CITIMORTGAGE INC #200137XXXX;



Sincerely,

Grace D Solis

ank - USPS Tracking®

https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=70150...

English     Customer Service     USPS Mobile     Register / Sign In

# ≋USPS.COM

## USPS Tracking®


Customer Service
Have questions? We're here to help.


Get Easy Tracking Updates ›
Sign up for My USPS.

Tracking Number: 70150920000238081655

Updated Delivery Day: **Friday, August 7, 2015**

## Product & Tracking Information

**Available Actions**

Postal Product:          Features:
First Class Mail®        Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **August 6, 2015 , 10:05 am** | Delivered | CHESTER, PA 19013 |

Your item was delivered at 10:05 am on August 6, 2015 in CHESTER, PA 19013.

| | | |
|---|---|---|
| August 6, 2015 , 9:38 am | Arrived at Unit | CHESTER, PA 19013 |
| August 5, 2015 , 8:52 pm | Departed USPS Facility | PHILADELPHIA, PA 19176 |
| August 5, 2015 , 1:10 pm | Arrived at USPS Destination Facility | PHILADELPHIA, PA 19176 |
| August 3, 2015 , 11:05 pm | Departed USPS Facility | NTX P&DC |
| August 3, 2015 , 8:39 am | Arrived at USPS Facility | NTX P&DC |
| July 31, 2015 , 6:46 pm | Departed Post Office | MIAMI BEACH, FL 33141 |
| July 31, 2015 , 2:05 pm | Acceptance | MIAMI BEACH, FL 33141 |

## Track Another Package

Tracking (or receipt) number

Track It

CRUM LYNNE PA 19022

| | | |
|---|---|---|
| Postage | $ | $3.45 |
| Certified Fee | | $0.00 |
| Return Receipt Fee (Endorsement Required) | | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | | N/A |
| Total Postage & Fees | $ | $0.49 |
| | | $3.94 |

07/31/2015

Sent To: Consumer Opinion Consumer Relations
Street & Apt. No., or PO Box No. PO Box 2000
City, State, ZIP+4 Crum ... PA 19022

7015 0920 0000 2380 1655

PS Form 3800, July 2014          See Reverse for Instr

730 86th Street
Miami Beach, FL  33141


July 30, 2015


Equifax
PO Box 740256
Atlanta, GA  30374

Via Certified Mail #7015 0920 0002 3808 1648

To Whom It May Concern:

I re-dispute the accuracy of the following accounts:


CITIMORTGAGE #200137XXXX;


Sincerely,

Grace D Solis

USPS Tracking®                                   https://tools.usps.c



English        Customer Service        USPS Mobile

**≥USPS.COM**

# USPS Tracking®



Customer Service ›
Have questions? We're here to help.

Get Easy Tracking Updates ›
Sign up for My USPS.

Tracking Number: **70150920000238081648**

On Time
Expected Delivery Day: **Monday, August 3, 2015**

## Product & Tracking Information

Available Actions

Postal Product:                 Features:
First-Class Mail®               Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| August 3, 2015 , 11:49 am | Delivered | ATLANTA, GA 30348 |

Your item was delivered at 11:49 am on August 3, 2015 in ATLANTA, GA 30348.

| | | |
|---|---|---|
| August 3, 2015 , 1:56 am | Available for Pickup | ATLANTA, GA 30348 |
| August 3, 2015 , 1:02 am | Arrived at Unit | ATLANTA, GA 30304 |
| August 2, 2015 , 9:07 pm | Departed USPS Destination Facility | ATLANTA, GA 30304 |
| August 2, 2015 , 9:47 am | Arrived at USPS Origin Facility | ATLANTA, GA 30304 |
| August 1, 2015 , 1:27 am | Departed USPS Facility | MIAMI, FL 33152 |
| July 31, 2015 , 11:17 pm | Arrived at USPS Facility | MIAMI, FL 33152 |
| July 31, 2015 , 8:46 pm | Departed Post Office | MIAMI BEACH, FL 33141 |
| July 31, 2015 , 2:01 pm | Acceptance | MIAMI BEACH, FL 331 |

## Track Another Package

Tracking (or receipt) number

Track It



730 86th Street
Miami Beach, FL  33141


July 30  2015


NCAC
P.O. Box 9701
Allen, TX 75013

Via Certified Mail #7015 0920 0002 3808 1662

To Whom It May Concern:

I re-dispute the accuracy of the following accounts:




CITIMORTGAGE, INC. #200137;




ɔn



Sincerely,

Grace D Solis



English     Customer Service     USPS Mobile                                          Register / Sign in

# USPS.COM

## USPS Tracking®

Customer Service ›
Have questions? We're here to help.

Get Easy Tracking Updates ›
Sign up for My USPS.

Tracking Number: **70150920000238081662**

## Product & Tracking Information                    Available Actions

**Postal Product:**          **Features:**
First-Class Mail®            Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **August 4, 2015 , 3:55 am** | Delivered | ALLEN, TX 75013 |

Your item was delivered at 3:55 am on August 4, 2015 in ALLEN, TX 75013.

| August 3, 2015 , 11:05 pm | Departed USPS Facility | NTX P&DC |
| August 3, 2015 , 8:39 am | Arrived at USPS Destination Facility | NTX P&DC |
| July 31, 2015 , 6:46 pm | Departed Post Office | MIAMI BEACH, FL 33141 |
| July 31, 2015 , 2:05 pm | Acceptance | MIAMI BEACH, FL 33141 |

## Track Another Package                            Manage Incoming Packages

Tracking (or receipt) number                        Track all your packages from a dashboard
                                                    No tracking numbers necessary

                                    Track It          Sign up for My USPS ›

| | ALLEN TX 75013 | |
|---|---|---|
| | Postage | $ $3.45 |
| | Certified Fee | $0.00 |
| | Return Receipt Fee (Endorsement Required) | $0.00 N/A |
| | Restricted Delivery Fee (Endorsement Required) | N/A |
| | | $0.71 |
| | Total Postage & Fees | $ $4.16 |

**HELPFUL LINKS**   **ON ABOUT.USPS.COM**   **OTHER USPS**

Contact Us       About USPS Home        Business Cust
Site Index       Newsroom               Postal Inspect
FAQs             USPS Service Updates    Inspector Gen
                 Forms & Publications    Postal Explore
                 Government Services     National Posta
                 Careers                 Resources for

04/15
04 August

JUL 31 201

07/31/2015

Sent To NC AC Experian
Street & Apt. No., or PO Box No. PO Box 9701
City, State, ZIP+4 Allen, TX 75013

PS Form 3800, July 2014    See Reverse for Instructions

Copyright © 2015 USPS. All Rights Reserved.

9/30/2015 12:18 PM

# EXHIBIT C

# AMENDED STATE FORECLOSURE COMPLAINT

# COUNT I – MORTGAGE FORECLOSURE DISMISSED

# IN FINAL JUDGMENT

Filing # 33821171 E-Filed 10/29/2015 10:35:58 AM

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION
CASE NO.: 2013-CA-020961

CITIMORTGAGE INC.,
     Plaintiff,

vs.

GRACE DENISE SOLIS A/K/A GRACE
D. SOLIS, et, al.
     Defendant(s).
_____/

### VERIFIED AMENDED COMPLAINT FOR FORECLOSURE OF MORTGAGE, AND EQUITABLE SUBROGATION

Plaintiff, CITIMORTGAGE INC., sues the Defendants and alleges:

### COUNT I – MORTGAGE FORECLOSURE

1.    This is an action to foreclose a mortgage on real property in MIAMI-DADE County, Florida.

2.    The Court has jurisdiction over the subject matter.

3.    GRACE DENISE SOLIS A/K/A GRACE D. SOLIS executed and delivered a promissory note, dated December 17, 2003, securing payment to ALLSTATE MORTGAGE & INVEST INC. A copy of the note is attached hereto as Exhibit "A". GRACE DENISE SOLIS A/K/A GRACE D. SOLIS executed and delivered the mortgage, dated December 17, 2003. A copy of the mortgage is attached hereto as Exhibit "B". The mortgage was recorded on December 29, 2003, in Official Record Book 21934, at Page 3864-3880, of the Public Records of Miami-Dade County, Florida, and encumbered the property, described in the mortgage, then owned by and in possession of the mortgagor.

4.    The mortgage of the Plaintiff is a lien superior in dignity to any prior or subsequent right, title, claim, lien or interest arising out of mortgagor(s) or the mortgagor(s)' predecessor(s) in interest.

14-82954/EB

5.    Plaintiff is the holder of the original note secured by the mortgage.

6.    Defendant(s) have defaulted under the note and mortgage by failing to pay the payment due February 1, 2011, and all subsequent payments.

7.    Plaintiff declares the full amount payable under the note and mortgage to be due, except to the extent any part of that amount is or would be subject to a statute of limitations defense.

8.    Defendant(s) owe Plaintiff **$28,152.23** that is due and owing on principal on the note and mortgage, plus interest from and after January 1, 2011, and title search expenses for ascertaining necessary parties to this action, pursuant to the documents attached, except for those defendants who have been discharged in bankruptcy.

9.    In order to protect its security, the Plaintiff may have advanced and paid Ad Valorem Taxes, premiums on insurance required by the mortgage and other necessary costs, or may be required to make such advances during the pendency of this action.  Any such sum so paid will be due and owing to the Plaintiff.

10.   On or about October 26, 2013, SYLVIA SOLIS died.

11.   The property is now owned by Defendants(s), GRACE DENISE SOLIS A/K/A GRACE D. SOLIS, SHIRLEY JANICE SOLIS A/K/A SHIRLEY J. SOLIS, AND THE UNKNOWN HEIRS, BENEFICIARIES, DEVISEES, GRANTEES, ASSIGNEES, LIENORS, CREDITORS, TRUSTEES AND ALL OTHERS WHO MAY CLAIM AN INTEREST IN THE ESTATE OF SYLVIA SOLIS, DECEASED, and the record legal title to said mortgaged property is now vested in Defendant(s), GRACE DENISE SOLIS A/K/A GRACE D. SOLIS, SHIRLEY JANICE SOLIS A/K/A SHIRLEY J. SOLIS, AND THE UNKNOWN HEIRS, BENEFICIARIES, DEVISEES, GRANTEES, ASSIGNEES, LIENORS, CREDITORS, TRUSTEES AND ALL OTHERS WHO MAY CLAIM AN INTEREST IN THE ESTATE OF SYLVIA SOLIS, DECEASED, who hold or holds possession.

12.   All conditions precedent to the acceleration of this mortgage note and to foreclosure of the mortgage have been fulfilled and have occurred.

14-82954/EB

13.    Plaintiff is obligated to pay Plaintiff's attorneys a reasonable fee for their services. Plaintiff is entitled to recover its attorneys' fees pursuant to the express terms of the note and mortgage.

14.    Plaintiff alleges that the claims of the remaining Defendants are secondary, junior, inferior and subject to the prior claim of Plaintiff.

15.    The Defendant, BISCAYNE BEACH HOMEOWNERS ASSOCIATION, INC, may claim some right, title, or interest in the property herein sought to be foreclosed by virtue of unpaid dues, liens and/or assessments. However, said interest, if any, is subordinate, junior, and inferior to the lien of Plaintiff's mortgage.

16.    Any interest in the property inuring to the Defendant, CITIBANK, N.A., SUCCESSOR IN INTEREST TO CITIBANK, FEDERAL SAVINGS BANK, is subordinate and inferior to the lien of Plaintiff's mortgage, including, but not limited to, MORTGAGE recorded September 29, 2005, in Official Record Book 23824 at Page 3563, of the Public Records of Miami-Dade County, Florida.

17.    Any interest in the property inuring to the Defendant, MIAMI-DADE COUNTY, FLORIDA, is subordinate and inferior to the lien of Plaintiff's mortgage, including, but not limited to, ORDER OF THE SPECIAL MASTER recorded January 4, 2003, in Official Record Book 20926 at Page 3636 of the Public Records of Miami-Dade County, Florida.

18.    Any interest in the property inuring to the Defendant, KINGSWAY AMIGO INSURANCE COMPANY F/K/A US SECURITY INSURANCE COMPANY A/S/O ESTHER GONZALEZ, C/O CHIEF FINANCIAL OFFICER, R.A., is subordinate and inferior to the lien of Plaintiff's mortgage, including, but not limited to, JUDGMENT recorded October 13, 2005, in Official Record Book 23870 at Page 4650 of the Public Records of Miami-Dade County, Florida.

19.    Any interest in the property inuring to the Defendant, BRISTOL WEST INSURANCE COMPANY A/S/O LESLY AUGUSTINE HOGU, C/O CHIEF FINANCIAL OFFICE, R.A., is subordinate and inferior to the lien of Plaintiff's mortgage, including, but not limited to,

14-82954/EB

JUDGMENT recorded January 5, 2007, in Official Record Book 25254 at Page 642 of the Public Records of Miami-Dade County, Florida.

20.    Any interest in the property inuring to the Defendant, CAPITAL ONE BANK [USA], N.A., is subordinate and inferior to the lien of Plaintiff's mortgage, including, but not limited to, DEFAULT FINAL JUDGMENT recorded December 12, 2012, in Official Record Book 28395 at Page 2996 of the Public Records of Miami-Dade County, Florida.

21.    Any interest in the property inuring to the Defendant, EDWARD SOLIS, is subordinate and inferior to the lien of Plaintiff's mortgage, including, but not limited to, POSSIBLE HEIR IN THE ESTATE OF SYLVIA SOLIS, DECEASED or some other unknown interest, the exact nature of which is unknown to Plaintiff and not a matter of public record; however, said interest, if any, is subordinate, junior, and inferior to the lien of Plaintiff's mortgage.

22.    Any and all unknown parties claiming by, through, under, and against the herein named individual defendant(s) who are not known to be dead or alive, whether said unknown parties may claim an interest as spouses, heirs, devisees, grantees, or other claimants are joined as defendants herein. The claims of said defendants are subordinate, junior, and inferior to the interest of the Plaintiff.

WHEREFORE, Plaintiff demands judgment foreclosing the mortgage, for costs (and, when applicable, for attorneys' fees), and, if the proceeds of the sale are insufficient to pay Plaintiff's claim, a deficiency judgment. Request that subject to any applicable statute of limitations, that the Court ascertain the amount due to Plaintiff for principal and interest on the Mortgage and Note and for late charges, abstracting, taxes, expenses and costs, including attorney's fees, plus interest thereon; that if the sums due Plaintiff under the Mortgage and Note are not paid immediately, the Court foreclose the Mortgage and the Clerk of the Court sell the Property securing the indebtedness to satisfy the Plaintiff's mortgage lien in accordance with the provisions of Florida Statutes §45.031 (2006); that the rights, title and interest of any Defendant,

14-82954/EB

or any party claiming by, through, under or against any Defendant named herein or hereinafter made a Defendant be forever barred and foreclosed; that the Court appoint a receiver of the Property and of the rents, issues, income and profits thereof, or in the alternative, order sequestration of rents, issues, income and profits pursuant to Florida Statutes §697.07 (2006); and that the Court retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including the issuance of a writ of possession and the entry of a deficiency judgment decree, when and if such deficiency decree shall appear proper, if borrower(s) has not been discharged in bankruptcy.

### COUNT II – FOR THE IMPOSITION AND FORECLOSURE OF AN EQUITABLE LIEN BASED UPON EQUITABLE SUBROGATION

23.     The Plaintiff re-alleges and reaffirms the allegations in all paragraphs above, and further alleges as follows.

24.     This is an action to equitably subrogate a mortgage attaching to real property situated in Miami-Dade County, Florida.

25.     In June 2000, GRACE D. SOLIS obtained title to the real property that is the subject of this action.

26.     GRACE D. SOLIS financed her purchase of the subject property by granting a purchase money mortgage in favor of World Savings Bank in the amount of $40,000.00. The purchase money mortgage (hereinafter referred to as the "Prior Mortgage") was recorded on June 27, 2000, in Official Records Book 19172, Page 2115, of the Public Records of Miami-Dade County, Florida. A copy of the Prior Mortgage is attached as Exhibit "C."

27.     Thereafter, GRACE D. SOLIS transferred title from herself to herself and Defendants, SYLVIA SOLIS and SHIRLEY JANICE SOLIS, by way of a Quit-Claim Deed recorded on February 11, 2003 in Official Records Book 21014, Page 2049, of the Public Records of Miami-Dade County, Florida. A copy of the Quit-Claim Deed is attached as Exhibit "D." Thus,

SYLVIA SOLIS and SHIRLEY JANICE SOLIS took title subject to the lien of the Prior Mortgage.

28.     GRACE DENISE SOLIS subsequently refinanced the Prior Mortgage by executing and delivering a promissory note, dated December 17, 2003, securing payment to ALLSTATE MORTGAGE & INVEST INC. A copy of the note is attached hereto as Exhibit "A". Concomitantly, GRACE DENISE SOLIS A/K/A GRACE D. SOLIS executed and delivered the refinance mortgage, dated December 17, 2003, a copy of which is attached hereto as Exhibit "B". The refinance mortgage (hereinafter referred to as "Plaintiff's Mortgage") was recorded on December 29, 2003, in Official Record Book 21934, at Page 3864-3880, of the Public Records of Miami-Dade County, Florida, and encumbered the property, described in the mortgage, then owned by and in possession of the mortgagor. Plaintiff is holder by assignment, recorded in Official Record Book 21934, Page 3864, of the Plaintiff's Mortgage.

29.     In conjunction with the closing of the Plaintiff's Mortgage, a portion of the proceeds of the refinance loan was used to satisfy the Prior Mortgage. A copy of the HUD-1 Settlement Statement, dated December 17, 2003 and reflecting the pay-off of the Prior Mortgage in the amount of $32,731.46, is attached hereto as Exhibit "E." Subsequently, the Prior Mortgage was satisfied of records pursuant to a Release of Mortgage recorded on January 8, 2004 in Book 21959 at Page 78 of the Public Records of Miami-Dade County, Florida. A copy the Satisfaction of Mortgage is attached hereto as Exhibit "F."

30.     Plaintiff's Mortgage is entitled to be equitably subrogated to the lien of the Prior Mortgage holder and is entitled to a first lien position, superior to the interests of all Defendants named herein.

31.     By equitable subrogation, Plaintiff "stands in the shoes" of the holder of the Prior Mortgage to the extent of the pay-off plus interest accruing thereafter.

32.     By inadvertence and mistake, Defendants, SYLVIA SOLIS and SHIRLEY JANICE SOLIS, failed to join in the execution of Plaintiff's Mortgagee, even though as then record

14-82954/EB

owners they were obliged to do so. Nevertheless, insofar as Plaintiff is equitably subrogated to the rights of the Prior Mortgage, Plaintiff is entitled to the imposition and foreclosure of an equitable lien against the interests of said Defendants, who took title subject to the lien of the Prior Mortgage.

33.    No prejudice will be suffered by any party by granting Plaintiff an equitable lien.

34.    Plaintiff was not a volunteer when making the pay-off of the Prior Mortgage.

WHEREFORE, Plaintiff prays that the Court equitably subrogate Plaintiff's mortgage recorded on December 29, 2003 in Official Record Book 21934, at Page 3864-3880, of the Public Records of Miami-Dade County, Florida, to the lien of the Prior Mortgage, in the amount of the pay-off plus interest thereon from and after the date of the payoff, and order the foreclosure of the equitable lien against the interests of all Defendants, including SYLVIA SOLIS and SHIRLEY JANICE SOLIS, and for such further orders as this Court deems necessary and proper.

Respectfully submitted,

Robertson, Anschutz & Schneid, P.L.
Attorney for Plaintiff
6409 Congress Avenue, Suite 100
Boca Raton, Florida 33487
Telephone: 561-241-6901
Fax: 561-241-9181
**Service e-mail: mail@rasflaw.com**


By: _____
        Jonathan Meisels, Esquire
        Florida Bar No. 29235
        Communication Email: jmeisels@rasflaw.com

14-82954/EB

## VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

Executed on this 4th day of August            , 20 15.


AFFIANT:

By: _Jennifer Haas_

Print: _Jennifer Haas_

Title: _Business Operations Analyst_

Employed by CitiMortgage, Inc.

Plaintiff: CITIMORTGAGE INC.

Date: 8 | 4 | 15


RE:   Borrower:   GRACE DENISE SOLIS A/K/A GRACE D. SOLIS
      Address:    730 86TH ST, MIAMI BEACH, Florida 33141
      File #:     14-82954

Robertson, Anschutz & Schneid, P.L.
Attorney for Plaintiff
6409 Congress Avenue, Suite 100
Boca Raton, Florida 33487
Telephone: 561-241-6901
Fax: 561-241-9181
**Service e-mail: mail@rasflaw.com**

Melissa Konick
By_____  FL Bar No. 17569
Jonathan Meisels, Esquire
Florida Bar No. 29235
Communication Email: jmeisels@rasflaw.com


14-82954/EB

## CERTIFICATE OF SERVICE

   **I hereby certify that** a copy of the Amended Complaint has been furnished to the parties listed on the attached service list via Mail and/or E-mail in accordance with the corresponding addresses listed therein on this _23_ day of ___October___, 20_15_.

> Robertson, Anschutz & Schneid, P.L.
> Attorneys for Plaintiff
> 6409 Congress Avenue, Suite 100
> Boca Raton, Florida 33487
> Telephone: 561-241-6901
> Fax: 561-241-9181
> **Service e-mail: mail@rasflaw.com**

> BY: _____
> Melissa Konick
> FL Bar No. 17569
> Jonathan Meisels, Esquire
> Florida Bar No. 29235
> Communication Email: jmeisels@rasflaw.com

### SERVICE LIST

THE AJM GROUP, P.A.
ALIX J. MONTES, ESQ.
ATTORNEY FOR GRACE DENISE SOLIS A/K/A GRACE D. SOLIS
290 NW 165TH STREET, SUITE P100
MIAMI, FL 33169
PRIMARY E-MAIL: AMONTES@AJMLAWGROUP.COM

THE AJM GROUP, P.A.
ALIX J. MONTES, ESQ.
ATTORNEY FOR SHIRLEY JANICE SOLIS A/K/A SHIRLEY J. SOLIS
290 NW 165TH STREET, SUITE P100
MIAMI, FL 33169
PRIMARY E-MAIL: AMONTES@AJMLAWGROUP.COM

CITIBANK, N.A., SUCCESSOR IN INTEREST TO CITIBANK, FEDERAL SAVINGS BANK
C/O PRESIDENT/ VICE PRESIDENT/CHAIRMAN
SIOUX FALLS, SD 57104
PRIMARY E-MAIL:

MIAMI-DADE COUNTY ATTORNEY
THOMAS H ROBERTSON, ESQUIRE
ATTORNEY FOR MIAMI-DADE COUNTY, FLORIDA
111 NW 1 STREET, SUITE 2810
MIAMI, FL 33128-1993
PRIMARY E-MAIL: DMR2@MIAMIDADE.GOV

14-82954/EB

# EXHIBIT D

## ENVELOPE FROM CITIMORTGAGE'S COUNSEL

## WHICH CONTAINED A LETTER FROM THE STATE

## FORECLOSURE ATTORNEY ADDRESSED TO

## OCCUPANT TO CIRCUMVENT THE FCCPA

neopost
09/18/2017
US POSTAGE

FIRST CLASS MAIL

$00.67°

ZIP 34236
041L11238735

ADAMS AND REESE LLP

OCCUPANT
730 86TH STREET
MIAMI BEACH, FL 33141-1116